# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### CASE NO. 22-50998

### ERMA WILSON,
*Plaintiff–Appellant,*

v.

### MIDLAND COUNTY, TEXAS; WELDON (RALPH) PETTY, JR., sued in his individual capacity; ALBERT SCHORRE, JR., sued in his individual capacity,
*Defendants–Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, MIDLAND/ODESSA DIVISION
NO. 7:22-CV-85, HON. WALTER DAVID COUNTS, III

## BRIEF OF *AMICUS CURIAE* THE RODERICK & SOLANGE MACARTHUR JUSTICE CENTER IN SUPPORT OF APPELLANT

Amir H. Ali
Cal Barnett-Mayotte*
RODERICK & SOLANGE
   MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
(202) 869-3434
amir.ali@macarthurjustice.org

*Admitted only in Pennsylvania; not admitted in D.C. Practicing under the supervision of the Roderick & Solange MacArthur Justice Center.*

*Counsel for the Roderick & Solange MacArthur Justice Center*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

1. Case No. 22-50998: *Wilson v. Midland Cnty., Tex.*, et al.

2. Pursuant to 5th Cir. R. 28.2.1 and 29.2, undersigned counsel of record for *amicus curiae* certifies that, in addition to the persons and entities previously identified by the parties, the following persons and entities have an interest in the outcome of this case:

| **Name of Interested Party** | **Connection and Interest** |
| --- | --- |
| Roderick & Solange MacArthur Justice Center | Amicus Curiae |
| Amir H. Ali | Counsel for the Roderick & Solange MacArthur Justice Center |
| Cal Barnett-Mayotte | Counsel for the Roderick & Solange MacArthur Justice Center |

3. Pursuant to Fed. R. App. P. 26.1, *amicus curiae* states that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

/s/ *Amir H. Ali*
Amir H. Ali

*Attorney of Record for Amicus Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...............................................................i

TABLE OF AUTHORITIES ................................................................. iii

INTEREST OF *AMICUS CURIAE* ............................................................ 1

SUMMARY OF THE ARGUMENT ......................................................... 2

ARGUMENT ............................................................................... 4

I. Because *Heck* Aims to Avoid Collision Between Section 1983 and Federal Habeas, It Has No Application Where Habeas is Unavailable. ............................................................................ 5

II. "Real-Life Examples" Help Illustrate Why the District Court's Rule is Wrong. ........................................................................ 10

CONCLUSION ............................................................................. 15

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Dennis v. Higgins,*
498 U.S. 439 (1991) ................................................................. 5

*Duarte v. City of Stockton,*
No. 21-16929, --- F.4th ---, 2023 WL 2028432 (9th Cir.
Feb. 16, 2023) ....................................................................... 8

*Golden State Transit Corp. v. City of Los Angeles,*
493 U.S. 103 (1989) ................................................................. 5

*Heck v. Humphrey,*
512 U.S. 477 (1994) ............................................ 7, 10, 11, 13

*McKithen v. Brown,*
481 F.3d 89 (2d Cir. 2007) ................................................... 7

*Mitchum v. Foster,*
407 U.S. 225 (1972) ........................................................... 5, 13

*Muhammad v. Close,*
540 U.S. 749 (2004) ................................................... *passim*

*Patsy v. Bd. of Regents,*
457 U.S. 496 (1982) ................................................................. 6

*Randell v. Johnson,*
227 F.3d 300 (5th Cir. 2000) ............................................... 3

*Spencer v. Kemna,*
523 U.S. 1 (1998) ..................................................... 9, 10, 14

*Thompson v. Clark,*
142 S. Ct. 1332 (2022) ..................................................... 1, 13

*United States v. Escajeda,*
58 F.4th 184 (5th Cir. 2023) ....................................... 6, 8, 9

*United States v. Jenkins,*
    50 F.4th 1185 (D.C. Cir. 2022) ............................................. 9

*Wilkinson v. Dotson,*
    544 U.S. 74 (2005) ...................................................... 6, 7

*Wilson v. Garcia,*
    471 U.S. 261 (1985) .................................................... 5, 13

*Wolff v. McDonnell,*
    418 U.S. 539 (1974) ...................................................... 7

**Statutes**

18 U.S.C. 3582(c) ........................................................... 8

28 U.S.C. § 2254 ......................................................... 4, 6

28 U.S.C. § 2254(a) ...................................................... 2, 6

28 U.S.C. § 2254(b) ......................................................... 6

42 U.S.C. § 1983 ......................................................... 2, 4

**Other Authorities**

DEATH PENALTY INFO. CTR., *Texas Appeals Court Vacates
    Conviction of Death-Row Prisoner Clinton Young, Whose
    Prosecutor was Secretly on the Payroll of the Judge Who
    Tried Him*, Sep. 23, 2021 ................................................. 14

# INTEREST OF *AMICUS CURIAE*[1]

The Roderick & Solange MacArthur Justice Center (MJC) is a not-for-profit organization founded by the family of J. Roderick MacArthur to advocate for civil rights and a fair and humane criminal justice system. MJC has represented clients facing myriad civil rights injustices, and frequently works on behalf of incarcerated and formerly incarcerated individuals whose rights have been violated. MJC has an interest in the sound and fair administration of the criminal justice system, and in ensuring those who have been treated unfairly by that system are able to bring suit to vindicate their rights. In addition, MJC served as lead counsel for petitioner in *Thompson v. Clark*, 142 S. Ct. 1332 (2022), the Supreme Court's most recent case concerning *Heck v. Humphrey*.

*Amicus* submits this brief to highlight the negative pragmatic effects of applying *Heck* to plaintiffs for whom habeas is unavailable.

---

[1] This brief has not been authored, in whole or in part, by counsel to any party in this appeal. No person, other than the *amicus*, its members, or its counsel, contributed money that was intended to fund preparation or submission of this brief. Plaintiff-Appellant consented to the filing of this brief. Defendants-Appellees have not consented.

## SUMMARY OF THE ARGUMENT

The judge who presided over Erma Wilson's criminal trial employed a member of the prosecution team as a law clerk. In those circumstances, Ms. Wilson was convicted and sentenced to an eight-year suspended sentence. She served that whole suspended sentence before discovering the blatantly unconstitutional involvement of Ralph Petty, the clerk-prosecutor. For the duration of the sentence, she did not know, and had no way of knowing, that one man helped prosecute her by day and judge her by night.

Years later, Midland County revealed Petty's dual—and unconstitutional—employment. By then, Ms. Wilson's suspended sentence had long expired and she had no recourse to challenge her unconstitutional conviction under federal habeas law. *See* 28 U.S.C. § 2254(a) (granting federal habeas jurisdiction over people in custody pursuant to a state court judgment). So Wilson turned to 42 U.S.C. § 1983, which promises a federal cause of action to "any . . . person . . . depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws[.]" But the district court held that, in this Circuit, Wilson is out of luck. According to the district court, § 1983 sits out of

reach because Ms. Wilson failed to get her conviction invalidated—no matter that she learned of the unconstitutionality of her conviction long after habeas (or other) relief became unavailable.

Back in 2000, this Court wrongly believed itself bound to reach this outcome. *See Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000). Subsequent Supreme Court decisions have made clear that was mistaken. *See Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004) (declining to "settle" the question whether habeas unavailability guarantees § 1983 availability). This Court is accordingly free to reconsider the question.

And the answer to that question is not difficult. *Heck* was not grounded in some vague penumbra, it was grounded in statutory reconciliation—the need to avoid collision at the "intersection" between Sections 1983 and 2254, while continuing to honor Section 1983's "broad" remedial language. The application of *Heck* to cases like this is vastly overbroad and has a drastic effect on real people who are the victims of even the most egregious constitutional violations or governmental misconduct. It means that people like Erma Wilson, an aspiring Registered Nurse whose career is jeopardized by a blatantly

unconstitutional conviction, and who *never* had access to federal habeas, would nonetheless be foreclosed from vindicating their rights under § 1983. That untethers *Heck* both from its statutory mooring and from reason.

## ARGUMENT

Whether Ms. Wilson has a cause of action to sue state officials for the blatant violation of her constitutional rights is not a question of policy but of statutory interpretation. Section 1983 states that "[e]very person" acting under color of state law to deprive "any . . . person" of "any rights, privileges, or immunities secured by the Constitution and laws" "shall be liable" under federal law. 42 U.S.C. § 1983. In *Heck*, the Court did not authorize courts to depart from that text willy nilly. It read § 1983's language to avoid a particular statutory conflict with federal habeas law, 28 U.S.C. § 2254. Disregarding that textual hook threatens to swallow Section 1983 itself.

Ms. Wilson's case exemplifies that threat: the federal courthouse door has been closed to her even though she never had any access to, and therefore never encountered any conflict with, federal habeas law. The district court's overbroad rule would leave people like Ms. Wilson—

people who suffer serious violations of their rights and never implicate *Heck*'s intersection—without remedy for no apparent (let alone textual) reason. In other words, straightforward statutory interpretation resolves this case—but the wrong answer carries dire consequences that would undermine Section 1983's text and policy alike.

## I. Because *Heck* Aims to Avoid Collision Between Section 1983 and Federal Habeas, It Has No Application Where Habeas is Unavailable.

Section 1983's "statutory language" "compel[s]" a "broad construction." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991). The statute "speaks of deprivations of '*any* rights, privileges, or immunities secured by the Constitution and laws.'" *Id.*; *see also Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105-06 (1989). Its breadth is no accident; Section 1983 sought "to interpose the federal courts between the States and the people, as guardians of the people's federal rights," *Mitchum v. Foster*, 407 U.S. 225, 242 (1972), and to "supplement[] . . . any remedy any State might have," *Wilson v. Garcia*, 471 U.S. 261, 272 (1985) (quoting *McNeese v. Bd. of Educ.*, 373 U.S. 668, 672 (1963)). The statute, in sum, deserves "a sweep as broad as its language." *Wilson*, 471 U.S. at 272.

On occasion, Section 1983 encounters the "more specific"—and more demanding—habeas statute, 28 U.S.C. § 2254. *See Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005). Section 2254 grants federal courts habeas jurisdiction over "a person in custody pursuant to the judgment of a State court . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Because incarcerated people often claim that the fact or duration of their incarceration violates federal law, their lawsuits sometimes fall within the "literal[] cover[age]" of both Section 1983 and Section 2254. *Wilkinson*, 544 U.S. at 78. But the two statutes differ in significant ways—not only in the relief they offer, but in the obstacles they erect. Perhaps most significantly, the habeas statute conditions availability of the writ on, among other things, exhaustion of state remedies. 28 U.S.C. § 2254(b); *compare Patsy v. Bd. of Regents*, 457 U.S. 496, 501 (1982) (no exhaustion requirement in § 1983). Because "[p]risoners suing under § 1983 . . . generally face a substantially lower gate" than those petitioning under Section 2254, *Muhammad*, 540 U.S. at 751, a prisoner would, if given the choice, nearly always proceed under the former, eviscerating the latter. *See United States v. Escajeda*, 58 F.4th 184, 187

(5th Cir. 2023). To "preserv[e] limitations on the availability of habeas remedies," *Muhammad*, 540 U.S. at 751, the Supreme Court policed the intersection by giving § 2254 the right of way: When a prisoner seeks to invalidate a conviction, he must traverse the "specific" habeas gauntlet, *Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994).

*Heck* thus represents an "implicit exception from § 1983's otherwise broad scope." *Dotson*, 544 U.S. at 79. But that exception has been "carefully circumscribed." *McKithen v. Brown*, 481 F.3d 89, 101 (2d Cir. 2007). For one, the Supreme Court consistently emphasizes that the exception applies only to challenges that "*necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence." *Dotson*, 544 U.S. at 81 (emphasis original). Thus, for instance, prisoners can invoke § 1983 to seek damages "for using the wrong procedures" even in circumstances where *Heck* would bar relief "for reaching the wrong result." *Heck*, 512 U.S. at 482-83 (discussing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

*Heck*, then, is no more than a narrow exception to the general rule of Section 1983 availability, engineered to avoid the intersection. Where Sections 1983 and 2254 do not collide, *Heck*'s exception does not apply.

*See Muhammad*, 540 U.S. at 755 (where the plaintiff "raised no claim on which habeas relief could have been granted," the "consequence" was "that *Heck*'s favorable termination requirement was inapplicable"); *see also id.* at 751-52 (where there "is no need to preserve the habeas exhaustion rule," there is "no impediment under *Heck*"). And to extend *Heck* beyond its "'core' concern . . . for preventing the circumvention of habeas exhaustion requirements through § 1983," *Duarte v. City of Stockton*, No. 21-16929, --- F.4th ---, 2023 WL 2028432 (9th Cir. Feb. 16, 2023), would be to exalt *Heck*'s limited exception over Section 1983's broad textual command.

*Heck*'s intersection-avoidance rationale becomes especially clear when we consider its application to the intersection between habeas and statutes other than Section 1983. This Court has, for instance, held that *Heck*'s "habeas-channeling rule" diverts claims seeking "to challenge the legality or the duration of [a] sentence" away from the compassionate release statute, 18 U.S.C. 3582(c), and into habeas. *Escajeda*, 58 F.4th at 187. Where conviction-invalidating claims "can" be raised in habeas, they "*must*" be raised in habeas, *id.* at 187-88—whether the alternative is § 1983 (as in *Heck*) or compassionate release proceedings (as in *Escajeda*)

or something else. In other words, *Heck* is not some freewheeling policy exception. Instead, it follows from "the elementary principle that specific statutes qualify general ones." *United States v. Jenkins*, 50 F.4th 1185, 1203 (D.C. Cir. 2022). Where other statutes intersect with the habeas statutes in the same way that § 1983 does, they also yield in the same way that § 1983 does—because they, too, seek to avoid collision. As this Court recently recognized, "[t]he reason for the habeas-channeling rule is simple: If a prisoner could avoid the strictures Congress imposed in [the habeas statutes] by bringing their release-from-confinement claims under a different, more general, and more permissive statute, he obviously would." *Escajeda*, 58 F.4th at 187. But where habeas is unavailable, that "reason" is absent.

Plaintiffs who are not "in custody"—and certainly plaintiffs who never were—do not reach the intersection, and do not trigger the *Heck* exception to Section 1983's "broad" scope. Five justices of the Supreme Court reached this conclusion in *Spencer v. Kemna*, reasoning that because "[a]fter a prisoner's release from custody, the habeas statute and its exhaustion requirement have nothing to do with his right to any relief," "a former prisoner, no longer 'in custody,' may bring a § 1983

action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." 523 U.S. 1, 21 (1998) (Souter, J., concurring); *see also id.* at 25 n.8 (Stevens, J., dissenting) ("Given the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice Souter explains, that he may bring an action under 42 U.S.C. § 1983."). And many sister courts of appeals, recognizing that the Supreme Court has left the issue "[un]settle[d]," *Muhammad*, 540 U.S. at 752 n.2, have found themselves persuaded by the reasoning of the five justices in *Spencer*. *See* Opening Br. at 36-37. This Court should join them.

## II. "Real-Life Examples" Help Illustrate Why the District Court's Rule is Wrong.

In addition to the legal principles animating *Heck* and a faithful reading of § 1983's text, "real-life example[s]" informed the *Spencer* concurrences. *Spencer*, 523 U.S. at 21 (Ginsburg, J., concurring); *see also Heck*, 512 U.S. at 500 (Souter, J., concurring). Those examples—many of which Ms. Wilson embodies—make clear the wisdom of the correct reading of *Heck*.

Consider, for instance, a defendant who becomes the victim of not only an unconstitutional conviction but also of governmental deceit. As Ms. Wilson's case demonstrates, misconduct often takes years to emerge, as elected officials are naturally reluctant to admit wrongdoing. By the time the prosecution comes clean, their integrity arrives too late; if the defendant "discover[s] (through no fault of [her] own) a constitutional violation after full expiration of [her] sentence[]"—when she is no longer "in custody" and therefore cannot pursue habeas relief—she will lack any federal forum, ever, to vindicate her federal rights. *Heck*, 512 U.S. at 500 (Souter, J., concurring).

Or consider the defendant who was *never* "in custody" and therefore could never open the habeas door, even if she had a basis to do so all along—for instance, someone convicted based on fabricated evidence and sentenced to time served or a criminal fine. Whether the fabrication comes out a year, a month, or a day after the conviction, she was never "in custody" post-conviction and therefore never had, and never will have, a chance to challenge her conviction via federal habeas. So even if she—and everybody—knew of the unconstitutionality of her conviction

immediately after judgment, she *still* has no federal recourse, at any time, if § 1983 stands out of reach.

This outcome is nonsensical. It shields government actors from any federal scrutiny of their unconstitutional activity—no matter how blatant—simply because it resulted in a conviction without confinement. It cannot be that Section 1983's text excludes constitutional violations leading to unconstitutional *fines* (or time-served sentences, or what have you) simply because another statute (Section 2254) stands ready to remedy unconstitutional *custody*.

The irrationality of the district court's rule is also demonstrated by the perverse incentives it creates for criminal defendants. Consider the choice faced by a defendant who has an unrelated basis for early release—say compassionate release—while serving his sentence, but has learned while incarcerated that he was convicted on fabricated evidence. The defendant faces an untenable choice: accept his liberty and forever forfeit the opportunity to hold the state actor who falsely convicted him accountable, or choose to remain in custody to retain the right to bring a federal habeas action that would enable his civil suit. Section 1983, which sought "to interpose the federal courts between the States and the people,

as guardians of the people's federal rights," *Mitchum*, 407 U.S. at 242, and to "supplement[] . . . any remedy any State might have," *Wilson*, 471 U.S. at 272 (quoting *McNeese*, 373 U.S. at 672), cannot countenance such an "untoward result," *Heck*, 512 U.S. at 500 (Souter, J., concurring).

Indeed, more than an "untoward result," the district court's rule creates a paradox: the more egregious the constitutional violation, the more incentive there is to remain in prison to preserve the possibility of holding the wrongdoer accountable and obtaining damages. *Cf. Thompson v. Clark*, 142 S. Ct. 1332, 1340 (2022) ("[R]equiring the plaintiff to show that his prosecution ended with an affirmative indication of innocence would paradoxically foreclose a § 1983 claim when the government's case was weaker and dismissed without explanation before trial, but allow a claim when the government's evidence was substantial enough to proceed to trial."). In the *Thompson* Court's words, "[t]hat would make little sense." *Id.*

Finally, the district court's rule makes relief turn on (un)happy accidents. For instance, Petty's dual role tainted Clinton Young's prosecution just as it did Ms. Wilson's. But Young was convicted of homicide, and remained on death row when Petty's misconduct came to

light. As a result, Young won postconviction relief[2]—and access to § 1983. Meanwhile, § 1983 remains out of Ms. Wilson's reach.

That result tracks neither the constitutional nor the statutory text. Access to § 1983's promise to remedy "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" should not depend on the length of the sentence produced by the constitutional violation. *See Spencer*, 523 U.S. at 20-21 (Souter, J., concurring) (noting that extending *Heck* to noncustodial plaintiffs would produce the "patent anomaly" that "exactly the same claim" could be brought "by a former prisoner who had succeeded in cutting his custody short through habeas" but not by a former prisoner whose sentence had expired). A conviction rendered by a partial judge offends the Constitution whether it results in a suspended sentence or a death sentence.

\*\*\*

---

[2] DEATH PENALTY INFO. CTR., *Texas Appeals Court Vacates Conviction of Death-Row Prisoner Clinton Young, Whose Prosecutor was Secretly on the Payroll of the Judge Who Tried Him*, Sep. 23, 2021, https://deathpenaltyinfo.org/news/texas-appeals-court-vacates-conviction-of-death-row-prisoner-clinton-young-whose-prosecutor-was-secretly-on-the-payroll-of-the-judge-who-tried-him. *See also* Opening Br. at 14-15.

The district court's misreading of *Heck* has no statutory basis. It also has real-life consequences. It prevents the victims of constitutional violations—victims like Ms. Wilson—from entering federal court to obtain the justice that Congress promised them in Section 1983. And it does so to avoid an intersection that those victims will never reach.

## CONCLUSION

For the foregoing reasons, the Court should reverse the decision below.

Date: February 21, 2023

Respectfully submitted,

*s/ Amir H. Ali*
Amir H. Ali
Cal Barnett-Mayotte*
RODERICK & SOLANGE
   MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
(202) 869-3434
amir.ali@macarthurjustice.org

*Admitted only in Pennsylvania; not admitted in D.C. Practicing under the supervision of the Roderick & Solange MacArthur Justice Center.*

*Counsel for the Roderick & Solange MacArthur Justice Center*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*s/ Amir H. Ali*
Amir H. Ali

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 29(b)(4), I certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because this brief contains 2,857 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook typeface.

*s/ Amir H. Ali*
Amir H. Ali