In The

# United States Court of Appeals
### For The Fifth Circuit

ERMA WILSON,

*Plaintiff-Appellant,*

*v.*

MIDLAND COUNTY, TEXAS;
WELDON (RALPH) PETTY, JR., sued in his individual capacity;
ALBERT SCHORRE, JR., sued in his individual capacity,

*Defendants-Appellees.*

On appeal from the United States District Court
for the Western District of Texas,
7:22-cv-85, Hon. David Counts, District Judge, presiding.

## PLAINTIFF-APPELLANT'S CONSOLIDATED REPLY BRIEF TO ALL DEFENDANTS-APPELLEES' RESPONSE BRIEFS

Jaba Tsitsuashvili
    *Lead counsel*
Robert J. McNamara
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
(703) 682-9320
jtsitsuashvili@ij.org

*Counsel for Plaintiff-Appellant*

# Certificate of Interested Persons

(1)     Case no. 22-50998, *Wilson v. Midland County, Texas et al.*

(2)     The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

| **Appellant** | **Counsel for Appellant** |
|---|---|
| Erma Wilson | INSTITUTE FOR JUSTICE |
| | Jaba Tsitsuashvili |
| | Robert J. McNamara |

| **Appellees** | **Counsel for Appellees** |
|---|---|
| Midland County, Texas | SHAFER, DAVIS, O'LEARY & STOKER |
| Weldon (Ralph) Petty, Jr. | Layne Rouse |
| | Miles Nelson |
| | |
| Albert Schorre, Jr. | LYNCH, CHAPPELL & ALSUP |
| | Randall L. Rouse |
| | Steven Kiser |
| | Lisa K. Hooper |

s/ Jaba Tsitsuashvili
*Lead Counsel for Plaintiff-Appellant*

**Statement Regarding Oral Argument**

Defendants-Appellees Midland County, Ralph Petty, and Albert Schorre argue that oral argument is unnecessary because this "appeal involves the application of established Fifth Circuit precedent and well-established principles of law." Schorre Response Br. at ii; *see* Midland County & Petty Response Br. at iii.

Plaintiff-Appellant Erma Wilson disagrees. As explained in her initial Statement Regarding Oral Argument and in her opening brief: (1) procedurally, this case presents important questions regarding this Court's rules of precedent and orderliness, the application of which have themselves divided panels of this Court, *see* Opening Br. at ii, 23–31 & n.2; and (2) substantively, this case presents a recurring question with an entrenched circuit split regarding the viability of certain constitutional claims under § 1983, *see* Opening Br. at ii, 32–46.

So the Court should hear oral argument to ensure thorough consideration of the application of precedent to the facts of this case.

# Table of Contents

**Page**

Certificate of Interested Persons ............................................................. i

Statement Regarding Oral Argument ...................................................... ii

Table of Contents ................................................................................. iii

Table of Authorities............................................................................... v

Summary of the Argument ..................................................................... 1

Argument............................................................................................... 3

    I.    The defendants mischaracterize the nature and the elements of Wilson's procedural due process claim, in ways that materially distort the issues. ................................................. 3

    II.    *Heck*'s claim-channeling rule for custodial plaintiffs does not impose an exhaustion requirement or a favorable termination element on Wilson's procedural due process claim. ................................................................................ 6

        A.    There is no conflict between this lawsuit and the federal habeas statute. ...................................................... 7

        B.    Wilson is not required to successfully exhaust state remedies because her claim has no favorable termination element........................................................ 8

    III.    Barring claims like Wilson's is contrary to the plain text, history, and purpose of Section 1983........................................... 14

    IV.    This Court lacks jurisdiction to decide the defendants' un-appealed non-*Heck* arguments, which are wrong anyway. ....... 18

A.      Ruling for the defendants on any of their alternative arguments would expand the scope of their relief on appeal, but they did not cross-appeal on those issues, so this Court lacks jurisdiction to decide them.................................................................19

B.      The defendants' alternative arguments are wrong. ......23

Conclusion ............................................................................... 30

Certificate of Service ............................................................. 31

Certificate of Compliance ...................................................... 32

# Table of Authorities

**Page(s)**

**C**ASES

*Arvie v. Broussard,*
    42 F.3d 249 (5th Cir. 1994) ........................................... 21–22

*Brown v. Lyford,*
    243 F.3d 185 (5th Cir. 2001) ............................................. 25

*Buckley v. Fitzsimmons,*
    509 U.S. 259 (1993) .................................................... 26–27

*Burns v. Reed,*
    500 U.S. 478 (1991) .................................................... 26–27

*Caliste v. Cantrell,*
    937 F.3d 525 (5th Cir. 2019) ........................... 5, 13, 23–24

*Carey v. Piphus,*
    435 U.S. 247 (1978) ........................................ 5, 13, 16, 24

*Conn. Nat'l Bank v. Germain,*
    503 U.S. 249 (1992) ........................................................ 7

*Edwards v. Balisok,*
    520 U.S. 641 (1997) .................................................. 13, 24

*Forrester v. White,*
    484 U.S. 219 (1988) ....................................................... 27

*Hardin v. Straub,*
    490 U.S. 536 (1989) .................................................. 14, 15

*Heck v. Humphrey,*
    512 U.S. 477 (1994) ................................................ *passim*

*Hill v. City of Pontotoc,*
  993 F.2d 422 (5th Cir. 1993) .......................................5, 24

*Hope v. Pelzer,*
  536 U.S. 730 (2002) .............................................................28

*In re Murchison,*
  349 U.S. 133 (1955) .............................................................28

*Manuel v. City of Joliet,*
  580 U.S. 357 (2017) ................................................10–11, 14

*McDonough v. Smith,*
  139 S. Ct. 2149 (2019) ...............................................13, 14

*Mitchell v. McBryde,*
  944 F.2d 229 (5th Cir. 1991) ..........................................27

*Muhammad v. Close,*
  540 U.S. 749 (2004) ...........................................................17

*Nance v. Ward,*
  142 S. Ct. 2214 (2022) .........................................................7

*Patsy v. Bd. of Regents of Fla.,*
  457 U.S. 496 (1982) ...............................................................9

*Peña v. City of Rio Grande,*
  879 F.3d 613 (5th Cir. 2018) ..........................................22

*Pete v. Metcalfe,*
  8 F.3d 214 (5th Cir. 1993) .........................................28–29

*Preiser v. Rodriguez,*
  411 U.S. 475 (1973) .............................................................14

*Rest. Law Ctr. v. U.S. Dep't of Labor,*
  66 F.4th 593 (5th Cir. 2023) ..........................................22

*Rogers v. Jarrett,*
    63 F.4th 971 (5th Cir. 2023) ....................................... 15, 26

*Safford Unified Sch. Dist. No. 1 v. Redding,*
    557 U.S. 364 (2009) .................................................................. 28

*Stokes v. Sw. Airlines,*
    887 F.3d 199 (5th Cir. 2018) ........................................ 17–18

*Thompson v. Clark,*
    142 S. Ct. 1332 (2022) ........................................... 11, 12, 13

*Tumey v. Ohio,*
    273 U.S. 510 (1927) ................................................. 6, 12, 24

*United States v. Am. Ry. Exp. Co.,*
    265 U.S. 425 (1924) ....................................................... 20–21

*United States v. Coscarelli,*
    149 F.3d 342 (5th Cir. 1998) .............................................. 21

*Ward v. Village of Monroeville,*
    409 U.S. 57 (1972) ......................................................... 12–13

*Webster v. City of Houston,*
    735 F.2d 838 (5th Cir. 1984) .............................................. 25

*Wilkinson v. Dotson,*
    544 U.S. 74 (2005) .............................................................. 7

**STATUTES**

28 U.S.C. § 2254 .............................................................................. 7

42 U.S.C. § 1983 ...................................................................... *passim*

## Other Authorities

Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*,
    111 Calif. L. Rev. 201 (2023) ............................................................. 15

Christina Brooks Whitman, *Emphasizing the Constitutional in
    Constitutional Torts*, 72 Chi.-Kent L. Rev. 661 (1997) ......... 11–12, 16

Wright & Miller, Federal Practice and Procedure § 3904
    (3d ed. 2023 update) ...................................................................... 18, 21

## Summary of the Argument

By prosecuting and convicting plaintiff Erma Wilson with Ralph Petty employed on both the prosecutorial and judicial sides of the bench, defendants Midland County, Petty, and Albert Schorre violated Wilson's Fourteenth Amendment right to procedural due process just as the Texas Court of Criminal Appeals held the county violated Clinton Young's: in the form of a structurally defective judicial proceeding infected by the appearance of a conflict of interest or bias.

Section I below explains that, contrary to the defendants' mischaracterizations, Wilson's procedural due process claim has never been litigated in any forum and does not hinge on her assertion of actual innocence—both of which matter for assessing the *Heck* issues before this Court.

Section II explains that (1) because Wilson never could and never can litigate her claim in federal habeas, her claim does not conflict with the federal habeas statute and (2) because Wilson's claim has no favorable termination element in and of itself (or any common law analog that could justify imposing that element), she is not required to succeed on her claim in a state habeas suit before bringing it under § 1983.

Section III explains that these conclusions are compelled by § 1983's text, history, and purpose, especially in light of new historical scholarship showing that a § 1983 claim is cognizable notwithstanding any state laws or common law rules that might impede it (as recognized by Judge Willett). This section also explains that no precedent stands in the way of this Court deciding the *Heck* issues presented, and aligning itself with the sister circuits that would recognize Wilson's claim here.

Finally, section IV explains that this Court lacks jurisdiction to address the defendants' purported alternative bases for affirmance on non-*Heck* grounds, and that those arguments are without merit anyway.

\*   \*   \*

To simply summarize the heart of the issue presented: This Court should reverse and allow Wilson's § 1983 procedural due process claim to proceed because *neither* of the circumstances present in *Heck* exists here—Wilson's claim does not collide with the federal habeas statute, and her claim has no favorable termination element itself.

## Argument

**I. The defendants mischaracterize the nature and the elements of Wilson's procedural due process claim, in ways that materially distort the issues.**

Any resolution of Wilson's claims here must begin by understanding what they are. Wilson alleges that defendants Midland County, Petty, and Schorre violated her procedural due process rights by subjecting her to a fundamentally flawed criminal proceeding in which one of the lawyers working with the prosecutors was simultaneously working as a law clerk for the presiding judge. ROA.9, ROA.17–21. As detailed in Wilson's complaint, this dual employment created a "structural due process violation, completely undermining confidence in the fairness and accuracy of the criminal process." ROA.9. The defendants' actions—by directly participating in this double-dealing system or by making the hiring decisions that led directly to it—caused this violation of Wilson's right to "a criminal proceeding free from either actual or perceived bias." ROA.32; *see* ROA.17–28 (detailing, with documentary support, each defendant's role in the system and basis for liability). Wilson had no way of knowing about this constitutional

violation, and she promptly filed this lawsuit upon discovering it. ROA.25–27.

The defendants mistakenly suggest Wilson's procedural due process claim is inappropriate. First, they argue that it seeks to relitigate issues decided in Wilson's criminal proceedings. *See* Midland County & Petty Br. at 14; Schorre Br. at 13. Relatedly, they argue that it hinges on Wilson's claim of factual innocence. *See* Midland County & Petty Br. at 47; Schorre Br. at 49. Both assertions are wrong, in ways that bear on the *Heck* questions before this Court.

First, none of the issues raised by Wilson's complaint were litigated in her criminal trial or appeal because neither she nor her counsel could have known about them then. ROA.25–27. Wilson discovered the constitutional violation years later, when media coverage brought the scandal to light, resulting in (among other things) defendant Petty's resignation from the Texas state bar. ROA.22–23. So Wilson's constitutional claim has never been litigated in any forum. And, importantly for purposes of the question before this Court: Because her suspended sentence had expired (so she was not in custody) by the time she discovered the constitutional violation, Wilson never could and never

can raise the claim in federal habeas, ROA.14—obviating the defendants' concerns about a collision with the federal habeas statute. *See* section II.A below.

Second, Wilson's factual innocence is, at this stage of the case, irrelevant. The gravamen of her complaint is that a system in which a person working on the case is simultaneously employed by the prosecution and the bench is a type of "dual role" that "fits into the line of cases addressing incentives that a court's structure creates in every case." *Caliste v. Cantrell*, 937 F.3d 525, 530 (5th Cir. 2019) (citations omitted); *see* ROA.25 (Texas Court of Criminal Appeals recognizing this very system's structural due process violation). To be sure, Wilson's innocence matters to the *quantum* of damages she might recover: If the defendants ultimately prove that she would have been convicted no matter what, she may be entitled only to nominal damages. *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978) (nominal damages are available in due process cases even if violation did not cause harm); *Hill v. City of Pontotoc*, 993 F.2d 422, 425–26 (5th Cir. 1993) (due process defendant bears the burden of showing lack of causation). But at the pleadings stage, the quantum of damages is not at issue, and Wilson's claim of a

structurally defective system is just as viable if she is innocent as it would be if she were unquestionably guilty. *See Tumey v. Ohio*, 273 U.S. 510, 535 (1927). This matters here because it means that favorable termination is not an element of Wilson's claim. *See* section II.B below.

In short, these clarifications about the circumstances and the nature of Wilson's claim are important for resolving the question before this Court: whether there is any available federal forum to vindicate Wilson's federal constitutional rights. The defendants say no. But, as other circuits have held, both Supreme Court precedent and the plain text of § 1983 itself say yes.

## II. *Heck*'s claim-channeling rule for custodial plaintiffs does not impose an exhaustion requirement or a favorable termination element on Wilson's procedural due process claim.

In her opening brief, Wilson explained that the Supreme Court's rule in *Heck v. Humphrey* is best understood as a way of channeling claims that can be brought both via federal habeas and via § 1983. Opening Br. at 33–42. In response, the defendants suggest that *Heck* should bar Wilson's lawsuit either because recognizing her claim would conflict with the federal habeas statute or because she cannot bring a

federal suit for a violation of her federal rights unless she first prevails in a state habeas action. Neither argument is correct.

## A. There is no conflict between this lawsuit and the federal habeas statute.

The defendants suggest that Wilson's § 1983 suit must be prohibited to avoid a conflict with limitations Congress has placed on the availability of federal habeas for state prisoners. *See* Midland County & Petty Br. at 25–32; Schorre Br. at 24–31. But this is wrong for the simple reason that Wilson is not in custody for purposes of federal law, so the procedural hurdles Congress has imposed on state prisoners seeking to invoke federal habeas under 28 U.S.C. § 2254 are not implicated. Accordingly, unlike in *Heck* itself, this is not a situation that requires reconciling "[r]edundancies across statutes" to "give effect to both." *Cf. Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992).

Simply put: Federal habeas policy is unimplicated and unaffected by the claims of individuals definitionally outside its purview (i.e., those not in state custody for purposes of federal law), like Wilson, because such claims do not "lie 'within the core of habeas corpus.'" *Nance v. Ward*, 142 S. Ct. 2214, 2221 (2022) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005)). That is why sister circuits have concluded that plaintiffs who

cannot or could not seek federal habeas relief are entitled to vindicate their federal rights via § 1983. *See* Opening Br. at 37–38 (collecting cases).

The defendants do not engage with those sister circuits' cases or explain why they are wrong—and, as explained in Wilson's opening brief, no opinion of this Court has ever explained why it takes the minority position in this circuit split. *See* Opening Br. at 24–31. But those courts are correct—there can be no conflict with the federal habeas statute in a case where it does not apply.

## B. Wilson is not required to successfully exhaust state remedies because her claim has no favorable termination element.

In the alternative, the defendants suggest that even if Wilson is ineligible for *federal* habeas relief, she should be barred from federal court until she exhausts—and succeeds on—her *state* habeas remedies. *See* Midland County & Petty Br. at 32–35; Schorre Br. at 31–33. This too is wrong. First, § 1983 has no exhaustion requirement. Second, unlike the *Heck* plaintiff's claim, favorable termination is not an *element* of Wilson's procedural due process claim. So the defendants cannot import

*Heck*'s no-cause-of-action holding to the circumstances of this case. *Cf.* Midland County & Petty Br. at 24; Schorre Br. at 22–23.

**1.** To begin, the defendants' argument runs afoul of the rule that state-law exhaustion "is not a prerequisite to an action under § 1983." *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 501 (1982). Holding that *Heck* bars plaintiffs from filing § 1983 cases until they successfully exhaust a state habeas remedy would transmute *Heck* into a blanket exhaustion requirement.

And *Heck* is no such thing, as the decision itself makes clear. There, the Supreme Court explained that it was "not engraft[ing] an exhaustion requirement upon § 1983, but rather deny[ing] the existence of a cause of action" for a state prisoner whose constitutional claim (1) could be brought in federal habeas, and therefore needed to be as a matter of inter-statutory conciliation, and (2) was akin to a common law malicious prosecution tort, of which favorable termination is an element anyway. *Heck v. Humphrey*, 512 U.S. 477, 484, 489 (1994). Neither circumstance is present here. As explained above, Wilson has no available federal habeas remedy, so there is no risk of collision with the federal habeas statute. And, unlike in *Heck*, she is bringing a procedural due process

claim, not a claim akin to common law malicious prosecution (or, indeed, any other common law tort).

**2.** Favorable termination is not an element of Wilson's claim, so it cannot be used to require her to succeed in a state habeas action before bringing her constitutional § 1983 claim. As explained in *Heck*, *some* constitutional § 1983 claims are best analyzed by "analogy" to common law torts, and therefore take on those torts' elements (e.g., malicious prosecution, of which favorable termination is an element of the claim itself). 512 U.S. at 484. But subsequent cases make clear that not all constitutional claims have such common law analogs, and that even when they do, they do not necessarily import every element of the common law tort. Here, Wilson's claim sounds in procedural due process—a claim that has no favorable termination element itself and has no common law tort analog that could justify imposing such an element.

To be sure, "[i]n defining the contours and prerequisites of a § 1983 claim, . . . courts are to look first to the common law of torts" as a "starting point." *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017) (citation and quotation marks omitted). "Sometimes, that review of common law will

lead a court to adopt wholesale the rules that would apply in a suit involving the most analogous tort." *Id.* (citation omitted).

"But not always. Common-law principles are meant to guide rather than to control the definition of § 1983 claims, serving more as a source of inspired examples than of prefabricated components. In applying, selecting among, or adjusting common-law approaches, courts must closely attend to the values and purposes of the constitutional right at issue." *Id.* (citations and quotation marks omitted).

Put differently, constitutional claims will sometimes map onto common law torts—but not every time. And even when they do, an element of the tort might simply drop out from the constitutional claim. *See Thompson v. Clark*, 142 S. Ct. 1332, 1338 n.3 (2022). This makes sense because the priority is vindicating the sometimes unique values and purposes of a constitutional right, not simply imposing common law rules or elements where they make little sense. *See* Christina Brooks Whitman, *Emphasizing the Constitutional in Constitutional Torts*, 72 Chi.-Kent L. Rev. 661, 662 n.11 (1997) ("Courts seem to understand now that a § 1983 case cannot be stated merely by reference to tort. But the common law is not only insufficient; it is irrelevant unless referred to by

the specific constitutional provision upon which the plaintiff relies. . . . Proof of a violation of the Constitution ought to be both necessary and sufficient, given the existence of state action.").

Here, Wilson's procedural due process claim arising from structurally defective judicial proceedings based on the appearance of conflict or bias does not map onto any common law tort. Even if malicious prosecution could serve as a potential starting point (and therefore a basis for the defendants' efforts to impose a favorable termination element here), the analogy is dead on arrival because all three of that tort's elements are wholly inconsistent with the Supreme Court's established description of a procedural due process claim sounding in conflict or bias. The malicious prosecution tort requires showing a lack of probable cause, malice, and favorable termination. *Thompson*, 142 S. Ct. at 1338. By contrast, a procedural due process claim is premised on the *structure of the proceeding itself*, not on "what the evidence was"—thus eliminating any reasoned basis to impose the malicious prosecution tort's no-probable-cause element, its malice element, or its favorable-termination element. *Tumey*, 273 U.S. at 535; *see also Ward v. Village of*

*Monroeville*, 409 U.S. 57, 61–62 (1972); *Carey*, 435 U.S. at 266; *Edwards v. Balisok*, 520 U.S. 641, 647 (1997)[1]; *Caliste*, 937 F.3d at 530.

**3.** In short, neither *Heck* nor any other case supports the imposition of the malicious prosecution tort's favorable termination element on Wilson's procedural due process claim because the "gravamen" of the claims is not the same. *Thompson*, 142 S. Ct. at 1338. Wilson does not "challenge the validity of the criminal proceedings against [her] in essentially the same manner as the plaintiff in *Heck* challenged the validity of his conviction." *Cf. McDonough v. Smith*, 139 S. Ct. 2149, 2158 (2019). The *Heck* plaintiff's claim was based on manipulation of evidence and therefore by its nature invited an analogy to malicious prosecution, with its favorable termination element, regardless of any considerations of collision with habeas. 512 U.S. at 484. By contrast, Wilson's structural

---

[1] *Balisok* is particularly significant here because it explicitly embraces the rule that a "criminal defendant tried by a partial judge is entitled to have [her] conviction set aside, no matter how strong the evidence against [her]." 520 U.S. at 647 (citations omitted). That makes clear the Court's understanding that the malicious prosecution tort's favorable termination element does not map onto such a due process claim. Nevertheless, applying *Heck*, the Court did not permit the prisoner plaintiff's § 1983 claim to proceed without a showing of favorable termination. *Id.* at 646. The only way to square the Court's imposition of that requirement on a claim the Court recognized should be viable regardless of guilt or innocence is to understand that the *Heck* bar is concerned with avoiding the collision of federal habeas procedures and § 1983. That concern drops out for noncustodial plaintiffs like Wilson, for whom a favorable termination requirement comes into play only if it is an actual *element* of the claim they are bringing (which it is not here, just as it was not in *Balisok*).

due process claim invites no such analogy for the reasons discussed above—namely, because it is not a claim that requires her to "negate an element of the offense of which [she] has been convicted" to succeed on her § 1983 claim. *Heck*, 512 U.S. at 486 n.6; *see McDonough*, 139 S. Ct. at 2161 (Thomas, J., dissenting) ("[T]he analysis under [*Preiser v. Rodriguez*, 411 U.S. 475 (1973) and *Heck*] depends on what facts a § 1983 plaintiff would need to prove to prevail on his claim.").

Accordingly, imposing a favorable termination element here would violate § 1983 by undermining, rather than vindicating, the "values and purposes of the constitutional right at issue" (the unqualified right to judicial proceedings free from the appearance of conflict or bias). *Manuel*, 580 U.S. at 370.

## III. Barring claims like Wilson's is contrary to the plain text, history, and purpose of Section 1983.

The conclusion above (i.e., that § 1983 claims must proceed in the absence of their collision with another federal statute and the absence of a favorable termination element of the claim itself) advances § 1983's "central objective," which is "to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief." *Hardin v. Straub*, 490 U.S. 536, 539 n.5 (1989)

(quotation marks and citations omitted). This conclusion vindicates § 1983's "uniquely federal remedy against incursions . . . upon rights secured by the Constitution and laws of the Nation," whereby the statute "is to be accorded a sweep as broad as its language." *Id.* (quotation marks and citations omitted).

In further support of this conclusion about the primacy of § 1983's constitutional protections over common law rules, Judge Willett recently recounted new historical scholarship revealing that § 1983 abrogates and displaces any common law limitations on the statute's unqualified right to vindicate state-level constitutional violations in federal court. *See Rogers v. Jarrett*, 63 F.4th 971, 979–80 (5th Cir. 2023) (Willett, J., concurring) (citing Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Calif. L. Rev. 201 (2023)). The statute's text, properly understood, "explicitly displaces common-law defenses. The language that Congress passed makes clear that § 1983 claims are viable notwithstanding 'any such law, statute, ordinance, regulation, custom, or usage of the State to [the] contrary.' The language is unsubtle and categorical, seemingly erasing any need for unwritten, gap-filling implications, importations, or incorporations. Rights-violating state

actors are liable—period—*notwithstanding* any state law to the contrary." *Id.*

This understanding of § 1983's text means that Wilson's procedural due process claim must go forward notwithstanding any of the purported state policy and common law arguments the defendants try to erect here, *see* Midland County & Petty Br. at 22–35; Schorre Br. at 21–34—as long as Wilson's claim does not lie within the core of habeas corpus and therefore raise concerns about the need to reconcile and avoid collisions with the federal habeas statute. Because no such concerns exist for noncustodial plaintiffs like Wilson, her claim must proceed. *See* Opening Br. at 33–35.

That primacy of remedies for constitutional violations by public officials notwithstanding state laws or common law rules (which are addressed to harms by public and private persons alike) makes sense because "[i]n constitutional cases, . . . the substantive heart of the case is the special power of the government to do harm." Whitman, *supra*, 72 Chi.-Kent L. Rev. at 669; *accord Carey*, 435 U.S. at 266 ("the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions"). And such

primacy of constitutional rights vindicates Justice Souter's concurrence in *Heck*, where he (1) explained that in assessing § 1983 claims, "the common law [is not] the master of statutory analysis, [but rather] the servant," and (2) correctly concluded that *Heck*'s claim-channeling rule for custodial plaintiffs does not "needlessly place at risk the rights of those outside the intersection of § 1983 and the habeas statute, individuals not 'in custody' for habeas purposes"—like Wilson here. 512 U.S. at 494, 500 (Souter, J., concurring).

As explained at length in Wilson's opening brief, neither the Supreme Court nor this Court has "settle[d] the[se] issue[s]" about the scope of the *Heck* bar. *Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004); *see* Opening Br. at 23–32. Certainly, neither Court has grappled with the implications of Professor Reinert's recent scholarship regarding the primacy of constitutional claims over state or common law defenses under § 1983. The defendants' response that the "Supreme Court has not overruled *Randell v. Johnson*," *see* Midland County & Petty Br. at 20–23; Schorre Br. at 19–21, misses the point. This Court's precedent is clear that *Muhammad* need only have "disavow[ed] the mode of analysis on which" *Randell* relied, which *Muhammad* did by making clear that

*Randell*'s sole rationale was wrong. *Stokes v. Sw. Airlines*, 887 F.3d 199, 204 (5th Cir. 2018); *see* Opening Br. at 27–31. This Court has "the authority *and obligation*" to decide these important issues, and to give effect to § 1983's text, history, and purpose, as several of its sister circuits have done. *Stokes*, 887 F.3d at 204; *see* Opening Br. at 37–38, 41.

## IV. This Court lacks jurisdiction to decide the defendants' un-appealed non-*Heck* arguments, which are wrong anyway.

An appellee may not, "without cross appeal, seek to avoid all liability . . . or to convert a dismissal without prejudice into a dismissal with prejudice." Wright & Miller, Federal Practice and Procedure § 3904 (3d ed. 2023 update) (collecting cases). This Court treats that rule as jurisdictional. Here, the purported alternative grounds for dismissal raised in the defendants' response briefs would do both of those things, so this Court lacks the authority to decide them. Even if it were a matter of discretion, this Court generally declines to decide issues not addressed by the district court, and here the district court did not reach any of the defendants' un-appealed alternative arguments—which, in any event, are without merit.

**A.** **Ruling for the defendants on any of their alternative arguments would expand the scope of their relief on appeal, but they did not cross-appeal on those issues, so this Court lacks jurisdiction to decide them.**

Whether *Heck* bars Wilson's procedural due process claim is the only issue decided by the district court and the only issue argued by Wilson on appeal. *See* Opening Br. at 1–3 (Statement of the Issues). Now, the defendants raise alternative arguments they say independently warrant affirmance. *See* Midland County & Petty Br. at 35–51; Schorre Br. at 34–53. But ruling for the defendants on any of those alternative grounds would expand the scope of their relief on appeal from the district court's dismissal without prejudice to dismissal with prejudice. Because the defendants did not cross-appeal on any of those issues, this Court lacks jurisdiction to decide them. And even if it were a discretionary choice, this Court should, as it usually does, decline to address in the first instance issues undecided by the district court.

**1.** The district court dismissed Wilson's claims "without prejudice." ROA.380 (Final Judgment); ROA.379 (Order). Like the magistrate judge, it did so on one holding, without addressing any other arguments the defendants raised for dismissal: "Wilson's argument that *Heck* does not bar her Section 1983 suit is unavailing." ROA.378 (Order Adopting

Report and Recommendation); *see* ROA.328 (Report and Recommendation) ("Both Motions contain additional arguments as to why Defendants believe dismissal is proper, however, as Defendants' *Heck* argument is dispositive, the Court does not reach Defendants' other arguments."). So Wilson has appealed and argued only the *Heck* issue before this Court. *See* Opening Br. at 1–3 (Statement of the Issues).

After obtaining their dismissals without prejudice on *Heck* grounds, the defendants did not cross-appeal on any issue. Nevertheless, they urge this Court to affirm on alternative grounds, namely: failure to allege county action, so Midland County cannot be held liable at all for Wilson's claim; failure to allege causation against Schorre, so he cannot be held liable at all for Wilson's claim; absolute immunity or qualified immunity for Petty and Schorre, so they cannot be held liable at all for Wilson's claim; failure to state a due process claim, so no defendant can be held liable at all for Wilson's claim; and expiration of the statute of limitations, so no defendant can be held liable at all for Wilson's claim. *See* Midland County & Petty Br. at 35–51; Schorre Br. at 34–53.

Because the defendants did not cross-appeal on any of those alternative grounds, this Court cannot decide them. An "appellee may

not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *United States v. Am. Ry. Exp. Co.*, 265 U.S. 425, 435 (1924). Accordingly, "an appellee cannot, without cross-appeal, seek to avoid all liability . . . or to convert a dismissal without prejudice into a dismissal with prejudice." Wright & Miller, *supra*, § 3904 (collecting cases, including from this Court). This Court "treat[s] this as a jurisdictional matter." *Arvie v. Broussard*, 42 F.3d 249, 250 (5th Cir. 1994).

Here, all the alternative grounds for affirmance argued by the defendants would have the effect of their avoiding all liability for Wilson's procedural due process claim and of converting the district court's dismissal without prejudice into a dismissal with prejudice. Because they did not cross-appeal on those grounds, this Court "simply has no authority to grant [the defendants such] relief that would expand [their] rights under the judgment." *United States v. Coscarelli*, 149 F.3d 342, 343 (5th Cir. 1998) (en banc). Indeed, because this rule is jurisdictional, even when a district court enters dismissal without prejudice where it "should have been with prejudice," this Court does not "change the

dismissal from one without prejudice to one with prejudice" without a cross-appeal. *Arvie*, 42 F.3d at 250.

In short, this Court only has jurisdiction to decide the *Heck* issues appealed and argued by Wilson, not any of the alternative un-appealed grounds for dismissal argued by the defendants.

**2.** Even if this rule were not jurisdictional (which it is), the Court should decline to reach the defendants' alternative arguments because the district court did not decide them. This Court has "repeatedly observed" that it is a "court of review, not first view." *Rest. Law Ctr. v. U.S. Dep't of Labor*, 66 F.4th 593, 597 (5th Cir. 2023) (citation omitted). So, "as a general rule," this Court does "not consider an issue not passed upon below," including questions of immunity. *Peña v. City of Rio Grande*, 879 F.3d 613, 621 (5th Cir. 2018) (quotation marks and citations omitted). The district court should pass first on the defendants' alternative arguments.

In any event, as briefly explained in the next section, the defendants' purported alternative bases for dismissal are without merit.

**B.    The defendants' alternative arguments are wrong.**

As just explained, this Court lacks jurisdiction to reach the defendants' purported alternative grounds for dismissal, any of which would convert the district court's dismissal without prejudice into a dismissal with prejudice (on grounds not reached by the district court) and expand the defendants' relief without a required cross-appeal. Regardless, their alternative arguments would be easily disposed of, in no small part because they hinge on mischaracterizations of Wilson's procedural due process claim. To briefly address them:

**1.** All the defendants wrongly argue that Wilson has failed to state a due process claim. Their first assertion in support is that no due process claim lies because "the facts" supported Wilson's conviction, and their second is that Wilson has not pleaded an "actual conflict" of interest in her case. *See* Midland County & Petty Br. at 39–44; Schorre Br. at 42–44. Wilson's complaint contests both assertions, but the arguments fail as a matter of law because (1) as recognized by the Texas Court of Criminal Appeals in Clinton Young's case, Wilson's procedural due process claim raises a type of "dual role" that "fits into the line of cases addressing incentives that a court's structure creates in every case,"

*Caliste*, 937 F.3d at 530 (citations omitted), and (2) a procedural due process claim is premised on the structure of the proceeding itself, not on "what the evidence was," *Tumey*, 273 U.S. at 535; *see also Balisok*, 520 U.S. at 647.[2] If the defendants can prove at trial that she would have been convicted anyway, Wilson may only be entitled to nominal damages, but that has no bearing on the viability of the claim. *Carey*, 435 U.S. at 266–67; *Hill*, 993 F.2d at 425–26.

**2.** Midland County wrongly argues that Wilson has not alleged county action for purposes of a *Monell* claim. *See* Midland County & Petty Br. at 36–39. Again, this is based on the mistaken assumption that Wilson's claim is about the sufficiency of evidence in her criminal case. Rather, it is based on the fact that Midland County's policymakers (including Schorre) knowingly made the hiring and staffing decision to have Petty simultaneously work as a paid law clerk to Judge Hyde (who presided over Wilson's case) and as a paid assistant district attorney in cases before Judge Hyde for nearly two decades, including Wilson's. ROA.17–21, ROA.26–28 (all of these allegations supported by

---

[2] In any event, Wilson's allegations satisfy the defendants' incorrectly proffered actual-conflict standard because the complaint explains that Petty was actually involved in her case in both of his dual roles. ROA.26–28.

documentary evidence). Because, as explained above, that dual employment *is* the structural due process violation, it is a "policy statement . . . or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority," or at the very least a "widespread practice of city officials or employees" that the county knew about and approved. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc); *see Brown v. Lyford*, 243 F.3d 185, 192 (5th Cir. 2001) ("[A] district attorney [such as Schorre] with the final word on hiring or firing within the district attorney's office sets county policy regarding those decisions. That can then support *Monell* liability for the county.").

**3.** Schorre wrongly argues that Wilson has not alleged causation as to him because he did not "cause[] her conviction." *See* Schorre Br. at 34–42. This argument fails for the same reason that the ones already discussed do: Wilson's claim is not about what happened at her trial, but rather the proceeding's *undisclosed structural defect based on county employment decisions*. Schorre was the district attorney who made that employment decision as to Petty, so he is properly liable for (i.e., caused)

that structural defect. And—contrary to Schorre's improper attempt to contest this historical fact at the pleading stage—the complaint makes clear that both Midland County's hiring of Petty as a paid law clerk to Judge Hyde and Schorre's hiring of Petty as an assistant district attorney *with knowledge* of Petty's law clerk position *predated* Wilson's trial. ROA.17, ROA.27.

**4.** Schorre and Petty argue that they are entitled to absolute immunity or qualified immunity. *See* Midland County & Petty Br. at 44–46; Schorre Br. at 45–48. They are entitled to neither—even without accounting for the proper understanding of § 1983 as imposing liability "notwithstanding" any immunities. *See* section III above (citing *Rogers*, 63 F.4th at 979–80 (Willett, J., concurring)).

Schorre is not entitled to prosecutorial immunity because, under the Supreme Court's "functional approach," Wilson's structural procedural due process claim arises not from Schorre's role as an "advocate," but from his "acts of . . . administration"—i.e., his knowing decision to hire Petty as a prosecutor to appear before the very judges for whom Petty simultaneously worked as a law clerk. *Buckley v.*

*Fitzsimmons*, 509 U.S. 259, 270, 273 (1993); *Burns v. Reed*, 500 U.S. 478, 486 (1991).

Similarly, Petty is not entitled to prosecutorial or judicial immunity because the nature of Wilson's claim is premised on his employment (i.e., "administrative") decision to simultaneously wear two conflicting hats. *Forrester v. White*, 484 U.S. 219, 228 (1988). Moreover, Petty is not entitled to prosecutorial immunity because his work on Wilson's case for Judge Hyde while simultaneously employed as a prosecutor was not "preparation for the initiation of a prosecution or for judicial proceedings" as a prosecutor. *Buckley*, 509 U.S. at 273. And Petty is not entitled to judicial immunity because his administrative decision to participate in Wilson's case on both sides of the bench—which is the basis of Wilson's claim—is decidedly not the "carrying out [of] judicial functions." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991). It is worth noting that cloaking Petty in either of these immunities cannot be "justified by overriding considerations of public policy" because, under the rare but egregious dual-employment circumstances of this case, it would absurdly transform the constitutional violation into the *basis* for immunity. *Forrester*, 484 U.S. at 224.

Finally, neither Schorre nor Petty is entitled to qualified immunity because the conflict of interest posed by the simultaneous wearing of judicial and prosecutorial hats is a "violation . . . so obvious that" they had "fair warning" of its unconstitutionality. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see In re Murchison*, 349 U.S. 133, 136–37 (1955) (holding unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator); *accord Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009) ("The unconstitutionality of outrageous conduct obviously will be unconstitutional.").

**5.** All the defendants wrongly argue that the statute of limitations expired before Wilson brought her claim because she knew or had constructive knowledge of her injury more than two years before suing. *See* Midland County & Petty Br. at 46–51; Schorre Br. at 48–53. This argument is, of course, mutually exclusive of their argument that the *Heck* bar applies because, they say, the claim does not accrue until she succeeds in a state habeas suit. That argument fails—and Wilson's claim has accrued—for the reasons discussed at length above. And it is timely. Wilson did not "know[] or [have] reason to know of the injury which is the basis of [her] action" until, at the earliest, February 2021 (when the

scandal made national news) or April 2021 (when she actually learned of it). *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993). Under either date, her April 2022 complaint was obviously timely. The defendants' arguments to the contrary again fail to recognize that the injury which is the basis of Wilson's action is her trial's *concealed structural defect based on the defendants' employment decisions*—which, as discussed above, is not premised on the particulars of her trial, which is the strawman injury on which the defendants premise their primary limitations argument. Finally, the defendants' constructive-knowledge argument invites this Court to hold that every criminal defendant should investigate the possibility that a prosecutor is simultaneously working both sides of the bench in their criminal trial—an insult to the presumed integrity of judicial proceedings.

*     *     *

Properly understood, Wilson's procedural due process claim arising from the structurally defective judicial proceeding the defendants subjected her to faces no substantive or procedural hurdle—neither the potential *Heck* hurdle that is actually before this Court, nor any of the others improperly raised. Her case should proceed.

## Conclusion

This Court should reverse the district court's dismissal with respect to all claims against all defendants and remand for further proceedings.

June 5, 2023                    Respectfully submitted,

                               s/ Jaba Tsitsuashvili
                               Jaba Tsitsuashvili
                                   *Lead counsel*
                               Robert J. McNamara
                               INSTITUTE FOR JUSTICE
                               901 N. Glebe Rd., Ste. 900
                               Arlington, VA 22203
                               (703) 682-9320
                               jtsitsuashvili@ij.org
                               rmcnamara@ij.org

                               *Counsel for Plaintiff-Appellant*

## Certificate of Service

I certify that on June 5, 2023, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished on all counsel of record by the appellate CM/ECF system.

s/ Jaba Tsitsuashvili
*Lead Counsel for Plaintiff-Appellant*

## Certificate of Compliance

1. This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,998 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief is written in a proportionally spaced typeface, 14-point Century Schoolbook with 12-point Century Schoolbook footnotes, using Microsoft Word 2016.

s/ Jaba Tsitsuashvili
*Lead Counsel for Plaintiff-Appellant*