**22-50998**

In The
# United States Court of Appeals
### For The Fifth Circuit

**ERMA WILSON,**

*Plaintiff-Appellant,*

*v.*

**MIDLAND COUNTY, TEXAS;**
**WELDON (RALPH) PETTY, JR., sued in his individual capacity;**
**ALBERT SCHORRE, JR., sued in his individual capacity,**

*Defendants-Appellees.*

On appeal from the United States District Court
for the Western District of Texas,
7:22-cv-85, Hon. David Counts, District Judge, presiding.

---

## APPELLANT'S PETITION FOR REHEARING EN BANC

---

Jaba Tsitsuashvili
  *Lead counsel*
Robert J. McNamara
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
(703) 682-9320
jtsitsuashvili@ij.org

*Counsel for Plaintiff-Appellant*

# Certificate of Interested Persons

(1)    Case no. 22-50998, *Wilson v. Midland County, Texas et al.*

(2)    The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

| **Appellant** | **Counsel for Appellant** |
|---|---|
| Erma Wilson | INSTITUTE FOR JUSTICE<br>Jaba Tsitsuashvili<br>Robert J. McNamara |

| **Appellees** | **Counsel for Appellees** |
|---|---|
| Midland County, Texas<br>Weldon (Ralph) Petty, Jr. | SHAFER, DAVIS, O'LEARY & STOKER<br>Richard Layne Rouse<br>Miles Nelson |
| Albert Schorre, Jr. | LYNCH, CHAPPELL & ALSUP<br>Randall L. Rouse<br>Steven Kiser<br>Lisa K. Hooper |

s/ Jaba Tsitsuashvili
*Lead Counsel for Plaintiff-Appellant*

## Rule 35(b)(1) Statement

The panel opinion warrants en banc review under both Rule 35 criteria, for the reasons detailed in the unanimous opinion itself.

First, the panel explained that it was bound to follow circuit precedent "in tension" with Supreme Court precedent. Op. 14. In *Heck v. Humphrey*, the Supreme Court established a favorable termination requirement as a prerequisite for certain § 1983 claims by custodial plaintiffs. In *Randell v. Johnson*, this Court extended that requirement to *non*custodial § 1983 plaintiffs, reasoning that *Heck* unequivocally compelled it. The panel here was bound to follow *Randell*. But it was "unconvinced by *Randell*'s reasoning," because in *Muhammad v. Close* the Supreme Court clarified that *Heck*'s extension to noncustodial plaintiffs was (and is) "unsettled." Op. 14. Per the panel, *Randell* even conflicts with *Heck* itself: "The paramount concern motivating *Heck*, that a prisoner could use § 1983 to circumvent § 2254's habeas requirements . . ., is simply not implicated when the plaintiff is not incarcerated." Op. 20. In short, *Randell*'s extension of *Heck* to noncustodial plaintiffs "conflicts with [two] decision[s] of the United States Supreme Court," so it warrants en banc review. FRAP 35(a)(1), 35(b)(1)(A).

Second, the panel opinion explained that it splits with six circuits. Op. 17–19 (detailing six-to-five split). Those six hold that extending *Heck* beyond its rationale (avoiding custodial plaintiffs' circumvention of § 2254, the federal habeas statute) "subverts § 1983's broad textual command." Op. 22. This split is "of exceptional importance." FRAP 35(a)(2), 35(b)(1)(B). In this circuit and four others that extend *Heck*, "examples abound of non-prisoners with facially meritorious constitutional claims denied their day in court, including Erma Wilson." Op. 20. But most circuits avoid that "unseemly" result by cabining *Heck* to custodial plaintiffs (whose federal claims are channeled through § 2254); they do not leave noncustodial plaintiffs with "*no* federal forum to vindicate their federal constitutional rights." And that majority rule "better aligns with Congress' broad textual command," by which § 1983 applies unless displaced by § 2254. Op. 5, 20. "A core function of en banc review is to address such circuit splits." *Oliver v. Arnold*, 19 F.4th 843, 860 (5th Cir. 2021) (Duncan, J., dissenting from denial of en banc rehearing, with Jones, Smith, Elrod, Engelhardt, and Wilson, JJ.). That function is most apt here because *Randell*'s since-discredited overreading of *Heck* has kept this Court from ever doing the statutory analysis.

# Table of Contents

**Page**

Certificate of Interested Persons ............................................................. i

Rule 35(b)(1) Statement ........................................................................... ii

Table of Contents .................................................................................. iv

Table of Authorities................................................................................ v

Statement of the Issue ........................................................................... 1

Statement of the Proceedings ............................................................... 2

Statement of the Facts ........................................................................... 3

Argument.................................................................................................. 5

    I.    The panel recognized that *Randell v. Johnson* is "in tension" with two Supreme Court decisions.............................................. 7

    II.   The panel recognized that *Randell* puts this Court on the minority side of an entrenched circuit split regarding the text of § 1983, but it has never done the statutory analysis to answer that "question of exceptional importance." ............... 12

Conclusion ............................................................................................... 16

Certificate of Service ............................................................................. 17

Certificate of Compliance ...................................................................... 18

# Table of Authorities

**Page(s)**

## Cases

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000)................................................................8

*Health & Hosp. Corp. of Marion Cnty. v. Talevski,*
    599 U.S. 166 (2023)..............................................................15

*Heck v. Humphrey,*
    512 U.S. 477 (1994)........................................................*passim*

*Muhammad v. Close,*
    540 U.S. 749 (2004)........................................................*passim*

*Oliver v. Arnold,*
    19 F.4th 843 (5th Cir. 2021) ....................................... iii, 15

*Randell v. Johnson,*
    227 F.3d 300 (5th Cir. 2000)..........................................*passim*

*Savory v. Cannon,*
    947 F.3d 409 (7th Cir. 2020)..............................................10

*Spencer v. Kemna,*
    523 U.S. 1 (1998)...............................................................8, 9

## Statutes

28 U.S.C. § 2254 ...................................................................*passim*

42 U.S.C. § 1983 ...................................................................*passim*

## Rules

Fed. R. App. P. 35(a)(1) .............................................ii, 6, 7, 12

Fed. R. App. P. 35(a)(2) ............................................iii, 6, 12

Fed. R. App. P. 35(b)(1)(A) .......................................ii, 6, 7, 12

Fed. R. App. P. 35(b)(1)(B) .......................................iii, 6, 12, 15

## Statement of the Issue

The sole issue on appeal is "simply stated": Does *Heck v. Humphrey*'s "favorable-termination rule [which is a prerequisite to bringing certain constitutional § 1983 claims] apply only to those currently in custody (like Roy Heck) or also to those not in custody (like Erma Wilson)?" Op. 9.

A key difference between the two groups is access to a non-§ 1983 avenue for their federal claims. Custodial plaintiffs have a federal alternative (habeas, via § 2254), so their claims are channeled there. Op. 20. Noncustodial plaintiffs lack such an alternative, so extending *Heck* to their claims—as this Court did in *Randell v. Johnson*—leaves them with "*no* federal forum to vindicate their federal constitutional rights." Op. 5. That is why most circuits reject *Randell*'s extension of *Heck* to all noncustodial plaintiffs. Op. 17–19. The unsettled question is whether the extension "subverts § 1983's broad textual command." Op. 22. As recognized by the panel here, *Randell*'s since-discredited overreading of *Heck* as having settled this issue has kept this Court from ever doing that statutory analysis.

## Statement of the Proceedings

Erma Wilson sued Midland County, Ralph Petty, and Albert Schorre, seeking damages under § 1983. Wilson alleged that the defendants violated her Fourteenth Amendment right to due process by prosecuting and convicting her of drug possession with Petty working "*both* as a Midland County prosecutor and as a law clerk for the" judge overseeing Wilson's case. Op. 6.

The defendants moved to dismiss. They argued that Wilson's claims are barred by this Court's interpretation of *Heck v. Humphrey*, 512 U.S. 477 (1994) in *Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000) (per curiam). The magistrate judge and the district court agreed, holding that *Randell* remains binding and that it imposes a favorable termination requirement on Wilson's federal § 1983 claims, even though she could never bring the claims in federal habeas either. ROA.325–332, ROA.374–380.

The panel affirmed. In the process, it all but called for en banc review because its "result is difficult to explain. What allegedly happened here (and in hundreds of other criminal cases in Midland County) is utterly bonkers: the presiding judge employed a member of the

2

prosecution team as a right-hand adviser. . . . [Wilson] has suffered the fallout of a criminal justice system that offended the gravest notions of fundamental fairness [and] upended her life. However, our 2000 decision in *Randell* not to relax *Heck*'s favorable-termination requirement for noncustodial plaintiffs has not been overruled—at least not yet." Op. 21.

## Statement of the Facts

"The facts are easy to lay out—though hard to take in." Op. 5. Erma Wilson's childhood dream of becoming a registered nurse was derailed by a drug possession conviction in Midland County, Texas. "Wilson doggedly maintained her innocence (and does to this day)—insisting that the cocaine found on the ground was not hers—and she rejected multiple plea deals, a rare choice in today's plea-bargain age." She "placed her faith in the justice system, trusting she would get due process and a fair trial." But her "faith was misplaced." Op. 1–2.

"Unbeknownst to Wilson, a Midland County assistant district attorney, Ralph Petty, had been moonlighting, acting as both accuser and adjudicator. For nearly 20 years, the multitasking Petty had worn two hats: (1) by day, a prosecutor in the public courtrooms of Midland County judges; and (2) by night, a law clerk in the private chambers of Midland

County judges. Disturbingly, Petty was working both sides of the bench, seeking favorable rulings while also writing them." Op. 2. Incredibly, this "utterly bonkers" arrangement was expressly blessed by Midland County's judges and its top prosecutor (defendant Schorre), even though it so obviously "offended the gravest notions of fundamental fairness." Op. 6, 21.

Petty's dual role—which resulted in disbarment, but only after he retired—infected hundreds of cases, including Wilson's conviction and one man's death sentence. Op. 6–7. Petty "advised fellow prosecutors regarding [Wilson's] case while also advising the judge presiding over it and surreptitiously drafting important rulings adverse to Wilson," as reflected by court documents and invoices. Op. 2–3 & n.2. In short, "Petty's conflict of interest was undeniable, and it flattened Wilson's constitutional guarantee of a fair trial." Op. 3.

When "Petty's dodgy side hustle belatedly came to light," Wilson's eight-year suspended sentence had expired, "making federal habeas a non-option." Op. 2, 4. With no other federal remedy for a conviction that "resulted from a tainted process offensive to the Constitution," Wilson sued for damages under § 1983. Op. 7 n.8, 8. But under this Court's

decision in *Randell v. Johnson*, "noncustodial plaintiffs [like Wilson] must meet the favorable-termination requirement" before invoking § 1983—"even if it's practically impossible for them to do so. Put simply, [this Court's] rule of orderliness bars relief for the disorderliness that Wilson suffered." Op. 4–5. That is, unless the full Court joins six others in holding that "*Randell*'s expansive reading of *Heck* subverts § 1983's broad textual command." Op. 21–22.

## Argument

The unanimous panel opinion makes clear why this case should be heard en banc under both Rule 35 criteria.

First, the panel recognized that *Randell v. Johnson*'s extension of *Heck v. Humphrey*'s favorable termination requirement to noncustodial § 1983 plaintiffs is "in tension" with two Supreme Court decisions: (1) *Muhammad v. Close*, which discredited *Randell*'s reasoning that *Heck* settled the issue and compelled the extension; and (2) *Heck* itself, which foreclosed custodial plaintiffs' § 1983 claims based on their collision with § 2254, a concern that "is simply not implicated" for noncustodial plaintiffs' claims. Op. 14, 20. Those tensions were insufficient for the panel to hold that *Randell* has been "unequivocally superseded," but they

are "conflicts with [two] decision[s] of the United States Supreme Court" that warrant en banc review. Op. 14; FRAP 35(a)(1), 35(b)(1)(A).

Second, the panel recognized an "entrenched circuit split" regarding the propriety of extending *Heck* to noncustodial § 1983 plaintiffs. Op. 12, 17–19. This Court's minority position leaves noncustodial plaintiffs like Erma Wilson with "*no* federal forum to vindicate their federal constitutional rights," and the panel strongly suggested (in line with six other circuits) that *Randell*'s rule "subverts § 1983's broad textual command." Op. 5, 22. So whether *Randell*'s rule is right as a matter of statutory interpretation (and constitutional accountability) is "a question of exceptional importance." FRAP 35(a)(2), 35(b)(1)(B).

Crucially, this Court has never done that statutory analysis. Even though *Randell* took a side of the split, it did not reach the statutory question because it reasoned that *Heck* compelled its result—a reading of *Heck* the Supreme Court subsequently discredited in *Muhammad*, which said the issue remains unsettled. This Court should finally weigh in and decide: Can § 1983's federal avenue for federal claims be closed off in the absence of any collision with an alternative federal avenue (such as § 2254)? The answer should result in *Randell*'s overruling.

6

## I.    The panel recognized that *Randell v. Johnson* is "in tension" with two Supreme Court decisions.

*Randell v. Johnson* extended *Heck v. Humphrey*'s favorable termination requirement for certain constitutional § 1983 claims to noncustodial plaintiffs, reasoning that *Heck* settled the issue and compelled the extension. But, as explained by the panel here: (1) *Randell*'s reasoning has been discredited by *Muhammad v. Close*, which said *Heck* did not settle the issue; and (2) *Randell*'s outcome conflicts with *Heck*'s own rationale, which is based on conciliation between § 1983 and § 2254—a concern unimplicated by noncustodial plaintiffs' claims (since § 2254 has nothing to say about noncustodial individuals). Those acknowledged "tension[s]" with Supreme Court precedent warrant revisiting *Randell*. Op. 14; FRAP 35(a)(1), 35(b)(1)(A).

**1.** In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court "established the favorable-termination rule: a state inmate's § 1983 suit is 'not cognizable' unless the inmate first shows a 'favorable termination' to his criminal conviction or confinement," meaning it has been undone by a state or federal proceeding, such as habeas. Op. 8–9. That holding was unremarkable as to custodial plaintiffs: Because they have a specific federal avenue for invalidating a conviction via § 2254 (the federal

habeas statute), allowing them to do so via § 1983 would circumvent § 2254's more onerous procedural requirements. Op. 20. So, as applied to custodial plaintiffs, *Heck* was just the "classic judicial task of reconciling [multiple] laws enacted over time, and getting them to 'make sense' in combination." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (citation omitted). Accordingly, *Heck*'s application to custodial plaintiffs was 9–0.

"[B]ut the Court splintered 5–4 over the rule's reach and rigidity." Op. 9. Four concurring justices "urg[ed] that favorable termination should not be required of noncustodial plaintiffs who fall 'outside the intersection of § 1983 and the habeas statute'—those [like Erma Wilson] who 'discover (through no fault of their own) a constitutional violation after full expiration of their sentences.' As these individuals cannot invoke federal habeas since they are not currently 'in custody,' they should be able to sue under § 1983, 'the *only* statutory mechanism' available to them." Op. 10 (quoting Justice Souter's four-justice *Heck* concurrence; emphasis added).

Justice Souter reiterated that view in another four-justice concurrence in *Spencer v. Kemna*, 523 U.S. 1 (1998). He thought it

"important to read the Court's *Heck* opinion as subjecting only *inmates* seeking § 1983 damages for unconstitutional conviction or confinement" to a favorable termination requirement, "lest the plain breadth of § 1983 be unjustifiably limited at the expense of persons not 'in custody.'" The "better view," therefore, "is that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." Op. 10–11 (quoting Justice Souter's four-justice *Spencer* concurrence). Justice Stevens agreed in dissent, making five justices that saw *Heck*'s favorable termination requirement as simply a matter of inter-statutory conciliation between § 1983 and § 2254. Op. 11–12. According to them, *Heck* avoids circumvention of § 2254 by custodial plaintiffs, but it has no effect on noncustodial plaintiffs, who are outside § 2254's purview and remain free to bring § 1983 claims.

**2.** Despite that, in *Randell v. Johnson* this Court held that *Heck* "*unequivocally*" created a "*universal* favorable termination requirement." Op. 12 (quoting 227 F.3d 300, 301 (5th Cir. 2000) (per curiam); emphases added). So *Randell* extended *Heck* to noncustodial plaintiffs, even though

9

they are "unable to file a federal habeas petition." Op. 12. Support for that reasoning is *Heck*'s footnote 10, which argued that it should apply to noncustodial plaintiffs, but which "Judge Easterbrook convincingly explains . . . is mere dicta." Op. 9 n.19 (citing *Savory v. Cannon*, 947 F.3d 409, 432 (7th Cir. 2020) (Easterbrook, J., dissenting)). Worse yet, that dicta relied on what the panel recognized was an "improvident" assumption: that no former prisoners of the sort that concerned Justice Souter (e.g., those who learned of their constitutional injuries after release, like Erma Wilson) would have meritorious constitutional claims. In reality, "examples abound of non-prisoners with facially meritorious constitutional claims denied their day in court [by *Randell*'s extension of *Heck*], including Erma Wilson." Op. 20.

**3.** In light of that reality, the panel here expressed doubts about both *Randell*'s reasoning and its result under Supreme Court precedent.

As to reasoning: *Randell* reasoned that *Heck* unequivocally compelled extending the favorable termination requirement to noncustodial § 1983 plaintiffs. But the Supreme Court subsequently said that it "has yet to squarely answer whether the *Heck* bar applies to noncustodial § 1983 plaintiffs." Op. 13 (citing *Muhammad v. Close*, 540

U.S. 749, 752 n.2 (2004)). *Muhammad*'s clarification that *Heck* did not settle the issue is, of course, "in tension" with *Randell*'s holding that *Heck* did settle the issue. So the panel here explained that while it remained bound by *Randell*, it was "unconvinced by *Randell*'s reasoning." Op. 14.

As to result: The panel doubted *Randell*'s result under *Heck*'s own rationale. "The paramount concern motivating *Heck*, that a prisoner could use § 1983 to circumvent § 2254's habeas requirements (like exhaustion of state remedies), is simply not implicated when the plaintiff is not incarcerated. There is no risk of a collision between § 1983 and § 2254 if the latter never enters the *Heck* intersection." Op. 20. Indeed, *Heck* itself described the issue as concerning "the intersection" between § 1983 and § 2254. Op. 8 (quoting 512 U.S. at 480). And "the word 'prisoner' pervades the *Heck* opinion," so "it seems sensible to read *Heck* as having to do with, well, prisoners." Op. 19. Nevertheless, *Randell* continues to extend *Heck* to non-prisoners, even though § 2254 says nothing about them and therefore does not collide with their § 1983 claims.

**4.** Despite *Randell*'s conflicts with *Muhammad* and *Heck*, the panel held that its "hands are tied": "Only the en banc court, or the United

11

States Supreme Court, can deliver a different result that better aligns with Congress' broad textual command in § 1983." Op. 5. The full Court should take this opportunity to confront *Randell*'s "conflicts with [two] decision[s] of the United States Supreme Court." FRAP 35(a)(1), 35(b)(1)(A).

## II. The panel recognized that *Randell* puts this Court on the minority side of an entrenched circuit split regarding the text of § 1983, but it has never done the statutory analysis to answer that "question of exceptional importance."

As detailed by the panel, *Randell*'s reasoning and result—which were outcome determinative in this case—conflict with six sister circuits. Those six hold, as a matter of statutory interpretation, that § 1983 is available to noncustodial plaintiffs who cannot or could not invoke § 2254. Op. 17–19. That circuit divide implicates "a question of exceptional importance" because it determines whether noncustodial plaintiffs like Erma Wilson have *any* federal forum to vindicate their federal constitutional rights. Op. 5, 20; FRAP 35(a)(2), 35(b)(1)(B). Whether *Heck* should be extended to noncustodial § 1983 plaintiffs is a matter of fidelity to congressional text—a statutory question this Court

has never answered, due to *Randell*'s since-discredited overreading of *Heck* as compelling the extension.

**1.** The panel outlined the circuit split: "The current line-up is 6–5 in favor of those circuits holding that *Heck* does *not* bar a § 1983 claim when the plaintiff is not in custody, since there is no collision at the § 1983/habeas intersection. Relaxing *Heck* for noncustodial plaintiffs (6): Second, Fourth, Sixth, Ninth, Tenth, Eleventh. Applying *Heck* to noncustodial plaintiffs (5): First, Third, Fifth, Seventh, Eighth." Op. 17–19 (citing each circuit's caselaw).

The six circuits that do not extend *Heck* to all noncustodial plaintiffs agree with Justice Souter's statutory analysis; they hold that no statutory basis exists to foreclose § 1983 in the absence of a claim's conflict with § 2254. Op. 18 nn.61–66 (summarizing the rationale of each circuit in the majority). Meanwhile, the five circuits (including this one) that do extend *Heck* to all noncustodial plaintiffs do not base their decision on a conflict between § 1983 and § 2254; rather, they simply read *Heck* as compelling the extension as a matter of vertical stare decisis. Op. 19 nn.67–71 (summarizing the rationale of each circuit in the minority).

13

**2.** That entrenched circuit split is exceptionally important because it implicates vindication of constitutional rights, accountability for constitutional wrongs, and fidelity to congressional text.

In this circuit and the four others that extend *Heck*, "noncustodial individuals on the receiving end of violative conduct, however egregious, will have *no* federal forum to vindicate their federal constitutional rights." Op. 5. Indeed, Wilson's "disturbing case" illustrates that phenomenon. Op. 3. But most circuits avoid that "unseemly" result by following *Heck*'s stated logic and cabining it to plaintiffs whose claims conflict with § 2254. Op. 5, 18. Stated simply, the majority rule is this: (1) Because custodial plaintiffs' federal claims can be brought via federal habeas under § 2254, they must be channeled there. (2) Because noncustodial plaintiffs' claims cannot or could not be brought via § 2254, they remain cognizable under § 1983. In most circuits, no one is left out to dry. Under *Randell*, Erma Wilson is.

In the panel's words, the majority rule "better aligns with Congress' broad textual command," under which § 1983 applies unless displaced by § 2254 or another federal remedial scheme. Op. 5. As the panel recognized, the majority rule is based on the reasoning undergirding

*Heck* itself—which "is simply not implicated when the [§ 1983] plaintiff is not incarcerated." Op. 20. And the Supreme Court recently reinforced that conclusion. Unless the defendants can show that Congress intended another, "incompatible" remedial scheme to "supplant" § 1983 under the circumstances, it is "presumptively" available "to enforce unambiguously conferred federal individual rights," such as the Fourteenth Amendment right to due process that was denied Erma Wilson. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 172, 189–190 (2023). Under § 2254, the federal habeas scheme can meet the "supplant" standard for custodial plaintiffs, but not for noncustodial plaintiffs, whom § 2254 says nothing about. "There is no risk of a collision between § 1983 and § 2254 if the latter never enters the *Heck* intersection." Op. 20.

**3.** And yet, this Court remains in the minority of circuits that extend *Heck* to noncustodial plaintiffs who never enter the *Heck* intersection, like Erma Wilson. Of course, "[a] core function of en banc review is to address such circuit splits." *Oliver v. Arnold*, 19 F.4th 843, 860 (5th Cir. 2021) (Duncan, J., dissenting from denial of en banc rehearing, with Jones, Smith, Elrod, Engelhardt, and Wilson, JJ.) (citing FRAP 35(b)(1)(B)). That function is particularly apt here because

*Randell*'s overreading of *Heck*—which *Muhammad* subsequently discredited—has kept this Court from ever doing the relevant statutory analysis. The full Court should now take this case en banc and do so for the first time.

## Conclusion

The petition for rehearing en banc should be granted.

January 4, 2024                 Respectfully submitted,

                                <u>s/ Jaba Tsitsuashvili</u>
                                Jaba Tsitsuashvili
                                    *Lead counsel*
                                Robert J. McNamara
                                INSTITUTE FOR JUSTICE
                                901 N. Glebe Rd., Ste. 900
                                Arlington, VA 22203
                                (703) 682-9320
                                jtsitsuashvili@ij.org
                                rmcnamara@ij.org

                                *Counsel for Plaintiff-Appellant*

## Certificate of Service

I certify that on January 4, 2024, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished on all counsel of record by the appellate CM/ECF system.

s/ Jaba Tsitsuashvili
*Lead Counsel for Plaintiff-Appellant*

## Certificate of Compliance

1. This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 35(b)(2) and Fifth Circuit Rule 35.5 because this brief contains 3,411 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief is written in a proportionally spaced typeface, 14-point Century Schoolbook with 12-point Century Schoolbook footnotes, using Microsoft Word 2016.

s/ Jaba Tsitsuashvili
*Lead Counsel for Plaintiff-Appellant*

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 14, 2023

Lyle W. Cayce
Clerk

No. 22-50998

Erma Wilson,

*Plaintiff—Appellant,*

*versus*

Midland County, Texas; Weldon (Ralph) Petty, Jr., *sued in his individual capacity*; Albert Schorre, Jr., *sued in his individual capacity*,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:22-CV-85

Before King, Willett, and Douglas, *Circuit Judges.*

Don R. Willett, *Circuit Judge*:

Since she was nine years old, Erma Wilson has dreamed of becoming a registered nurse. That dream ended 22 years ago when a Midland County jury convicted her of cocaine possession. Wilson doggedly maintained her innocence (and does to this day)—insisting that the cocaine found on the ground was not hers—and she rejected multiple plea deals, a rare choice in

today's plea-bargain age.[1] Erma Wilson placed her faith in the justice system, trusting she would get due process and a fair trial.

Wilson's faith was misplaced.

In Wilson's trial—and in hundreds of others in Midland County spanning decades—bedrock judicial norms were dishonored. Unbeknownst to Wilson, a Midland County assistant district attorney, Ralph Petty, had been moonlighting, acting as both accuser and adjudicator. For nearly 20 years, the multitasking Petty had worn two hats: (1) by day, a prosecutor in the public courtrooms of Midland County judges; and (2) by night, a law clerk in the private chambers of Midland County judges. Disturbingly, Petty was working both sides of the bench, seeking favorable rulings while also writing them.

As a first-time offender, Wilson was sentenced to eight years of community supervision. But the felony conviction derailed her lifelong dream of becoming a nurse. Fast forward 20 years: Petty's dodgy side hustle belatedly came to light, and Wilson filed this federal civil rights suit over her decades-old conviction, claiming that Petty's dual role denied her due process. Wilson does not allege that Petty was a frontline prosecutor in her case. But she does allege that he advised fellow prosecutors regarding her

---

[1] In America's criminal justice system, few cases actually go to trial. The system does not just *include* plea bargaining; the system *is* plea bargaining. In Texas, 94% of state convictions result from a guilty or no contest plea. ANNUAL STATISTICAL REPORT FOR THE TEXAS JUDICIARY: FY 2022, at 80 (2023). In federal courts, the rate is even higher: in fiscal year 2021, 98.3% of offenders pleaded guilty, an all-time high. GLENN R. SCHMITT & LINDSEY JERALDS, U.S. SENTENCING COMM'N, OVERVIEW OF FEDERAL CRIMINAL CASES: FISCAL YEAR 2021, at 8 (2022).

No. 22-50998

case while also advising the judge presiding over it and surreptitiously drafting important rulings adverse to Wilson.[2]

Lady Justice wears a blindfold because justice is supposed to be meted out evenhandedly. She holds scales because evidence is supposed to be weighed impartially. These ancient symbols of fairness and clear-sightedness—the very moral force underlying a just legal system—are mocked if one side can rig the game by calling its own balls and strikes. Petty's conflict of interest was undeniable, and it flattened Wilson's constitutional guarantee of a fair trial.

More broadly, this disturbing case also underscores that the American legal system regularly leaves constitutional wrongs unrighted. Many worthy § 1983 claims go unfiled, and those that *are* filed must navigate a thicket of immunity doctrines that shield government wrongdoing, thus turning valid claims into vanquished ones.[3] And here, there is a threshold hurdle that

---

[2] Petty used unique formatting and styling for the documents he drafted for Midland County district judges. This tell-tale formatting and styling appear on the Abstract of Disposition and Judgment in Wilson's case. Wilson asserts that county records will also show that Petty invoiced Judge Hyde, the judge in Wilson's case, for work performed on her case.

Some of Wilson's other allegations as to Petty's role are made "on information and belief." "The *Twombly* plausibility standard which applies to all civil actions, . . . does not prevent a plaintiff from 'pleading facts alleged on information and belief' where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible . . . ." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Evidence as to the particulars of what Petty worked on as an assistant district attorney and as a law clerk are in the possession of Defendants, and the other facts Wilson has alleged certainly make the inference of culpability plausible.

[3] Prosecutors, for example, enjoy absolute immunity for actions taken in their prosecutorial role. *Imbler v. Pachtman*, 424 U.S. 409, 428 (1976) ("[I]t has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." (quoting *Gregoire v.*

No. 22-50998

Wilson must overcome before she even *reaches* the formidable immunity gauntlet: the "favorable termination" rule from *Heck v. Humphrey*[4] (plus our own post-*Heck* precedent). Under the Supreme Court's *Heck* decision, a convicted party cannot seek § 1983 damages for unconstitutional conviction or imprisonment without first showing that the conviction or sentence has been reversed on appeal or otherwise declared invalid, such as by federal habeas relief.[5] The wrinkle here is that Petty's conflicted dual-hat arrangement came to light only *after* Wilson had served her whole sentence, making federal habeas a non-option.[6]

*Heck* aims to avoid a collision between § 1983 and federal habeas, but Wilson (and the amici supporting her) argue that *Heck* is inapplicable where federal habeas is unavailable. Other circuits have agreed, holding that favorable termination should only be required when a § 1983 plaintiff is eligible for federal habeas relief. This is a solid argument—but a foreclosed one in this circuit. Under our precedent's expansive reading of *Heck*, noncustodial plaintiffs must meet the favorable-termination requirement,

---

*Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)). Local and county governments enjoy immunity unless unconstitutional actions were taken pursuant to an official policy or custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Other government officials enjoy the judge-created doctrine of qualified immunity, which lets wrongdoers duck consequences for rights-robbing violations—no matter how deliberate, brazen, and knowingly corrupt—unless plaintiffs can point to a functionally identical case that previously declared the same misconduct unlawful. *Zadeh v. Robinson*, 928 F.3d 457, 479 (5th Cir. 2019) (Willett, J., concurring) ("To some observers, qualified immunity smacks of unqualified impunity . . . ."); *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987). Upshot: Many Americans' rights are violated but not vindicated.

[4] 512 U.S. 477, 486–87 (1994).

[5] *Id.*

[6] 28 U.S.C. § 2254 only allows persons "in custody" to file an application for a writ of habeas corpus.

No. 22-50998

too—even if it's practically impossible for them to do so. Put simply, our rule of orderliness bars relief for the disorderliness that Wilson suffered.

This result is unseemly. Absent § 1983, noncustodial individuals on the receiving end of violative conduct, however egregious, will have *no* federal forum to vindicate their federal constitutional rights. But as a three-judge panel bound by controlling circuit precedent, our hands are tied. Only the en banc court, or the United States Supreme Court, can deliver a different result that better aligns with Congress' broad textual command in § 1983.[7]

Until then, this panel must AFFIRM.

## I

The facts are easy to lay out—though hard to take in.

### A

In 2001, a jury in Midland County, Texas, convicted Erma Wilson of cocaine possession. Police officers said they found crack cocaine on the ground near where Wilson had been standing with friends. She told the officers it wasn't hers. The officers then said they would release her if she told them who it belonged to. She said she didn't know. They arrested her for possession. Wilson rejected multiple plea deals, went to trial, was convicted, and received an eight-year suspended sentence. Wilson appealed, arguing that the trial court erred in denying her motion to suppress and that the evidence was legally and factually insufficient to support her conviction. The court of appeals affirmed across the board, and Wilson appealed no further, nor did she seek state or federal habeas relief.

---

[7] Or, and hear me out, Congress can always legislate, reclaiming its lawmaking prerogative against court-invented, counter-textual limitations on the broad statutory remedy that Congress crafted.

No. 22-50998

While Wilson's case was tried and appealed, Weldon "Ralph" Petty Jr. was working *both* as a Midland County prosecutor and as a law clerk for the Midland County district judges. He was first hired as a law clerk in March 2000. The next year, in early 2001, Petty was hired as an assistant district attorney by Albert Schorre, the district attorney at the time. But Petty didn't leave his law-clerk post. Rather, his employment contract with the District Attorney's Office specified that Petty "shall be permitted to continue the performance of legal services for the District Judges of Midland County, Texas and perform such work for the said District Judges as they shall desire and be paid for the same as ordered by the District Judges."

As an assistant district attorney, Petty worked on cases at all stages of prosecution. The same was true of his work on the other side of the bench. For instance, Petty was responsible for opposing habeas corpus petitions as an assistant district attorney and for working on habeas corpus rulings as a law clerk. Petty worked in these two conflicting roles from 2001–2014, and again in 2017 and 2018. Over his career, Petty is alleged to have been both the lead prosecutor and the law clerk on more than 300 cases. He retired in 2019.

In August 2019, the Midland County District Attorney, Laura Nodolf, discovered that Petty had been dually employed by her office and the district judges for nearly two decades. She sent letters to defendants found to be affected, acknowledging the blatant conflict of interest, adding, "This is a potential violation of the rules of ethics for attorneys." The Supreme Court of Texas certainly thought so. In April 2021, the Court concluded that Petty had engaged in professional misconduct, and upon Petty's motion for acceptance of resignation in lieu of disciplinary action, it cancelled Petty's law license and barred him from the practice of law in Texas. The story received national attention in 2021 when a death row prisoner named Clinton

No. 22-50998

Lee Young successfully obtained habeas relief on the grounds that Petty had worked directly on both sides of his case.[8]

Wilson did not receive a letter notifying her that she had been affected by Petty's conflict of interest. She says she learned of Petty's role in her case when news media began to cover Young's habeas petition. This was more than 20 years after she was convicted and long after she finished serving her suspended sentence.

B

Wilson brought 42 U.S.C. § 1983 claims against Midland County, Petty, and Schorre, alleging that Petty's improper moonlighting deprived her of due process. She also sought declaratory relief and compensatory and punitive damages. Defendants moved to dismiss, arguing that Wilson's claims are barred because she failed to meet *Heck*'s favorable-termination requirement for § 1983 plaintiffs.

The magistrate judge recommended dismissal under *Heck*. The district court agreed, overruling Wilson's objections, adopting the magistrate judge's report and recommendation, and entering final judgment dismissing Wilson's claims. This appeal followed.

II

We review Rule 12(b)(6) dismissals de novo, applying the same standard as the district court.[9] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

---

[8] It's worth noting that Young, who was on death row when Petty's dual role came to light, has access to § 1983. But because Wilson was never in custody, § 1983 remains out of reach for her. The former received a death sentence, the latter a suspended sentence. But both convictions resulted from a tainted process offensive to the Constitution.

[9] *Hines v. Quillivan*, 982 F.3d 266, 270–71 (5th Cir. 2020).

No. 22-50998

relief that is plausible on its face.'"[10] Midland County vehemently denies that Petty worked on Wilson's case at any stage—pretrial, trial, or appeal. But at the preliminary, motion-to-dismiss stage, "this framework is one-sided," meaning we must accept as true all well-pleaded facts in Wilson's complaint, which allege a structurally defective system that violated her constitutional right to a criminal proceeding free of actual or perceived bias.[11]

### III

This case revisits what *Heck* termed "the intersection"[12] of 42 U.S.C. § 1983 and 28 U.S.C. § 2254 (the federal habeas corpus statute), "the two most fertile sources of federal-court prisoner litigation."[13] Both statutes "provide access to a federal forum for claims of unconstitutional treatment at the hands of state officials, but they differ in their scope and operation."[14] Thirty years ago, in *Heck*, the Supreme Court addressed the statutes' interplay when a § 1983 plaintiff sues "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid."[15]

### A

*Heck* famously—and unanimously—established the favorable-termination rule: a state inmate's § 1983 suit is "not cognizable" unless the

---

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[11] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020).

[12] *Heck*, 512 U.S. at 480.

[13] Id.

[14] *Id.*

[15] *Id.* at 486.

inmate first shows a "favorable termination" to his criminal conviction or confinement. The Court defined "favorable termination" to mean "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[16] The Court disallowed Heck's § 1983 claim alleging that police knowingly destroyed evidence because a successful civil action would functionally and necessarily impugn the legality of his murder conviction.[17]

The bottom-line result in *Heck* was 9–0, but the Court splintered 5–4 over the rule's reach and rigidity. And over the decades, a deep circuit split has emerged over footnote 10[18]—specifically, over *dicta* in footnote 10.[19] The question is simply stated: does *Heck*'s favorable-termination rule apply only to those currently in custody (like Roy Heck) or also to those not in custody (like Erma Wilson)? The dicta in footnote 10 suggests the latter.[20]

---

[16] *Id.* at 486–87.

[17] *Id.* at 479, 490.

[18] *Id.* at 490 n.10. Justices Scalia, Rehnquist, Kennedy, Thomas, and Ginsburg signed on to this point. *Id.* at 478.

[19] Judge Easterbrook convincingly explains that footnote 10 is mere dicta:

Footnote 10 is the only part of the Court's opinion in *Heck* to address the appropriate treatment of plaintiffs whose custody has ended, and a clearer example of dicta is hard to imagine. The footnote concerns a subject that had not been briefed by the parties, that did not matter to the disposition of Heck's claim, and that the majority thought would not matter to anyone, ever. That belief has been embarrassed by the fact that many former prisoners contend that their convictions were wrongful but are no longer in a position to seek collateral review. *Heck* did not present for decision any question about the appropriate treatment of this situation.

*Savory v. Cannon*, 947 F.3d 409, 432 (7th Cir. 2020) (Easterbrook, J., dissenting).

[20] *Heck*, 512 U.S. 490 n.10 ("We think the principle barring collateral attacks—a longstanding and deeply rooted feature of both the common law and our own

No. 22-50998

Justice Souter's concurrence[21] takes the opposite view, urging that favorable termination should not be required of noncustodial plaintiffs who fall "outside the intersection of § 1983 and the habeas statute"—those who "discover (through no fault of their own) a constitutional violation after full expiration of their sentences."[22] As these individuals cannot invoke federal habeas since they are not currently "in custody," they should be able to sue under § 1983, "the *only* statutory mechanism" available to them.[23] The alternative—the blanket denial of *any* federal forum to those whose federal rights have been violated—"would be an untoward result."[24] The four concurring Justices focused on jurisdictional collisions, fretting that requiring favorable termination in *all* § 1983 cases, even for noncustodial plaintiffs well outside the intersection of § 1983 and habeas, would thwart valid claims.

Four years later in *Spencer v. Kemna*, Justices again commented on whether to hold noncustodial § 1983 plaintiffs to the favorable-termination requirement.[25] The Court did not answer the question directly. But Justice Souter again penned a four-Justice concurrence offering a "better view"—the same stance he had taken in *Heck*. He reiterated that the "general" § 1983 should be read in light of the "specific" § 2254, which by its terms applies only to those "in custody."[26] He thought it "important to read the Court's

---

jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated.").

[21] Justices Blackmun, Stevens, and O'Connor joined Justice Souter's concurrence. *Id.* at 491.

[22] *Id.* at 500 (Souter, J., concurring).

[23] *Id.* (emphasis added).

[24] Id.

[25] 523 U.S. 1 (1998).

[26] *Id.* at 20–21 (Souter, J., concurring).

*Heck* opinion as subjecting only *inmates* seeking § 1983 damages for unconstitutional conviction or confinement" to the favorable-termination rule "lest the plain breadth of § 1983 be unjustifiably limited at the expense of persons not 'in custody.'"[27] The "better view" of *Heck*, he again explained, "is that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy."[28] Justice Souter emphasized that barring § 1983 claims from noncustodial plaintiffs would create a "patent anomaly."[29] Interestingly, Justice Ginsburg, who had joined Justice Scalia's majority in *Heck*, sided with Justice Souter in *Spencer*, plus concurred separately to disavow her earlier position. Citing Justice Frankfurter's maxim that "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late,"[30] Justice Ginsburg agreed that "[i]ndividuals without recourse to the habeas statute because they are not 'in custody' . . . fit within § 1983's 'broad reach.'"[31] And Justice Stevens agreed in a dissent.[32] Thus, counting noses, a majority of the *Spencer* Court arguably adopted Justice Souter's view: no *Heck* bar for § 1983 plaintiffs not in custody and thus ineligible for federal

---

[27] *Id.* (emphasis added).

[28] *Id.* at 21 (Souter, J., concurring).

[29] *Id.* at 20.

[30] *Id.* at 21 (Ginsburg, J., concurring) (quoting *Henslee v. Union Planters Nat. Bank & Trust*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting)).

[31] *Id.* at 21–22 (quoting *Heck*, 512 U.S. at 503 (Souter, J., concurring in judgment)).

[32] *Id.* at 25 n.8 (Stevens, J., dissenting) ("Given the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice Souter explains, that he may bring an action under 42 U.S.C. § 1983.").

No. 22-50998

habeas relief. Those five Justices, though, were not part of a single, cohesive majority opinion.

Since *Spencer* did not require the Court to directly confront the core issue of whether *Heck* operates when habeas does not, the issue remains unsettled. And the lower-court fallout has been predictable: an entrenched circuit split as courts try to divine the Court's true majority position.

B

We entered the *Heck* debate in 2000. In *Randell v. Johnson*, we tackled head-on whether favorable termination applies to § 1983 plaintiffs not in custody.[33] Our answer was absolute. We understood *Heck* to have created a "*universal* favorable termination requirement."[34] That is, we read *Heck* to have held—"*unequivocally*"[35]—"that unless an authorized tribunal or executive body has overturned or otherwise invalidated the plaintiff's conviction, his claim 'is not cognizable under [section] 1983.'"[36] Thus, when a § 1983 plaintiff "has not satisfied the favorable termination requirement of *Heck*, he is barred from any recovery and fails to state a claim upon which relief may be granted," even if he is no longer in custody and thus unable to file a federal habeas petition.[37]

*Randell* acknowledged that three other circuits (at the time), based on the concurring and dissenting opinions in *Spencer*, had reached the opposite conclusion and relaxed *Heck*'s favorable-termination requirement for § 1983

---

[33] 227 F.3d 300, 301 (5th Cir. 2000) (per curiam).

[34] *Id.* (emphasis added).

[35] *Id.* (emphasis added).

[36] *Id.* (quoting *Heck*, 512 U.S. at 487) (alteration adopted).

[37] *Id.*

plaintiffs with "no procedural vehicle to challenge their conviction."[38] We declined to follow suit, remarking that Randell had not shown the lack of *any* procedural vehicle; rather, "he speaks only of inability to obtain habeas relief."[39] We also observed that we have been admonished to follow "directly applicable precedent, even if that precedent appears weakened by pronouncements in [the Supreme Court's] subsequent decisions."[40] To be sure, the policy rationales underlying *Heck* are considerably less salient when applied to non-*Heck*-typical plaintiffs (like Wilson) with no access to federal habeas. But *Randell* says what it says. More, it says what it says emphatically. *Randell* may have been a three-page per curiam opinion decided without the benefit of oral argument (perhaps because Randell was pro se), but that makes it no less binding. Accordingly, we must dutifully follow *Randell* even if we believe it wrongly assessed *Heck*'s breadth.

Four years after *Randell*, the Supreme Court glancingly mentioned *Heck*'s favorable-termination requirement in *Muhammad v. Close*.[41] Again, footnoted dicta play a starring role: "Members of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the *Heck* requirement. This case is no occasion to settle the issue."[42] Bottom line: the Supreme Court has yet to squarely answer whether the *Heck* bar applies to noncustodial § 1983 plaintiffs.

Wilson seizes on *Muhammad*'s "no occasion to settle the issue" language, saying it implicitly but necessarily overrules *Randell*, which had

---

[38] *Id.*

[39] *Id.*

[40] *Id.* (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).

[41] 540 U.S. 749 (2004) (per curiam).

[42] *Id.* at 752 n.2 (citations omitted).

referred to *Heck*'s treatment of the issue as not merely decided but "unequivocally" so. According to Wilson, *Randell*'s mode of analysis has been abrogated and *Randell* no longer qualifies as binding precedent, thus we are free to consider the issue anew. We acknowledge, as we must, that *Muhammad* is in tension with our *Randell* decision. The former indicates that *Heck*'s statement in footnote 10 that favorable termination applies to noncustodial plaintiffs is mere dicta; the latter described *Heck*'s establishment of a "universal" rule (which sweeps in noncustodial plaintiffs) as an "unequivocal[]" holding. While we are unconvinced by *Randell*'s reasoning (which twice uses "unequivocally" in describing *Heck*'s holding), we are also unconvinced that the Supreme Court has unequivocally superseded *Randell*, as opposed to leaving the issue unsettled. Indeed, in 2012, eight years after *Muhammad*, we reaffirmed *Randell*'s core holding: "The fact that Morris is no longer a prisoner 'in custody' for his offense and thus may not seek habeas relief does not excuse him from the 'favorable termination' rule of *Heck* . . . ."[43]

Our rule of orderliness means "a panel of the court cannot overturn a prior panel decision 'absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court or by our en banc court.'"[44] Our "precedent is implicitly overruled if a subsequent Supreme Court opinion establishes a rule of law inconsistent with that precedent."[45] "[T]his may naturally occur" when "an intervening Supreme Court decision

---

[43] *Morris v. McAllester*, 702 F.3d 187, 192 (5th Cir. 2012) (citing *Randell*, 227 F.3d at 301).

[44] *United States v. Boche-Perez*, 755 F.3d 327, 334 (5th Cir. 2014) (quoting *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) (italics omitted).

[45] *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2022) (citation omitted).

fundamentally change[s] the focus of the relevant analysis"[46] or when "the Supreme Court disavows the mode of analysis on which our precedent relied."[47] A "mere hint of how the [Supreme] Court might rule in the future, however, will not suffice; the intervening change must be unequivocal."[48]

*Randell* understood *Heck* to "unequivocally" impose a favorable-termination requirement for § 1983 plaintiffs with *no* stated exceptions.[49] Wilson would say Randell *mis*understood *Heck*. Nonetheless, *Randell* required the noncustodial plaintiff to prove favorable termination because *Heck* set out a "universal" rule that the Supreme Court had not relaxed for those not in custody.[50] If a precedent is directly applicable, we must dutifully follow it, even if we believe its reasoning is not watertight.

True, *Randell* acknowledged the debate roiling among Members of the Supreme Court and that three other circuits (at that time) had scrapped favorable termination for noncustodial plaintiffs based on *Spencer*'s concurring and dissenting opinions.[51] We noted in *Randell* that the circuits that had eased the *Heck* rule to let § 1983 suits proceed did so because they "have concluded that the Supreme Court—*if presented* with the question—would relax *Heck*[]."[52] This framing shows that in *Randell* we understood the

---

[46] *Id.* (alteration in original) (internal quotation marks and citations omitted).

[47] *Stokes v. Sw. Airlines*, 887 F.3d 199, 204 (5th Cir. 2018).

[48] *Id.* (internal quotation marks and citation omitted).

[49] *Randell*, 227 F.3d at 301; *see also Heck*, 512 U.S. at 486–87.

[50] *Randell*, 227 F.3d at 301.

[51] *Id.*; *see also Jenkins v. Haubert*, 179 F.3d 19, 26–27 (2d Cir. 1999) (relaxing the requirement); *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 396 n.3 (6th Cir. 1999) (same); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999) (same).

[52] *Randell*, 227 F.3d at 301 (emphasis added).

No. 22-50998

Supreme Court to not yet have addressed the question post-*Spencer*.[53] We elected to follow what we viewed as controlling precedent—what *Randell* called *Heck*'s "*universal* favorable termination requirement"—which we considered no less applicable to plaintiffs unable to seek habeas relief.[54]

*Randell*'s mode of analysis was to recognize that: (1) *Heck* "unequivocally" established a "universal" favorable-termination rule for § 1983 plaintiffs; and (2) although there had been debate about whether favorable termination should be relaxed for noncustodial plaintiffs, the Supreme Court had not yet done so.[55] And nothing in *Muhammad* abrogates *Randell*. *Muhammad* acknowledges the debate in *Heck* and *Spencer*[56] and specifies that the Supreme Court has not yet squarely addressed the question, stating, "This case is no occasion to settle the issue."[57]

While we doubt the universality of *Heck*'s favorable-termination requirement,[58] neither *Spencer* nor *Muhammad* upended the post-*Heck* legal

---

[53] Midland County, Petty, and Schorre argue that "[i]n *Muhammad*, the Supreme Court was not commenting on any supposed ambiguity in a reading of *Heck*. Instead, the Court was describing the impact, if any, of *Spencer*'s dicta on *Heck*, an issue the *Muhammad* court *expressly* stated it was *not* addressing. *Randell*, however, did, and *Randell* concluded that *Heck* controlled despite *Spencer*'s dicta." We agree.

[54] *Randell*, 227 F.3d at 301 (emphasis added).

[55] See id.

[56] 540 U.S. at 752 n.2.

[57] *Id.*; *see also Savory*, 947 F.3d at 425 ("[F]ootnote 2 of *Muhammad* merely acknowledged the possibility that the Court may someday revisit footnote 10 of *Heck* [suggesting that the favorable-termination requirement should apply to noncustodial plaintiffs]. Because it has not yet done so, we are bound by the holding and reasoning of *Heck*.").

[58] We note that *Randell*'s characterization of the favorable-termination requirement as "universal" is also specious because *Heck* does not universally apply. It is "not . . . implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." *Crittindon v. LeBlanc*, 37 F.4th 177, 190 (5th

landscape. The *Heck* rule as to federal habeas-ineligible plaintiffs may well have been weakened by various footnoted pronouncements. But as a middle-management circuit court, we must heed the Supreme Court's admonition of leaving to the Court "the prerogative of overruling its own decisions."[59]

*Muhammad* did not explicitly overrule *Randell*, nor did it implicitly overrule *Randell* by disavowing its mode of analysis. Under the rule of orderliness, our precedents are only overruled when the intervening change in the law is "unequivocal."[60] We cannot say that has happened here. Thus, even if we had zero doubt that *Randell* was wrongly decided in 2000, it remains no less binding in 2023.

## C

Since our *Randell* decision in 2000, the preexisting post-*Heck*, post-*Spencer* circuit split has only deepened. The current line-up is 6–5 in favor of

---

Cir. 2022) (quoting *Muhammad*, 540 U.S. at 751). Section 1983 "challenges to the validity of any confinement or to particulars affecting its duration fall within the 'core' of habeas corpus and are barred" by *Heck* without favorable termination; "[b]y contrast, constitutional claims that merely challenge the conditions of confinement . . . fall outside of that core and may be brought pursuant to § 1983 in the first instance." *Hicks v. LeBlanc*, 81 F.4th 497, 509 (5th Cir. 2023) (quoting *Nelson v. Campbell*, 541 U.S. 637, 643 (2004)). For instance, where prisoners have been held "past the expiration of their duly imposed sentences," we have allowed them to bring § 1983 claims in the first instance because their claims "do not implicate the fact or duration of [their] confinement." *Id.* at 509–10. Wilson's § 1983 challenge falls at the "core" of habeas because it implicates the validity of her conviction, and is thus squarely within *Heck*'s ambit.

[59] *Agostini*, 521 U.S. at 237 (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989)); *see also Whole Woman's Health v. Paxton*, 978 F.3d 896, 920 (5th Cir. 2020) (Willett, J., dissenting) ("As middle-management circuit judges, we cannot overrule the Supreme Court. But neither should we 'underrule' it. Our duty is to harmonize its decisions as well as possible." (citation and internal quotation marks omitted)).

[60] *See Stokes*, 887 F.3d at 204 (quoting *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013).

No. 22-50998

those circuits holding that *Heck* does *not* bar a § 1983 claim when the plaintiff is not in custody, since there is no collision at the § 1983/habeas intersection.

    Relaxing *Heck* for noncustodial plaintiffs (6): Second,[61] Fourth,[62] Sixth,[63] Ninth,[64] Tenth,[65] Eleventh.[66]

---

[61] *Huang v. Johnson*, 251 F.3d 65, 73–75 (2d Cir. 2001) ("[W]e conclude that *Heck* does not bar [the noncustodial plaintiff's] Section 1983 action . . . . in light of both the *Spencer* majority's dictum and the fact that the *Spencer* concurrences and dissent revealed that five justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be." (quotation marks and citation omitted)).

[62] *Wilson v. Johnson*, 535 F.3d 262, 265–68 (4th Cir. 2008) ("If a prisoner could not, as a practical matter, seek habeas relief, and after released, was prevented from filing a § 1983 claim, § 1983's purpose of providing litigants with a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nations . . . would be severely imperiled." (quotation marks and citation omitted)).

[63] *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 599–603 (6th Cir. 2007) ("The *Heck* Court was not confronted with a factual scenario . . . in which the § 1983 claimant has no recourse in habeas . . . . Thus, adopting Justice Souter's rationale does not amount to a failure to follow *Heck* where *Heck* offered no binding guidance on the application of the favorable-termination requirement.").

[64] *Nonnette v. Small*, 316 F.3d 872, 875–78 (9th Cir. 2002) ("Informed as we are by the opinions in *Spencer*, we conclude that *Heck* does not preclude [the noncustodial plaintiff's] § 1983 claim.").

[65] *Cohen v. Longshore*, 621 F.3d 1311, 1315–17 (10th Cir. 2010) ("[T]he Supreme Court itself has recognized this issue to be an unsettled one . . . . and in light of the fact that *Heck* involved a petitioner who was still incarcerated, we are not persuaded that *Heck* must be applied to petitioners without a habeas remedy.").

[66] *Harden v. Pataki*, 320 F.3d 1289, 1301–02 (11th Cir. 2003) (holding that where federal habeas corpus was not available because a person had been extradited, § 1983 must be available).

No. 22-50998

Applying *Heck* to noncustodial plaintiffs (5): First,[67] Third,[68] Fifth,[69] Seventh,[70] Eighth.[71]

We forthrightly recognize—again—that our view is the minority one. Most circuits have held that noncustodial plaintiffs need *not* comply with *Heck*'s favorable-termination requirement. Indeed, given how the word "prisoner" pervades the *Heck* opinion—starting with the opening sentence, "This case presents the question whether a *state prisoner* . . . ."[72]—it seems sensible to read *Heck* as having to do with, well, prisoners.

---

[67] *Figueroa v. Rivera*, 147 F.3d 77, 81 n.3 (1st Cir. 1998) (recognizing dicta from the *Spencer* concurrences and dissent but choosing to follow directly applicable precedent).

[68] *Gilles v. Davis*, 427 F.3d 197, 209–10 (3d Cir. 2005) ("We doubt that *Heck* has been undermined, but to the extent its continued validity has been called into question, we join on this point, our sister courts of appeals for the First and Fifth Circuits in following the Supreme Court's admonition to lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the Court the prerogative of overruling its own decisions." (internal quotations marks and citation omitted)).

[69] *Randell*, 227 F.3d at 301–02.

[70] *Savory*, 947 F.3d at 430 ("*Heck* controls the outcome where a section 1983 claim implies the invalidity of the conviction or sentence, regardless of the availability of habeas relief.").

[71] *Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007) ("Absent a decision of the Court that explicitly overrules what we understand to be the holding of *Heck* . . . we decline to depart from that rule.").

[72] *Heck*, 512 U.S. at 478 (emphasis added); *id*. at 480–81 (stating that "[t]his case lies at the intersection of the two most fertile sources of *prisoner* litigation," "the federal habeas corpus statute . . . requires that state *prisoners* first seek redress in a state forum," "habeas corpus is the exclusive remedy for a state *prisoner* who challenges the fact or duration of his confinement," and "certain claims by state *prisoners* are not *cognizable* under [§ 1983]") (emphasis added); *id*. at 487 ("[W]hen a state *prisoner* seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . .") (emphasis added); *id*. at 489 (explaining that "[e]ven a *prisoner* who has fully exhausted available state remedies

No. 22-50998

With the single exception of footnote 10, every statement in *Heck* about waiting for a prisoner's vindication centers on a prisoner then in custody. The paramount concern motivating *Heck*, that a prisoner could use § 1983 to circumvent § 2254's habeas requirements (like exhaustion of state remedies), is simply not implicated when the plaintiff is not incarcerated. There is no risk of a collision between § 1983 and § 2254 if the latter never enters the *Heck* intersection. And to be sure, Justice Scalia's observation in footnote 10 that favorable termination should apply broadly to cases involving former state prisoners—"*of which no real-life example comes to mind*"[73]—has proven improvident. Real-life examples abound of non-prisoners with facially meritorious constitutional claims denied their day in court, including Erma Wilson.

Even so, there has been no intervening change in the law, meaning we as a three-judge panel are bound by circuit precedent and cannot change course. Accordingly, because Wilson has failed to satisfy *Heck*'s favorable-termination requirement, her § 1983 suit cannot proceed.

IV

When the current Chief Justice of the United States appeared before the Senate Judiciary Committee in 2005, he famously invoked baseball, assuring the nation, "I will remember that it's my job to call balls and strikes and not to pitch or bat."[74] By this time, the criminal justice playing field in

---

has no cause of action under § 1983 unless and until" he shows favorable termination) (emphasis added).

[73] *Id.* at 490 n.10 (emphasis added).

[74] Confirmation Hearing on the Nomination of John G. Roberts, Jr. to be Chief Justice of the United States Before the S. Comm. on the Judiciary, 109th Cong. 55 (2005) (statement of John G. Roberts, Jr., Nominee to be Chief Justice of the United States).

Midland County was already lopsided, with one side secretly acting as pitcher, batter, and umpire all at once.

Rabid sports fans howl nonstop about blown calls and revel in accusing officials of losing their team the game—or even rigging it. We expect fair play in sports. So too in courts. We want *all* of life's arbiters to enforce the rules impartially. And in litigation, America's other national pastime, judges (unlike umpires who simply shout, "You're out!") are expected to painstakingly explain *why* something is inside or outside the legal strike zone. Today's result is difficult to explain. What allegedly happened here (and in hundreds of other criminal cases in Midland County) is utterly bonkers: the presiding judge employed a member of the prosecution team as a right-hand adviser.

The Supreme Court put it plainly generations ago: "A fair trial in a fair tribunal is a basic requirement of due process."[75] We have been equally clear: "[F]undamental to the judiciary is the public's confidence in the impartiality of our judges and the proceedings over which they preside."[76] Taking Wilson's well-pleaded allegations as true—as we must at the 12(b)(6) stage—she has suffered the fallout of a criminal justice system that offended the gravest notions of fundamental fairness. She seeks accountability for unconstitutional wrongdoing that upended her life. However, our 2000 decision in *Randell* not to relax *Heck*'s favorable-termination requirement for noncustodial plaintiffs has not been overruled—at least not yet.

Accordingly, as Wilson has not shown favorable termination, her § 1983 suit cannot proceed. Only the en banc court (or the Supreme Court

---

[75] *In re Murchison*, 349 U.S. 133, 136 (1955).

[76] *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995).

No. 22-50998

given the entrenched circuit split) can decide whether *Randell*'s expansive reading of *Heck* subverts § 1983's broad textual command.

We AFFIRM.