# No. 22-50998

## In the United States Court of Appeals for the Fifth Circuit

### Erma Wilson,

*Plaintiff-Appellant,*

vs.

### Midland County, Texas; Weldon (Ralph) Petty, Jr., sued in his individual capacity; Albert Schorre, Jr., sued in his individual capacity,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Western District of Texas, 7:22-CV-85, Hon. David Counts, District Judge

## En Banc Supplemental Brief of Appellee Albert Schorre, Jr.

Randall L. Rouse
Texas Bar No. 17324300
rrouse@lcalawfirm.com

Steven C. Kiser
Texas Bar No. 11538550
skiser@lcalawfirm.com

Lynch, Chappell & Alsup, P. C.
300 North Marienfeld, Suite 700
Midland, Texas 79701
432.683.3351
432.683.2587 (fax)

**Counsel for Appellee Albert Schorre, Jr.**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Appellant** | **Counsel for Appellant** |
|---|---|
| Erma Wilson | Institute for Justice<br>Jaba Tsitsuashvili, Lead Counsel<br>Robert J. McNamara, Co-Counsel |

| **Appellees** | **Counsel for Appellees** |
|---|---|
| Midland County, Texas<br>Weldon (Ralph) Petty, Jr. | Freeman Mathis & Gary, LLP<br>Philip W. Savrin, Lead Counsel<br><br>Shafer, Davis, O'Leary & Stoker<br>Layne Rouse<br>Miles Nelson |
| Albert Schorre, Jr. | Lynch, Chappell & Alsup, P.C.<br>Randall L. Rouse, Lead Counsel<br>Steven C. Kiser |

*/s/ Randall L. Rouse*

Randall L. Rouse, Lead Counsel
for Appellee Albert Schorre, Jr.

i

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, Al Schorre, Jr., believes oral will be beneficial and of assistance to the Court.

# TABLE OF CONTENTS

Certificate of Interested Persons ...................................................i

Statement Regarding Oral Argument .......................................ii

Table of Authorities...................................................................vi

Statement of Jurisdiction.........................................................xiii

Statement of Issues ..................................................................xiii

      1.    Did the district court properly grant Schorre's Motion to Dismiss based on *Heck v. Humphrey*?

      2.    Are there alternative grounds for affirming the district court's judgment?

Statement of the Case .................................................................1

Summary of the Argument ........................................................4

Argument.....................................................................................5

    I.    The Court should continue to follow *Heck v. Humphrey* without engrafting any exceptions. ......................5

      A.    *Heck* requires a dismissal. ...........................................5

      B.    Wilson misreads *Heck*. ...................................................7

          1.    *Heck* meant what it says. ....................................8

              a.    *Heck's* holding is not limited by the availability of federal habeas relief. ...........................................8

b.    *Heck's* holding is not limited by a malicious prosecution "element". ............. 11

c.    Wilson's reading of *Heck* lacks support. ................................... 13

C.    The Supreme Court has not overturned *Heck*. ............................................. 15

D.    Wilson has a remedy. ............................... 16

II.    Rule 12(b)(6) plausibility does not arise because of the circumstances in the *Clinton Young* case ............................ 21

III    Other grounds support the District Court's dismissal. ........ 25

A.    Wilson fails to state a due process claim against Schorre. ......................................... 29

B.    Wilson's pleadings do not allege sufficient facts of causation. .......................................... 34

1.    Wilson fails to show how any alleged action or inaction by Schorre caused her to be deprived of a fair trial. ........................ 35

C.    Schorre is immune from liability—either under absolute or qualified immunity. ....................... 39

1.    Schorre is entitled to absolute immunity. .......................................... 39

2.    Schorre is entitled to qualified immunity. .......................................... 47

D.    Wilson's claims are barred by the statute of limitations. ................................................ 50

1.  Wilson's claim accrued on the date of her conviction. ....................................................52

2.  An accrual date based on Wilson's conviction better aligns with applicable law. ......................53

Conclusion and Prayer ............................................................55

Certificate of Service ................................................................56

Certificate of Compliance ........................................................57

## Cases

*Ashcroft v. Iqbal,*
　　556 U.S. 662 (2009) .............................................................. 22, 32

*Agostini v. Felton,*
　　521 U.S. 203 (1997) ....................................................................... 16

*Alford v. City of Lubbock, Tex.,*
　　664 F.2d 1263 (5th Cir. 1982) ...................................................... 26

*Anderson v. Cnty. of Montgomery,*
　　111 F.3d 494 (7th Cir. 1997) ......................................................... 14

*Armstrong v. Ashley,*
　　60 F.4th 262 (5th Cir. 2023) ......................................................... 47

*Baldwin v. Daniels,*
　　250 F.3d 943, (5th Cir. 2001) ........................................................ 29

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,*
　　520 U.S. 397 (1997) ....................................................................... 33

*Brennan v. Stewart,*
　　834 F.2d 1248 (5th Cir. 1988) ....................................................... 29

*Butler v. Peak,*
　　471 Fed. Appx. 306 (5th Cir. 2012) (unpublished) ........................ 37

*Caldwell v. Dretke,*
　　429 F.3d 521 (5th Cir. 2005) ......................................................... 54

*Caliendo v. Rodriguez,*
　　70 F.3d 1274 (Table), 1995 WL 709251
　　(7th Cir. Nov. 30, 1995) (unpublished) ......................................... 28

*City of Safety Harbor v. Birchfield*,
529 F.2d 1251 (5th Cir. 1976) ....................................................... 26

*Coleman v. Houston Indep. Sch. Dist.*,
113 F.3d 528 (5th Cir. 1997) ......................................................... 35

*Connick v. Thompson*,
563 U.S. 51 (2011) ............................................................. 31, 49-50

*Cooper-Keel v. Michigan*,
No. 22-2026, 2023 WL 7458344 (6th Cir. June 7, 2023) ............... 28

*Cousin v. Small*,
325 F.3d 627 (5th Cir. 2003) ......................................................... 46

*Dist. Attorney's Office for Third Judicial Dist. v. Osborne*,
557 U.S. 52 (2009) ......................................................................... 18

*Dunlap v. City of Tupelo, Miss.*,
103 F.3d 124 (5th Cir. Nov. 13, 1996) (unpublished) .................... 14

*Edwards v. Balisok*,
520 U.S. 641 (1997) ................................................................. 13, 20

*Ex parte Benavides*,
No. WR-81,593-01, 2022 WL 4360857
(Tex. Crim. App. Sep. 21, 2022) ................................................... 24

*Ex parte Holmes*,
No WR-86,764-01, 2022 WL 17660556
(Tex. Crim. App. Dec. 14, 2022) ................................................... 24

*Ex parte Marion*,
No. WR-10,924-25, 2022 WL 3640517
(Tex. Crim. App. Aug. 24, 2022) ................................................... 24

*Ex parte Mitchell,*
No. WR-14,420-13, 2022 WL 1021058
(Tex. Crim. App. April 6, 2022) ...............................................24-25

*Ex parte Palacios,*
No. WR-82,566-01, 2022 WL 946343
(Tex. Crim. App. Mar. 30, 2022) ...................................................43

*Ex parte Perez,*
No. WR 88,939-01, 2022 WL 221463
(Tex. Crim. App. Jan 26, 2022) ...............................................17, 25

*Ex parte Richardson,*
No. WR-81,559-02, 2022 WL 2345836
(Tex. Crim. App. June 29, 2022) ...................................................24

*Ex parte Rodriguez,*
No. WR-33,906-02, 2022 WL 389403
(Tex. Crim. App. Feb. 9, 2022) .....................................................25

*Ex parte Russie,*
No.  WR-83,592-01, 2022 WL 389463
(Tex. Crim. App. Feb. 9, 2022) .....................................................25

*Ex parte Wagner,*
No. WR-71,667-01, 2022 WL 610980
(Tex. Crim. App. March 2, 2022) ...................................................25

*Ex parte Wiley,*
2022 WL 791707 (Tex. Crim. App. 2022) .......................................25

*Ex parte Young,*
No. WR-65,137-05, 2021 WL 4302528
(Tex. Crim. App. Sep. 22, 2021) ...................................3-4, 22-22, 24

*Falvo v. Owasso Indep. Sch. Dist. No. I–011,*
233 F.3d 1203 (10th Cir. Okla. 2000),
*rev'd on other grounds,* 534 U.S. 426 (2002) ..................................27

*Farley v. Moore,*
     92 F.3d 1192, 1996 WL 436513
     (9th Cir. Aug. 2, 1996) (unpublished) ............................................ 14

*Francisco Jose Rivero v. City & Cnty. of San Francisco,*
     316 F.3d 857 (9th Cir. 2002) (unpublished)................................... 27

*Gartrell v. Gaylor,*
     981 F.2d 254 (5th Cir. 1993) (unpublished).................................. 52

*Gates v. Texas Dep't of Prot. & Reg. Servs.,*
     537 F.3d 404 (5th Cir. 2008) ......................................................... 33

*Holland v. Florida,*
     560 U.S. 631 (2010) ....................................................................... 54

*Heck v. Humphrey,*
     512 U.S. 477 (1994) ............................................................. *passim*

*Imbler v. Pachtman,*
     424 U.S. 409 427 (1976) ...................................................... 39, 42-46

*In re Green Hills Dev. Co., L.L.C.,*
     741 F.3d 651 (5th Cir. 2014) ......................................................... 26

*Jones v. Alcoa, Inc.,*
     339 F.3d 359 (5th Cir. 2003) ......................................................... 51

*Jones v. Cunningham,*
     371 U.S. 236 (1963) ....................................................................... 18

*Lavellee v. Listi,*
     611 F.2d 1129 (5th Cir. 1980) ....................................................... 52

*Liteky v. United States,*
     510 U.S. 540 (1994) ....................................................................... 37

*Maleng v. Cook,*
490 U.S. 488, 491 (1989) ............................................................. 18

*McDonough v. Smith,*
139 S. Ct. 2149 (2019) ............................................................. 51-52

*McNeal v. LeBlanc,*
90 F. 4th 425 (5th Cir. 2024) ........................................................ 47

*Mitchell v. McBryde,*
944 F.2d 229 (5th Cir. 1991) ........................................................ 43

*Montoya v. FedEx Ground Package Sys., Inc.,*
614 F.3d 145 (5th Cir. 2010) ........................................................ 26

*Mouille v. City of Live Oak*, Tex.,
977 F.2d 924 (5th Cir. 1992) ........................................................ 32

*Nance v. Ward,*
597 U.S. 159 (2022) ................................................................ 9-11

*Nunez v. Simms,*
341 F.3d 385 (5th Cir. 2003) ........................................................ 48

*Pack v. Yusuff,*
218 F.3d 448 (5th Cir. 2000) ........................................................ 19

*Porter v. Epps,*
659 F.3d 440 (5th Cir. 2011) ........................................................ 34

*Preiser v. Rodriguez,*
411 U.S. 475 (1973) .............................................................. 10, 54

*Randell v. Johnson,*
227 F.3d 300 (5th Cir. 2000) ..................................................... 15-16

*Rotella v. Pederson,*
    144 F.3d 892 (5th Cir. 1998) ........................................................ 52

*Rubio v. Davis,*
    907 F.3d 860 (5th Cir. 2018) ........................................................ 19

*Sample v. City of Woodbury,*
    836 F.3d 913 (8th Cir. 2016) ........................................................ 46

*Shakeri v. ADT Sec. Services, Inc.,*
    816 F.3d 283 (5th Cir. 2016) ........................................................ 21

*Sheppard v. Visitors of Virginia State Univ.,*
    993 F.3d 230 (4th Cir. 2021) ........................................................ 28

*Schilling v. White,*
    58 F.3d 1081 (6th Cir. 1995) ........................................................ 14

*Sims v. City of Madisonville,*
    894 F.3d 632 (5th Cir. 2018) ................................................... 22, 34

*Singh v. Garland,*
    20 F.4th 1049 (5th Cir. 2021) ....................................................... 37

*Southland Securities Corp. v. INSpire Insurance Solutions, Inc.,*
    365 F.3d 353 (5th Cir. 2004) ........................................................ 17

*Spencer v. Kemna,*
    523 U.S. 1 (1998) .................................................................. 15-16

*Van de Kamp v. Goldstein,*
    555 U.S. 335 (2009) ................................................ 40, 41-46, 50

*Vega v. Town of Flower Mound, Tex.,*
    737 Fed. Appx. 683 (5th Cir. 2018) ............................................... 54

*Walker v. Epps,*
    550 F.3d 407 (5th Cir. 2008) ........................................................ 53

*Washington v. City of Oklahoma City*,
    No. CIV-20-266-D, 2022 WL 865833
    (W.D. Okla. Mar. 22, 2022) ........................................................ 29

*Whitaker v. McDonald*,
    No. 20-40569, 2022 WL 68972 (5th Cir. Jan. 6, 2022) ................ 52

*White v. Gittens*,
    121 F.3d 803 (1st Cir. 1997) ...................................................... 14

*Wilson v. State of Texas*,
    No. 08-01-00319-CR, 2003 WL 1564237
    (Tex. App.—El Paso Mar. 27, 2003, no pet.) ........ 2, 4, 11, 23, 36, 38

*Winfrey v. Rogers*,
    901 F.3d 483 (5th Cir. 2018) ................................................ 48, 52

## Statutes

42 U.S.C. § 1983 ............................................................... *passim*

Tex. Civ. Prac. & Rem. Code Ann. § 16.003 ............................................ 51

Tex. Code Crim. Pro. Ann. art. 11.072 ...................................... 16-17, 53

## Rules

Fed. R. Civ. P. 12(b)(6) ................................................... 4, 21, 26, 28, 51

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1291.


## STATEMENT OF ISSUES PRESENTED

1.   Did the district court properly grant Schorre's Motion to Dismiss based on *Heck v. Humphrey*?

2.   Are there alternative grounds for affirming the district court's judgment?

Appellee, Albert Schorre, Jr. files this En Banc Supplemental Brief, supplementing his brief filed previously in this case.

## STATEMENT OF THE CASE

This case arises out of Wilson's challenge to a twenty-year-old conviction for possession of a controlled substance, to-wit, cocaine. ROA.8. In July 2001, Wilson was convicted of the felony possession charge following a trial by jury. ROA.103-11 (Exhibit H to Wilson's Complaint). Wilson appealed her conviction, and the state court of appeals affirmed the trial court's judgment. *See Wilson v. State of Texas*, No. 08-01-00319-CR, 2003 WL 1564237, at *1 (Tex. App.—El Paso Mar. 27, 2003, no pet.). She did not seek further review of her conviction. *Id.* Wilson was represented by counsel both during her trial and on appeal. *Id.*; ROA.104.

Wilson's claims in this case derive from Appellee Ralph Petty's ("Petty") dual role as a part-time assistant district attorney in the Midland County District Attorney's office, and as a law clerk for the Midland County District Judges. On February 12, 2001, Petty entered into an employment arrangement with the Midland District Attorney's Office to perform work as a part-time, independent contractor. ROA.42-

43 (Exhibit A to Wilson's Complaint). His arrangement allowed him to continue providing legal services as an independent contractor to the District Judges on applications for writ of habeas corpus. ROA.42. Petty had been providing services to the District Judges on post-conviction writs. *See* ROA.45 (Exhibit B to Wilson's Complaint). At the time, Petty's assignments with the District Attorney's office did not include work on post-conviction writs. *See* ROA.45.

Wilson claims Petty's "dual employment" in and of itself violated her constitutional rights to a fair trial. In support, she heavily relies on Petty's actions in an entirely different and later criminal proceeding. Clinton Young was convicted of capital murder and sentenced to death in April 2003. *Ex parte Young*, No. WR-65,137-05, 2021 WL 4302528, at *1 (Tex. Crim. App. Sep. 22, 2021). Petty was one of the prosecutors in the case. ROA.76,81. Post-conviction, Petty also performed work as a law clerk on one or more of Young's subsequent writ proceedings. ROA.81. Young challenged this arrangement by writ, the Texas Court of Criminal Appeals vacated the conviction, and Petty was subsequently barred from practicing law. *Id.* at *3-5; ROA.66-68.

Unlike the Young proceeding, Petty did not participate in Wilson's case. Petty was not involved in prosecuting the underlying trial or appeal. Someone else tried Wilson's case. ROA.10,104. Someone else represented the state on appeal. *See Wilson*, 2003 WL 1564237, at *1. Petty did not work on any postconviction writ, as there was none filed by Wilson. *See id.*; ROA.25,84. Petty did not even begin working part-time for the District Attorney's office until months after Wilson's arrest. *Compare Wilson*, 2003 WL 1564 237, at *1 (noting Wilson's arrest was in August 2000) *with* ROA.42-43 (commencing part-time work for the district attorney in February 2001). And it was not until "2002, when Petty began to work full-time at the DA's office", well after Wilson's 2001 trial. *Ex parte Young*, 2021 WL 4302528, at *2 (noting this was the same time a trial judge sought an opinion from the county attorney regarding whether Petty could continue to receive pay for doing work on habeas cases); ROA.45 (Exhibit B to Wilson's Complaint, August 5, 2002, letter opinion of Midland County Attorney).

Appellees filed motions to dismiss under Fed. R. Civ. P. 12(b)(6). The district court dismissed Wilson's Section 1983 claims as *Heck*-barred.

The District Court correctly dismissed Wilson's claims. In this suit, Wilson challenges the lawfulness of her conviction, an issue that was finally decided in an appeal from that conviction twenty years ago. For Wilson to assert a claim under 42 U.S.C. § 1983 to challenge her state court conviction, she must satisfy the "favorable termination requirement" of *Heck v. Humphrey*. This requires her to demonstrate that her conviction has been reversed, expunged, or otherwise invalidated. Because Wilson did not do this, she failed to state a claim. The Court should continue to follow *Heck v. Humphrey* without engrafting any exceptions. *Heck* requires a dismissal of Wilson's claims.

Additionally, in his motion to dismiss, Schorre asserted additional grounds for dismissal each of which provides an independent basis for this Court to affirm the Final Judgment. Wilson has failed to state a due process claim against Schorre. Wilson's pleadings do not allege sufficient facts of causation—that is, she fails to plausibly allege how any action or inaction by Schorre caused her to be deprived of a fair trial. Furthermore, Schorre is entitled to absolute or qualified immunity. Finally, the applicable statute of limitations had expired at the time Wilson filed suit.

# I. The Court should continue to follow *Heck v. Humphrey* without engrafting any exceptions.[1]

## A. *Heck* requires a dismissal.

*Heck* requires a dismissal of Wilson's claims. Lost in Wilson's arguments is any direct discussion of *Heck*'s holding. *Heck* held:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (footnote omitted). This holding is direct and clear. It is without qualification, prerequisite, limitation, or exception. The holding is not limited to "a § 1983 *prisoner*" as supposed by Wilson but directly applies to "a § 1983 plaintiff." Under *Heck*, a § 1983 plaintiff challenging her conviction must show that her conviction has been invalidated.

---

[1] Schorre adopts and incorporates the arguments made by Midland County, Texas, and Ralph Petty in their En Banc Brief.

As *Heck* explained, this is not an "exhaustion" requirement or an element of a § 1983 plaintiff's claim. By definition, a civil tort does not invalidate a conviction or sentence. "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck*, 512 U.S. at 487 (emphasis in original). Just as a state does not convict a criminal by civil tort, neither does the criminal invalidate the conviction by civil tort. *Heck* identified four separate means by which the criminal may invalidate a conviction, including direct appeal, executive order, and state or federal habeas proceedings. History, practice, and common sense demonstrate that all such proceedings are of similar character, that is, they are all post-conviction proceedings designed to challenge an underlying conviction or sentence. A § 1983 claim is of separate character. It is a civil cause of action and not a post-conviction proceeding. *Heck* held a § 1983 claim cannot be used as a post-conviction remedy, a holding based on history, practice, and common sense. Unless and until Wilson's conviction has been invalidated, her § 1983 claim challenging her conviction does not exist.

*Heck*'s holding directly controls the outcome of this case. Wilson directly challenges her outstanding conviction by claims brought under § 1983. She claims innocence, and she seeks to prove such by her § 1983 claim. Her pleadings and arguments affirmatively establish that her conviction has not been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. According to *Heck*, Wilson has not brought a § 1983 claim because her claim is not "cognizable" under § 1983. *Id.* at 487. Instead, she seeks the relief made available by appeal, executive order, or habeas proceeding under state or federal law. *Heck* requires dismissal of such claim. The district court followed *Heck* and dismissed Wilson's claims. This Court should do the same.

**B. Wilson misreads *Heck*.**

To apply *Heck*'s holding as written results in a dismissal of Wilson's claims. For Wilson's claims to proceed, Wilson must show that either *Heck* did not mean what it said, or its holding has been subsequently altered by the Supreme Court. Neither conclusion is supported.

### 1. *Heck* meant what it says.

Wilson's claims cannot proceed if *Heck* meant what it said. Wilson never quotes *Heck*'s holding but attempts to dance around it by creating a new holding. Wilson claims *Heck*'s holding is conditioned by two prerequisites, namely, *Heck* applies only if a § 1983 claim is "covered" by the federal habeas statute, that is, a person is still in "custody" and has a claim under federal habeas, or if the claim asserted is analogous to a tort of malicious prosecution. Contrary to Wilson's argument, *Heck*'s holding contains no such prerequisite. Wilson mistakenly applies *Heck* as if it does, and then reaches her desired result based on this non-existent holding. This is wrong.

#### a. *Heck's* holding is not limited by the availability of federal habeas relief.

Contrary to Wilson's argument, *Heck*'s holding is not limited by the fortuity of the availability of habeas relief. Federal habeas is just one of the four post-conviction remedies identified by *Heck*'s holding that is available to a § 1983 plaintiff to invalidate a conviction. By definition, a § 1983 claim is not one of them. While *Heck*'s concurrence argued that § 1983 claims should be included among this list if relief by federal habeas was not available, *Heck* did not adopt the concurrence, and *Heck*'s holding

8

does not suggest a claim that is "not cognizable under § 1983" suddenly becomes cognizable merely because federal habeas is not available. *See Heck*, 512 U.S. at 487. *Heck* directly stated the opposite. *See id.* at 489-90 & n.10.

Wilson mistakenly argues that the "broad" text of § 1983 necessitates the availability of a § 1983 claim in all cases unless federal habeas is available to "supplant" the claim. Wilson relies on the Supreme Court's opinion in *Nance v. Ward*, 597 U.S. 159 (2022) in support, and argues that *Nance* held federal habeas supplants § 1983 claims only if asserted in the "prisoner context" and within the "domain" of the federal habeas statute. This is not what *Nance* held.

*Nance* involved a § 1983 plaintiff challenging the method by which a state planned to carry out a death sentence. *Nance*, 597 U.S. at 163-65. The state at issue only authorized one method by which to carry out an execution, the § 1983 plaintiff claimed that method would violate his rights due to circumstances unique to him, and he offered an alternative method by which to carry out the sentence. *Id.* The issue in *Nance* was that the alternative method was not specifically authorized by statute, raising the question of whether the plaintiff's claim sought to invalidate

the sentence. *Id.* The *Nance* Court ultimately held that "the claim belongs in § 1983 because . . . it challenges not the validity of a death sentence, but only the State's mode of carrying it out." *Id.* at 172.

In discussing the backdrop for this holding, the *Nance* Court recalled that while "[§] 1983 broadly authorizes suit against state officials for the deprivation of any rights . . . we have not read § 1983 literally in the prisoner context . . . [but] have insisted that § 1983 contains an implicit exception for actions that lie within the core of habeas corpus." *Nance*, 597 U.S. at 167 (internal quotations and citations omitted). Contrary to Wilson's argument, the *Nance* Court did not define "the core of habeas" to be claims within the "domain" of habeas. The Court noted § 1983 and habeas have similar if not identical "domains" because they both provide a remedy to "a prisoner [complaining] of 'unconstitutional treatment at the hands of state officials.'" *Id.* at 167 (quoting *Heck*, 512 U.S. at 480)). Instead, the *Nance* Court noted that "[i]n defining that core, this Court has focused on whether a claim challenges the validity of a conviction or sentence." *Id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). According to the Supreme Court, the "core" of a federal

habeas claim is a challenge to the validity of a conviction or sentence. *See Nance*, 597 U.S. at 167.

The "core" of federal habeas claim is no different than the "core" of a direct appeal, an executive order of expungement, or a state habeas claim. Each involves a challenge to the validity of an outstanding conviction or sentence. In contrast, § 1983 claims do not challenge the validity of a conviction or sentence but provide a remedy in response to a conviction or sentence that has been invalidated. Until the conviction or sentence is invalidated, there is no remedy that § 1983 can provide. The remedy does not exist.

### b. *Heck's* holding is not limited by a malicious prosecution "element".

Wilson mistakenly argues that her claim is not subject to *Heck*'s holding because it is not analogous to a claim for malicious prosecution.[2] Instead, she asserts her claim is a procedural due process violation, which she argues is not subject to *Heck*'s holding. This is wrong.

---

[2] Ironically, Wilson claims this while suing a district attorney for obtaining a putative unfair advantage in prosecuting her case, going so far as to argue that Petty both prosecuted and adjudicated her criminal case. ("Wilson was prosecuted by and adjudicated by the same lawyer.") (Appellant's En Banc Br. at 24). Petty, however, did not prosecute Wilson's case at trial or on appeal. Assistant District Attorney Elizabeth Beyer tried Appellant's criminal case before Judge John Hyde, and another attorney represented the state on appeal. ROA.104; *Wilson*, 2003 WL 1564237, at *1.

*Heck*'s holding contains no malicious prosecution "element" as argued by Wilson. *Heck* noted that "42 U.S.C. § 1983 creates a species of tort liability" and referenced "[t]he common-law cause of action for malicious prosecution" because it provided "the closest analogy to claims of the type considered here" that is, claims that "permit[] damages for confinement imposed pursuant to legal process." *Id.* at 484. Wilson's claim is analogous to a claim for malicious prosecution because she is pursuing "damages for confinement imposed pursuant to legal process." *Id.*

Wilson premises her claim on a finding of innocence. ROA.13-14,28. She argues that the alleged violations provided an unfair advantage on "[c]onsequential motions, such as [Wilson's] motion to suppress, [which] were resolved in the prosecution's favor throughout trial." ROA.28. To Wilson, "[b]ut for the blatant due process violations in her criminal trial, [she] would not have been convicted." ROA.28. She then seeks damages based on the "injury" imposed by the alleged wrongful conviction and sentence. ROA.29-30. Wilson's claim directly attacks her conviction, claiming the trial court reached the wrong result. This is not "cognizable" under § 1983.

Wilson mistakenly argues that her claim may proceed because it "posited that the procedures were wrong, but not necessarily that the result was." *See Edwards v. Balisok*, 520 U.S. 641, 645 (1997).[3] While this is dispelled by her complaint (her claim is premised on a wrong result), even so, her argument is misplaced. As the Supreme Court held in *Edwards v. Balisok*, 520 U.S. 641 (1997), a "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Edwards*, 520 U.S. at 658. Even claims limited to a use of the "wrong procedure" are subject to *Heck*'s holding where the finding would invalidate the conviction. *Id.* at 646 (citing *Heck*, 512 U.S. at 486 n.6). This is what Wilson advocates here, a finding of a wrong procedure (Petty's dual employment) that might invalidate her conviction. This claim is barred by *Heck*.

### c. Wilson's reading of *Heck* lacks support.

Wilson's reading of *Heck* lacks support. Initially, there was little question regarding how *Heck* should be read and applied, even among the

---

[3] Wilson relies on *Edwards* to illustrate her procedural due process claim. (Appellant's En Banc Br. at 16 n.6).

circuits that have since "relaxed" their application of *Heck*'s holding. *Heck* applied to "a § 1983 plaintiff" regardless of her custodial status." *See Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995) ("*Heck* applies as much to prisoners in custody (a habeas prerequisite) as to persons no longer incarcerated."); *see also White v. Gittens*, 121 F.3d 803, 806–07 (1st Cir. 1997) (same); *Anderson v. Cnty. of Montgomery*, 111 F.3d 494, 499 (7th Cir. 1997) (same); *Farley v. Moore*, 92 F.3d 1192, 1996 WL 436513, at *1 (9th Cir. Aug. 2, 1996) (unpublished) (same). Similarly, this Court has always read *Heck* as universally barring § 1983 claims that collateral attack outstanding convictions. *See, e.g.*, *Dunlap v. City of Tupelo, Miss.*, 103 F.3d 124, 1996 WL 731398, *2 (5th Cir. Nov. 13, 1996) (unpublished) ("The *Heck* court was clear that the principle barring collateral attacks is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated."). Initially, there was no circuit split in how to read *Heck*. That split developed later and for reasons wholly absent from *Heck*'s holding. *Heck*'s holding is clear, and a straight-forward application of *Heck*'s holding requires one result: Wilson's claims must be dismissed. The Court should affirm the district court's dismissal.

## C.    The Supreme Court has not overturned *Heck*.

If *Heck* means what it says, then Wilson's claims cannot proceed unless *Heck* is no longer good law. Wilson does not argue that *Heck* has been overruled. Nor can she. *Heck* is still good law, and this Court is still bound to follow *Heck*.

While a circuit split regarding the reach of *Heck*'s holding has developed, this should not dissuade the Court from following *Heck* as written. As this Court previously noted, the circuit split developed following the "concurring and dissenting opinions in *Spencer v. Kemna*, 523 U.S. 1." *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) (quoting *Figueroa v. Rivera*, 147 F.3d 77, 81 n. 3 (1st Cir. 1998)). *Spencer*, however, did not address claims brought by a § 1983 plaintiff like *Heck*, but claims brought by federal habeas proceedings. *See Spencer*, 523 U.S. at 3. *Spencer* is not a § 1983 case and does not directly control claims brought by a § 1983 plaintiff challenging a conviction. Despite this, some courts found that the *Spencer* Court's 4-4-1 split abrogated the reach of *Heck*'s holding. These courts reason that because the *Spencer* concurrence and dissenting opinions attack the *Heck* Court's discussion

of the history, practice, and common sense supporting its conclusion, those circuits are no longer bound by *Heck*'s holding in certain contexts.

As this Court noted in *Randell*, though, the Supreme Court has expressly prohibited courts from taking this approach. "We reaffirm that if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237–38 (1997) (internal quotations and citations omitted). To "a § 1983 plaintiff" like Wilson, *Heck* is "the case which directly controls" and not *Spencer*. *Id.* This Court is still bound by *Agostini*, and *Agostini* confirms that the Court is still bound by *Heck* despite the concurrence and dissenting opinions in *Spencer*. The Court should follow *Heck* as written.

### D.    Wilson has a remedy.

Somewhat lost in Wilson's discussion is that she has a remedy identified in *Heck*'s holding, but she is choosing not to use it. Wilson's complaint establishes that Wilson received an 8-year sentence of community supervision. ROA.105-111. Article 11.072 of the Texas Code

of Criminal Procedure "establishes the procedures for an application for a writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision." Tex. Code Crim. Pro. Ann. art. 11.072 § 1. The only statutory limitation to bringing this claim is '[a]t the time the application is filed, the applicant must be, <u>or have been</u>, on community supervision . . . .' *Id.* art. 11.072 § 2(b) (emphasis added).[4] Wilson has been on community supervision. She has a remedy; she is choosing not to use it.

Wilson brushes by the state remedy assuming it is insufficient because it is not a federal remedy. She asserts that Appellees robbed her of her federal habeas remedy by "concealing"[5] Petty's dual role until after her sentence was complete. This does not invalidate *Heck*'s holding or show that her available remedy is inadequate. Wilson does not direct the

---

[4] The timing by which to bring the claim is limited only by the doctrine of laches. *See Ex Parte Perez*, 398 S.W.3d 206, 215 (Tex. Crim. App. 2013).

[5] This argument is apparently based on two conclusory allegations in the Complaint where she used the word "conceal" when reciting the elements of her claim. (*See* ROA.31,34). Appellant did not show how Appellees "concealed" the dual employment of Petty, for instance, by refusing to disclose the information in response to a request. The Court should not accept this conclusory allegation. *See Southland Securities Corp. v. INSpire Insurance Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (holding that a court does not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions.") (cleaned up).

Court to "the inadequacy of the state-law procedures available to [her] in state postconviction relief," which is her burden. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 70–71 (2009) ("It is difficult to criticize the State's procedures when [the § 1983 plaintiff] has not invoked them."). Even if she retained her federal habeas remedy, a codified policy of federal-state comity in the federal habeas proceeding would require her to utilize the state procedures first absent circumstances "that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). Merely because she has no available remedy under federal habeas procedure does not mean that her remedy under state law procedure is inadequate. Based on the above authorities, the Court should assume the *opposite* to be true.

Wilson also overlooks that she had a federal habeas remedy. Her 8-year sentence established many restraints not shared by the public, including reporting and testing requirements along with travel and residency restrictions. ROA.105-111. Her sentence rendered her "in custody" under federal habeas.[6]

---

[6] *See Jones v. Cunningham*, 371 U.S. 236, 240 (1963) ("[B]esides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus."); *see, e.g.*, *Maleng v. Cook*, 490 U.S.

According to *Heck*, Wilson's claim has yet to accrue. According to Wilson, it accrued at some indefinite time after she completed her sentence. Presumably, Wilson maintains that her claim accrued when the alleged violation became "public knowledge" or discoverable, as alleged in her complaint. ROA.25-26. However, the putative violation (Petty's dual employment) was always "public" and "discoverable." Texas considers Petty's government employment "public information" and subject to disclosure. *See* Tex. Gov. Code § 552.022. Based on her allegations, Wilson can hardly claim that she had no reason to investigate. Wilson claims her innocence, that the prosecutor's case consisted of only "weak evidence" and "factual weaknesses", yet virtually all "consequential motions" such as her motion to suppress, were resolved against her resulting in her conviction. ROA.28. Wilson cannot claim that she lacked sufficient time to conduct an investigation. She was not subject to only a fine or a short sentence. She served an eight-year sentence. Wilson agrees that her claim accrued once it became public, but it was always "public", just she argues it was not public enough. She

---

488, 491 (1989) (noting petitioner on parole was still "in custody" under his unexpired sentence); *Rubio v. Davis*, 907 F.3d 860, 863 (5th Cir. 2018) (civil commitment); *Pack v. Yusuff*, 218 F.3d 448, 454 n.5 (5th Cir. 2000) (supervised release).

appears to claim it did not become sufficiently public until the news media picked up the story. ROA.25-26. It hardly seems tenable for a claim's existence to turn on the whims of when the news media may pick up a story.

If Wilson brought her claim during her eight-year sentence, her claim would have been subject to *Heck*'s bar. Wilson suggests that her § 1983 claim survives this bar because "she did not sleep on any rights" while she was "in custody" because her claim was virtually undiscoverable and "concealed" until after she completed her sentence. Wilson treats her claim as if it is subject to habeas and not cognizable absent her ability to prove certain circumstances unique to her case. Habeas is not an exhaustion requirement for § 1983. And the claim's existence does not, and should not, turn on the applicability of an undefined discovery-type rule.[7] "[A] claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed." *Edwards*, 520 U.S. at 649. The claim either attacks the validity of a conviction, and is not cognizable, or it does not. Wilson's

---

[7] This is perhaps why the Appellant requests the Court to refrain from considering the implications of a ruling in her favor. She has no answer to how her accrual rule should apply except beyond her case.

claim attacks the validity of her conviction. It is not cognizable and was properly dismissed as barred by *Heck*. The Court should affirm the district court's judgment.

## II. Rule 12(b)(6) plausibility does not arise because of the circumstances in the *Clinton Young* case.

Petty openly participated in the *Young* case as an assistant district attorney during trial and on appeal.[8] But Petty did none of those things here. There are no plausible, non-conclusory pleadings that show he did, other than speculation that he might, as a clerk, have prepared a form template (with blanks to be filled in) used by the District Judges to prepare judgments in jury trials. All the rest is non-substantive speculation about some possibility of a tangential connection of Petty to the trial. *See Shakeri v. ADT Sec. Services, Inc.*, 816 F.3d 283, 290 (5th Cir. 2016) (holding that under 12(b)(6) dismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face and has failed to raise a right to relief above the speculative level). The required plausibility exists "when the plaintiff

---

[8] *Ex parte Young*, 2021 WL 4302528, at *4 ("The undisputed evidence in the record establishes that an attorney working as a paid judicial clerk for the judge presiding over Applicant's capital murder proceedings simultaneously represented the State against Applicant during his trial and his initial postconviction proceedings before that same judge.").

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requirement "asks for *more than a sheer possibility* that a defendant has acted unlawfully." *Id* (emphasis added.

But naked assertions of mere possibilities are all that are alleged. There is nothing to show that "but for" the involvement of Petty, Wilson would not have been convicted. "[I]individual liability for a government official who violates constitutional rights, [ ] turns on traditional tort principles of 'but for' causation." *Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018). Unlike in the *Young* case, there is nothing to show that Petty had anything to do with Wilson's conviction.

Despite this, the Panel assumed that Wilson's conviction resulted from a "tainted" process. Opinion, n.8. But Wilson's conviction clearly did not result from a tainted process. The Court should not allow what happened in the *Young* case to influence its judgment in this case. Wilson asks the Court to condemn the purported actions of the Appellees in this case by unfairly attributing to them the actions of Petty in the *Young* case with naked assertions and mere suggestions of misconduct. *See Ashcroft*,

556 U.S. at 679 (holding that where the pleaded facts 'do not permit the court to infer more than the mere possibility of misconduct,' the complaint fails to state a claim).

From Wilson's recitation of the supposed facts in the Complaint, this case may seem, at first, to present a "disturbing" set of issues. But, as outlined in the detailed discussion of the facts in Wilson's state court appeal, confirmed and established by the evidence at trial, Wilson was properly convicted without denial of due process. *Wilson*, 2003 WL 1564237, at *1-2. Appellee urges the Court to carefully consider the opinion in *Wilson v. State* so that it may see that nothing Schorre did caused a miscarriage of justice.

It is apparent that no influence was exerted on the trial court by Petty in the case—he played no role pre-trial, at trial or on appeal—and, although it is implied by the allegations that he had the "opportunity" to engage in *ex parte* communications with the trial court, there is no challenged ruling by the trial court that he might have possibly influenced and none that he did. The only issues in Wilson's appeal were the denial of the motion to suppress and the motion for new trial and both were correctly disposed of by the trial court, as the appellate court fully

explained. Wilson does not explain how any purported communication by Petty in his role as a clerk, if it happened, could have influenced either decision.

In other cases that have addressed the issue of Petty's "dual employment" as a clerk for the district court judges while employed as an ADA, the appellate courts have found that Petty's "dual employment" did not affect the pre-trial, trial, or appellate proceedings. *See, e.g., Ex parte Mitchell,* No. WR-14,420-13, 2022 WL 1021058 (Tex. Crim. App. April 6, 2022), at *1.

While several of these criminal defendants filed subsequent applications for writs of habeas corpus, Clinton Young appears to be the only one who was granted relief on the "dual role" claim. Every other convict that challenged his or her conviction based on Petty's alleged dual role has been denied relief because Petty's involvement either did not influence the outcome (the conviction was upheld) or the facts demonstrated, like here, that Ralph Petty was not involved.[9]

---

[9] *See Ex parte Holmes*, No WR-86,764-01, 2022 WL 17660556 (Tex. Crim. App. Dec. 14, 2022) (relief denied); *Ex parte Benavides*, No. WR-81,593-01, 2022 WL 4360857 (Tex. Crim. App. Sep. 21, 2022) (same); *Ex parte Marion*, No. WR-10,924-25, 2022 WL 3640517 (Tex. Crim. App. Aug. 24, 2022) (same); *Ex parte Richardson*, No. WR-81,559-02, 2022 WL 2345836 (Tex. Crim. App. June 29, 2022) (same); *Ex parte Mitchell*, 2022 WL 1021058 (same); *Ex parte Palacios*, No. WR-82,566-01, 2022 WL

In most cases, the courts noted the "dual role" only impacted the defendant's habeas proceedings. *See, e.g., Mitchell* at \*1. Even then, the courts found that the applicant's complaints were "refuted by the record." *See, e.g., id.* In one case, the appellate court found the complaint to be "without merit" because Petty did not work on the applicant's prior habeas application for the judge's office. *Ex parte Wiley*, No. WR-68,213-06, 2022 WL 791707, at \*1 (Tex. Crim. App. Mar. 16, 2022).

## III. Other grounds support the District Court's dismissal of this case.

In his Motion to Dismiss, Schorre asserted additional grounds for dismissal which were not relied upon by the magistrate judge in his Report and Recommendation, adopted by the district court when it entered the Final Judgment and dismissed this suit. ROA.159.[10]   Each

---

946343, at \*1 (Tex. Crim. App. Mar. 30, 2022) (same); *Ex parte Wagner*, No. WR-71,667-01, 2022 WL 610980 (Tex. Crim. App. March 2, 2022) (same); *Ex parte Vetter*, No. WR-85,551-01, 2022 L 610979 (Tex. Crim. App. March 2, 2022) (same); *Ex parte Russie*, No. WR-83,592-01, 2022 WL 389463 (Tex. Crim. App. Feb. 9, 2022) (same); *Ex parte Rodriguez*, No. WR-33,906-02, 2022 WL 389403 (Tex. Crim. App. Feb. 9, 2022) (same); *Ex parte Parks*, No. WR-75,609-01 (Tex. Crim. App. Feb. 9, 2022) (same); *Ex parte Perez*, No. WR 88,939-01, 2022 WL 221463 (Tex. Crim. App. Jan 26, 2022) (same).

[10] In the Report and Recommendation of the U.S. Magistrate Judge, which was adopted by the district court, the Magistrate Judge noted, "Both [Defendants'] Motions contain additional arguments as to why Defendants believe dismissal is proper, however, as Defendants' *Heck* argument is dispositive, the Court does not reach Defendants' other arguments." ROA.328, n. 2.

of these additional grounds provides an independent basis for this Court to affirm the Final Judgment. *See In re Green Hills Dev. Co., L.L.C.,* 741 F.3d 651, 656 (5th Cir. 2014) (holding that an appellee is not limited to the reasoning of the district court and may raise any argument that is supported by the record to defend the judgment; the appellate court may affirm on any grounds supported by the record); *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148–49 (5th Cir. 2010) (court of appeals may affirm a district court's 12(b)(6) dismissal on any grounds raised in the trial court and supported by the record; no cross appeal is required to support appellate jurisdiction to affirm on alternative grounds).

"While an appellee cannot secure alteration or modification of claims decided adversely to him in a lower court without bringing a cross-appeal, he is free to support the judgment secured below with any matter appearing in the record, including contentions, arguments, or theories specifically repudiated by the lower court as a basis for allowing his claim." *Alford v. City of Lubbock, Tex.*, 664 F.2d 1263, 1268 n.6 (5th Cir. 1982) (*quoting City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1254 n.4 (5th Cir. 1976) (citations omitted).

By the alternative grounds presented, Schorre does not attack, in any respect, the Final Judgment entered below. He merely asserts additional grounds as a basis for affirming the dismissal of the claims against him apart from *Heck v. Humphrey*. Schorre urges the Court to examine those grounds.

Specifically, regarding immunity, it has been held that no cross appeal is necessary to urge immunity as an alternative ground for affirmance. *See Falvo v. Owasso Indep. Sch. Dist. No. I–011*, 233 F.3d 1203, 1208-09 (10th Cir. Okla. 2000), *rev'd on other grounds*, 534 U.S. 426 (2002)) ("Contrary to Falvo's assertion that this issue [of qualified immunity] is not properly before this court because the individual defendants failed to file a cross-appeal, this court may affirm the district court's ruling on any basis supported by the record."); *Francisco Jose Rivero v. City & Cnty. of San Francisco*, 316 F.3d 857, 862 (9th Cir. 2002) ("Surdyka and Stephens did not need to take a cross appeal in the prior appeal in order to argue, as an alternative ground for affirming the judgment, that they had qualified immunity.").

Wilson argues that affirming the dismissal on the alternative grounds of absolute or qualified immunity will necessarily result in a

dismissal with prejudice and that this enlarges Schorre's rights and diminishes hers without Schorre having filed a cross appeal. But Schorre has always only asked that the Final Judgment without prejudice be affirmed—and it may be affirmed on the alternative grounds presented, including absolute or qualified immunity.

A dismissal under 12(b)(6) based on immunity is not required to be "with prejudice"—it may be either "with" or "without" prejudice. *See*, *Caliendo v. Rodriguez*, 70 F.3d 1274 (Table), 1995 WL 709251, *5 (7th Cir. Nov. 30, 1995) (unpublished) (affirming immunity dismissal without prejudice). *Caliendo* is factually similar to this case. In *Caliendo*, the district court dismissed the due process claim without prejudice and the alternate grounds asserted would normally result in a dismissal with prejudice. Noting the issue with expanding the lower court's judgment from a dismissal without prejudice to a dismissal with prejudice in the absence of a cross-appeal, the 7th Circuit simply affirmed the dismissal without prejudice. *Id*; *see also*, *Cooper-Keel v. Michigan*, No. 22-2026, 2023 WL 7458344, at *2 (6th Cir. June 7, 2023) (affirming dismissal without prejudice on immunity grounds); *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (affirming immunity

dismissal without prejudice); *Washington v. City of Oklahoma City*, No. CIV-20-266-D, 2022 WL 865833, at *4 (W.D. Okla. Mar. 22, 2022) (dismissing without prejudice based on immunity).

The following alternative grounds support Schorre's motion to dismiss.

### A. Wilson fails to state a due process claim against Schorre.

Dismissal is appropriate because Wilson fails to allege a viable cause of action against Schorre. To assert a due process claim, Wilson's burden is to identify the protected life, liberty, or property interest at issue and prove a governmental action (by Schorre) deprived her of such protected interest. *See Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) (procedural due process); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (substantive due process). When the protected interest identified is the right to a "fair trial", whether the claim is based upon an alleged ineffective assistance of counsel, or some act of judicial or prosecutorial misconduct, it is Wilson's burden to demonstrate how misconduct on the part of Schorre deprived her of a fair trial.

Wilson's pleadings related to Schorre do not state such a due process violation. In Count III of the Complaint, Wilson states her "due

process" allegations against Schorre. First, Wilson claims Schorre's decision to hire Petty "enabled" the possibility of *ex parte* communications between Petty and the District Judges on cases in which Petty served both as a prosecutor and as a law clerk. *See* Complaint ¶ 170; ROA.37. Next she alleges that, much like prosecutors are required to disclose exculpatory evidence, Petty's law clerk relationship with the District Judges should have been disclosed. Complaint ¶ 170; ROA.37. Finally, she alleges Schorre "should have known" Petty was improperly serving in both capacities in her case and should have put a stop to it. Complaint ¶ 176; ROA.38.

Schorre's initial "decision" to hire Petty as a part-time prosecutor at a time he knew Petty was functioning as a law clerk for the Midland County District Judges on his own time, as needed, does not itself violate Wilson's due process rights. That Petty and some judge might thereafter have an *ex parte* communication in a case in which Petty served as a prosecutor could not reasonably have been foreseen by Schorre at the time Petty was hired. That mere possibility does not mean his hiring decision was constitutionally infirm.

Schorre was entitled to presume that licensed attorneys (both the District Judges and Petty) would follow the law and not permit any conflict of interest to arise or allow an ethical violation to occur. *See Connick v. Thompson*, 563 U.S. 51, 64–67 (2011) ("A district attorney is entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations, to believe that those tools are insufficient to prevent future constitutional violations in the usual and recurring situations with which the prosecutors must deal."). At the time Petty was hired, Schorre was allowed to rely upon the District Judges' and Petty's legal training and professional responsibility and should not have been required to predict violations like the one Wilson alleges. *See discussion generally in Connick*, 563 U.S. at 64-67. (As will be pointed out below, the *Connick* holding shows that Schorre is also entitled to immunity related to Wilson's claim).

For the same reasons, any failure to disclose that Petty worked sometimes as a law clerk for the District Judges is not a denial of due process by Schorre.

It is undisputed that Petty did not serve as a prosecutor in Wilson's case, and Wilson's claim based on information and belief that Petty may have "advised" the prosecution on points of law in her case does not plausibly allege a due process violation by Schorre. *See Ashcroft*, 556 U.S. at 678 (holding that the requirement of plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully."). The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and will not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id*. at 678. Where the pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. *Id*. at 679.

Wilson's allegation that Schorre, as Petty's supervisor "should have known" and stopped Petty from serving in both capacities in her case does not support a claim. "[S]upervisory officials cannot be held vicariously liable under § 1983 for their subordinates' actions." *Mouille v. City of Live Oak*, Tex., 977 F.2d 924, 929 (5th Cir. 1992). "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional

policies that causally result in plaintiff's injury."   Schorre did neither and is not accused of doing so.

"In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).

> Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'

*Id.* at 411.

Nothing in Petty's background would have alerted Schorre to the likelihood Petty would engage in *ex parte* communications with a judge to influence decisions.

There are certainly no substantive allegations of deliberate indifference related to Schorre's decision to hire Petty as an ADA. (To the contrary, *see* ROA.38, ¶176 alleging a negligence standard—that Schorre "knew or should have known"). *See also Porter v. Epps*, 659 F.3d 440, 446–47 (5th Cir. 2011) (holding that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a "known or obvious" consequence of his action, and such proof must show there was actual or constructive notice that a particular omission in the training program caused employees to violate citizens' constitutional rights and the actor nevertheless chose to retain that program).

### B. Wilson's pleadings do not allege sufficient facts of causation.

#### 1. Wilson fails to show how any alleged action or inaction by Schorre caused her to be deprived of a fair trial.

Wilson's pleadings do nothing more than allege sheer possibilities, asking the Court to infer the possibility that Schorre's hiring of Petty may have led to her conviction, but without plausible supporting facts. Schorre did not cause Wilson to be convicted, either by hiring Petty or otherwise. There is no "but for" causation. *Sims*, 894 F.3d at 639. The

facts and evidence at Wilson's trial led to her conviction by the jury, unaffected by anything Wilson claims Petty may have done or had the opportunity to do.

Importantly, Wilson does not specifically allege that Schorre did anything that led to her conviction. Wilson simply alleges that hiring Petty as an assistant ADA was wrong; but Schorre is not vicariously liable for Petty's actions.[11]

The wrong Wilson asserts against Schorre is that by hiring Petty in the first place he "enabled" Petty to possibly engage in *ex parte* communications with Judge Hyde while at the same time advising the prosecution. But there are no plausible factual allegations supporting this claim.

Wilson perceives that Judge Hyde, supposedly influenced by Petty, made unfavorable rulings on (1) her motion to suppress the evidence of cocaine found at the scene, and (2) her motion for new trial (presumably based on insufficient evidence). But the facts of her trial, recited in detail in the state appellate court's opinion, show that Wilson was guilty and

---

[11] 'It is firmly established that individual liability under § 1983 may not be predicated on the vicarious liability doctrine of respondeat superior.' *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997).

no action by Schorre of Petty caused harm to her. *See Wilson,* 2003 WL 1564237, at *1, 5.

In the appeal of her conviction, Wilson made only two challenges (in four points of error)—sufficiency of the evidence to support her conviction and the trial court's denial of her motion to suppress the evidence of cocaine found at the scene. *Id.* at *1. These are the very same rulings upon which she bases her claims in this case. No other trial court ruling has been challenged or mentioned as a basis for her claim of the denial of a fair trial.

Wilson does not specifically allege Petty had *ex parte* communications with the trial court on these topics—or that he tried to influence the court to rule in favor of the prosecution on them—only that he had *ex parte* communications *generally* in his role as law clerk.[12] Wilson does not allege any bias or prejudice on the part of the trial court

---

[12] *See, e. g.*, Paragraph 124 ("Petty and Judge Hyde engaged in *ex parte* communications concerning Erma's case. Consequential motions, such as Erma's motion to suppress, were resolved in the prosecution's favor throughout trial. And despite the weak evidence against her, Irma's motion for a new trial was not granted."). Wilson does not allege Petty influenced any of the trial court's decisions in her case. ROA.28.

or state any facts from which the impartiality of the judge might reasonably be questioned.[13]

The issues she attempts to revisit in this case are precisely the same issues raised and disposed of in her state court appeal. The El Paso Court of Appeals found there was no error in either of the trial court's decisions that were supposedly the result of influence. Her allegation that the trial court made a wrong decision because he was improperly influenced by Petty should be foreclosed. The state appellate court ruled that these decisions were not wrong. *Id.* Even if Petty's alleged *ex parte* communications occurred—which is denied—they were of no consequence in terms of causation as the facts of the case plainly reveal.

First, the court of appeals found an *affirmative waiver* of any objection to introduction of the cocaine evidence.[14] This is hardly the

---

[13] In any event, complaints about adverse judicial rulings almost never support an allegation of bias. *Liteky v. United States,* 510 U.S. 540, 555 (1994) (holding that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."); *Singh v. Garland*, 20 F.4th 1049, 1054 (5th Cir. 2021) ("Our precedent likewise forecloses any reliance on incorrect legal conclusions as evidence of partiality."); *Butler v. Peak*, 471 Fed. Appx. 306, 307 (5th Cir. 2012) (unpublished) (judicial rulings alone almost never constitute a valid basis for a recusal motion; the alleged bias exhibited by a judge must be personal in nature).

[14] While apparently blaming Appellees for the admission of the cocaine evidence, Wilson glosses over the reason the Court of Appeals did not consider Wilson's motion to suppress. In her Complaint, Wilson states that she did not 'properly preserve' the issue. ROA.14. More accurately, the appellate court found that Wilson *affirmatively*

result of any hypothetical, coercive, *ex parte* communications by Petty. On the issue of the denial of the motion for new trial, the state appellate court outlined the overwhelming evidence supporting the jury's decision and denied the sufficiency of the evidence challenge. *Id.* at *1-2; 5. Thus, the proposition that Petty could possibly have advised the trial court to deny the motion for new trial is implausible. Based on the evidence, which the state appellate court found to be sufficient, the jury was entitled to decide as it did.

These are the only alleged "trial altering" rulings suggested by Wilson to have been influenced by Petty, and there is no factual assertion revealing how an alleged *ex parte* communication might have altered these rulings. Both rulings were conclusively dealt with by the appellate court. The evidence at trial, detailed by the appellate court, reveal the paucity of Wilson's pleadings in this suit and the conclusory, unsubstantiated nature of her claims. The jury was provided with ample evidence of guilt and "[a]t trial, [Wilson] presented no evidence to

---

*waived any objection* to the evidence. *Wilson*, 2003 WL 1564237, at *3. In essence, Wilson's actions made the issue moot. Regardless of why the motion to suppress was denied or whether the decision was correct, Wilson withdrew her challenge to the evidence during the trial. Wilson cannot blame Schorre or the other Appellees for the admission of this evidence, much less show that this was why she was convicted.

contradict the State's case." *Id.* at *5. Under those facts, it is difficult to imagine a need for Petty to encourage any trial court ruling in favor of the prosecution. Considering this evidence, to allow Wilson to attempt to reargue those rulings in this Court claiming they resulted in an unfair trial is an impermissible collateral attack on the state appellate court's judgment and violates the principles stated in *Heck*.

## C. Schorre is immune from liability—either under absolute or qualified immunity.

### 1. Schorre is entitled to absolute immunity.

Dismissal is appropriate because absolute immunity bars Wilson's claims against Schorre. *Imbler v. Pachtman* established the absolute immunity of a prosecutor from a civil suit for damages under 42 U.S.C. § 1983 "in initiating a prosecution and in presenting the State's case." 424 U.S. 409, 427, 431 (1976). When assessing whether absolute immunity applies, courts employ a functional approach, and absolute immunity extends to all acts that are "intimately associated with the judicial phase of the criminal process." *Id.* at 430. "[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Id.* at 419 n.13.

Schorre did not prosecute Wilson's case. But prosecutorial immunity bars Wilson's claims because she sues Schorre for actions directly or indirectly connected with the prosecution of her case. Because she essentially alleges Schorre put Petty in a position to violate her rights by participating in her trial, and failed to train, supervise and ensure that Petty did not do so, Schorre's alleged decisions and actions are "associated with the judicial phase of the criminal process."

Wilson filed this action against Schorre, as the former District Attorney, for: (1) hiring Petty as a part time ADA prosecutor at a time he knew Petty was *ad hoc* functioning as a law clerk for the Midland County District Judges; (2) failing to disclose the arrangement to Wilson; and (3) as Petty's supervisor of his prosecutorial functions, failing to adequately supervise and train Petty so that he avoided performing services as a law clerk for a judge in any case in which he was serving directly or indirectly as a prosecutor.

These alleged failings are parallel and strikingly similar to those raised in *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009). In *Van de Kamp*, the plaintiff filed a Section 1983 action against a former district attorney and chief deputy district attorney alleging the failure to

communicate with defense counsel and to disclose potential impeachment evidence. The plaintiff claimed these violations resulted from a failure to "adequately train and to supervise the prosecutors who worked for them as well as their failure to establish an information system about informants." *Id.* at 339. To avoid the bar of absolute immunity, the plaintiff attempted to characterize and attack these functions as part of the DA office's "administrative obligations" and procedures—as Wilson does here. The Supreme Court acknowledged that certain administrative functions may not be subject to immunity but, nevertheless, unanimously concluded that the former district attorney was immune, stating the following:

> [P]rosecutors involved in such supervision or training or information-system management enjoy absolute immunity from the kind of legal claims at issue here. Those claims focus upon a certain kind of administrative obligation—a kind that itself is directly connected with the conduct of trial. Here, unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an element of the plaintiff's claim. The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like. Moreover, the types of activities on which [the plaintiff's] claims focus necessarily require legal knowledge and the exercise of related discretion, e.g., in determining what information should be included in the training or the supervision or the information-system

management. And in that sense also [the plaintiff's] claims are unlike claims of, say, unlawful discrimination in hiring employees. Given these features of the case before us, we believe absolute immunity must follow.

*Id.*, at 344.

Wilson has argued that Schorre's role in hiring and supervising was purely administrative and thus excluded from immunity. Like the plaintiff in *Van de Kamp*, Wilson asserts Schorre had an obligation to ensure Petty followed ethical rules and avoided any conflicts of interest, and that this obligation is purely administrative. But this obligation "is directly connected with the conduct of a trial." *Id.* at 344.

Wilson sues for damages caused by Petty's alleged acts of participation in Wilson's case (purportedly preparing and responding to motions, advising other prosecutors, drafting orders on judicial rulings, unsubstantiated claims of *ex parte* communications, giving advice, etc.) after being hired by Schorre as an ADA. If these allegations were true, which they are not, all these alleged activities are "intimately associated with the judicial phase of the criminal process" and are protected by absolute immunity. Petty is absolutely immune for these actions either as a prosecutor (if he somehow directly or indirectly participated in Wilson's trial) (see *Imbler*, 424 U.S. at 430), or as a law clerk (*see Mitchell*

*v. McBryde*, 944 F.2d 229, 230–31 (5th Cir. 1991) (holding that "it is plain from the reasoning underlying our prior decisions that the judge's law clerk, when assisting the judge in carrying out the former's judicial functions, is likewise entitled to absolute immunity.")).

As Petty's purported supervisor of these activities, Schorre is also entitled to immunity. In *Van de Kamp*, the Court specifically addressed a hypothetical supposing that the plaintiff had brought a case involving supervisory or other office prosecutors that did not involve administration. "Suppose that [the plaintiff] had brought such a case, seeking damages not only from the trial prosecutor but also from a supervisory prosecutor or from the trial prosecutor's colleagues—all on the ground that they should have found and turned over the impeachment material [ ]." *Id.* at 345.[15] "The prosecutors' behavior, taken individually or separately, would involve preparation for trial and would be intimately associated with the judicial phase of the criminal process because it concerned the evidence presented at trial." *Id.* (*citing Imbler* 424 U.S. at 430-31.)

---

[15] A claim that is parallel to Wilson's claim that Schorre should have known of Petty's alleged participation in Wilson's trial and put a stop to it.

The only difference we can find between *Imbler* and our hypothetical case lies in the fact that, in our hypothetical case, a prosecutorial supervisor or colleague might himself be liable for damages *instead* of the trial prosecutor. But we cannot find that difference (in the pattern of liability among prosecutors within a single office) to be critical. Decisions about indictment or trial prosecution will often involve more than one prosecutor within an office. We do not see how such differences in the pattern of liability among a group of prosecutors in a single office could alleviate *Imbler' s* basic fear, namely, that the threat of damages liability would affect the way in which prosecutors carried out their basic court-related tasks. Moreover, this Court has pointed out that it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance. (citation omitted). Thus, we must assume that the prosecutors in our hypothetical suit would enjoy absolute immunity.

*Id.* at 346 (italics in the original).

The Court in *Van de Kamp* agreed with the court of appeals that the DA's office's *general* methods of supervision and training were what were at issue (like Wilson alleges here) but rejected the notion that the difference was critical for the Court's immunity analysis. *Id.* at 346.

That difference does not preclude an intimate connection between prosecutorial activity and the trial process. The management tasks at issue, insofar as they are relevant, concern how and when to make impeachment information available at a trial. They are thereby directly connected with the prosecutor's basic trial advocacy duties. And, in terms of *Imbler' s* functional concerns, a suit charging that a supervisor made a mistake directly related to a particular trial, on the one hand, and a suit charging that a supervisor

trained and supervised inadequately, on the other, would seem very much alike.

That is true, in part, for the practical reason that it will often prove difficult to draw a line between general office supervision or office training (say, related to *Giglio*) and specific supervision or training related to a particular case. To permit claims based upon the former is almost inevitably to permit the bringing of claims that include the latter. It is also true because one cannot easily distinguish, for immunity purposes, between claims based upon training or supervisory failures related to *Giglio* and similar claims related to other constitutional matters (obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for example). And that being so, every consideration that *Imbler* mentions militates in favor of immunity.

*Id.*

Schorre's alleged failure to properly train Petty to avoid serving as a law clerk to a judge in a case in which he directly or indirectly functioned in as an ADA, and the failure to properly supervise Petty to ensure he complied with ethical obligations, 'necessarily require legal knowledge and the exercise of related discretion, *e.g.*, in determining what information should be included in the training or the supervision' and absolute immunity follows. *See id.* at 344.

Finally, Wilson's claim that Schorre or Petty "failed to disclose" Petty's law clerk duties for the District Judges is similar to the duties of disclosure discussed in *Imbler* and *Van de Kamp* for which immunity was

afforded. *See Imbler*, 424 U.S. at 431–32 n.34 (willful suppression of exculpatory evidence); *Van de Kamp*, 555 U.S. at 347-48 (failure to disclose impeachment material). *See also Cousin v. Small*, 325 F.3d 627, 635 (5th Cir. 2003) (suppression of exculpatory evidence is shielded by absolute immunity). In fact, Wilson specifically likens Schorre's alleged duty to disclose the dual employment relationship to that of a prosecutor to disclose exculpatory evidence. Complaint ¶ 170; ROA.37.

In practical effect, Wilson asserts that there should have been a "conflicts of interest" policy in place that prevented Petty's employment as both a law clerk and an ADA and that this is an administrative function of the DA's office not entitled to immunity. But rather than being a mere administrative function of the office, it has been held that wrongfully failing to develop a conflicts of interest policy is also barred by absolute immunity. *See Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) ("While the claims on their face appear to allege a defect in an administrative duty, which would remove the protection of absolute immunity, the district court properly found that the development of a conflicts policy and the determination as to what constitutes a conflict of interest would necessarily require legal

knowledge and the exercise of related discretion, features to which the doctrine of absolute immunity applies.")

## 2. Schorre is entitled to qualified immunity.

Even if absolute immunity does not apply, Wilson's claims should be dismissed as barred by "qualified" immunity. Schorre is entitled to qualified immunity with respect to any claim based on a decision to allow Petty to work as an ADA at the same time he functioned as a law clerk for the District Judges. The burden is on Wilson to plead facts capable of rebutting the application of qualified immunity. *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023).

Qualified immunity protects Schorre so long as his individual conduct did not violate "clearly established" constitutional rights at the time Petty was hired. *Id.* To overcome qualified immunity, the plaintiff must allege facts showing (1) "a violation of a constitutional right," and (2) that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." A right is clearly established if "it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *McNeal v. LeBlanc*, 90 F. 4th 425, 431 (5th Cir. 2024) (citations omitted). "The plaintiff's showing of a violation of a

clearly established constitutional right is a prerequisite to overcoming the qualified immunity defense." *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003).

An official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. *Winfrey v. Rogers*, 901 F.3d 483, 493–94 (5th Cir. 2018). Existing precedent must have placed the statutory or constitutional question beyond debate. *Id.* In this analysis, courts use a standard of "objective reasonableness." *Id.* Qualified immunity ensures that before an official is subjected to suit, he/she is on notice their conduct is unlawful. *Id.* The dispositive question is whether the violative nature of particular conduct is clearly established. *Id.* (emphasis in original) (cleaned up).

There is no clearly established precedent supporting Wilson's claim against Schorre. The simple employment of Petty by Schorre as a part-time ADA at a time he was *ad hoc* functioning as a law clerk for the judges on his own time, is not a *per se* violation of any established right of Wilson or any other defendant. These two roles do not necessarily

violate the law and constitutional rights of all prospective future defendants. Nor should Schorre have known or even have had reason to believe that Petty might use his position as a clerk to have *ex parte* discussions with a judge.

If Petty kept his law clerk duties separate from his ADA duties and did not work as a clerk on a case in which he was serving as a prosecutor, there is no constitutional violation—and, even if the law clerk relationship might facilitate *ex parte* communications between Petty and one of the judges, this possibility is not the violation of a clearly established constitutional right of which a reasonable person DA might have known. The hiring decision itself does not violate the constitutional rights of all defendants with whom Petty may have come in contact either as ADA or as a clerk.

As argued above, Schorre was entitled to believe that Petty (and the Midland County District Judges) understood and followed the law and that no violations would occur. As stated in the *Connick* syllabus:

> Attorneys are trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment. They receive training before entering the profession, must usually satisfy continuing-education requirements, often train on the job with more experienced attorneys, and must satisfy

licensing standards and ongoing ethical obligations. Prosecutors not only are equipped but are ethically bound to know what *Brady* entails and to perform legal research when they are uncertain. Thus, recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training.'

131 S. Ct. 1350, 1354–55 (2011) (in syllabus, summarizing holdings at 563 U.S. 51, 64–67 (2011)). "A district attorney is entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations, to believe that those tools are insufficient to prevent future constitutional violations in 'the usual and recurring situations with which [the prosecutors] must deal.'" *Id.* at 67. "A licensed attorney making legal judgments, in his capacity as a prosecutor," about a potential for conflict of interest "simply does not present a 'highly predictable' constitutional danger." *Id. See also Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (holding that claims of failure properly to train or supervise prosecutors, or establish an information system containing potential impeachment matters, are subject to immunity).

## D.   Wilson's claims are barred by the statute of limitations.

If *Heck* applies, as it should, the expiration of limitations is not at issue because Wilson's claims have yet to accrue. Alternatively, if the

Court determines *Heck* does not bar her claim, then the Court must determine when Wilson's claims accrued and apply the applicable statute of limitations. In *McDonough v. Smith*, the Supreme Court held a § 1983 claim pursuing damages based on a challenged criminal proceeding accrues on the date the proceeding is terminated in the § 1983 plaintiff's favor and not the date the alleged violation occurred. 139 S. Ct. 2149, 2161 (2019) (citing and relying upon *Heck*). Wilson's criminal proceeding never terminated in her favor, necessarily meaning her claim has not yet accrued. Appellees' limitations defense demonstrates that for Wilson to proceed she not only must set aside *Heck* and *McDonough*, but she must also show how a twenty-year-old conviction is not barred by limitations.

The Court may also affirm the district court's ruling based on the expiration of the applicable statute of limitations. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). While § 1983 provides the cause of action, "federal courts look to state's statute of limitations for personal-injury torts to decide when § 1983 claims toll." *Winfrey*, 901 F.3d at 492 (citing

cases). "In Texas, the applicable limitations period is two years." *Id.* (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993), and citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)). The accrual date of § 1983 claims is determined by federal law. *Id.* But because the Texas statute of limitations is borrowed in § 1983 cases, Texas's equitable tolling principles apply. *See Rotella v. Pederson,* 144 F.3d 892, 897 (5th Cir. 1998).

### 1. Wilson's claim accrued on the date of her conviction.

Ignoring *Heck* and *McDonough*, Wilson argues that her claims accrued sometime after she completed her sentence. This is not when she knew or should have known her injury. "It is not hard to state the federal standard governing the accrual of a cause of action under § 1983: federal law holds that the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action." *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980) (internal quotations and alterations omitted). This Court has emphasized that a claim under § 1983 accrues "the moment" the plaintiff knows she was injured. *Whitaker v. McDonald*, No. 20-40569, 2022 WL 68972, at *2 (5th Cir. Jan. 6, 2022) (citing and quoting *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008)).

Regardless of how Wilson frames her claim, the "moment" of her "injury" was when she was convicted. Under Wilson's theory, she was innocent, making her conviction "wrongful". She should have been aware that her "wrongful" conviction could have been caused only by one of three parties: the prosecuting attorneys, the trial court, or her defense counsel.[16] Wilson's claim accrued the date of her conviction over twenty-years ago, and her claim expired many years ago.

### 2. An accrual date based on Wilson's conviction better aligns with applicable law.

An accrual date based on Wilson's conviction better aligns with applicable law. Under Wilson's theory, her claim may proceed under § 1983 only if it is beyond habeas' reach. Wilson's claim was never "beyond" habeas' reach. Wilson always maintained a state remedy; she just never used it. *See* Tex. Code Crim. Proc. Art. 11.072. As such, the accrual date of Wilson's claim under § 1983 should be the same as the accrual date of her claim under the federal habeas statute. Otherwise, a "federal-court § 1983 attack" on Wilson's conviction "would wholly frustrate explicit congressional intent" under the federal habeas statute. *See Heck*, 512

---

[16] There are no allegations of jury misconduct.

U.S. at 498 (citing and quoting *Preiser,* 411 U.S. at 489) (Souter, J. concurring).  Under the AEDPA, Wilson's claims accrued on the date of her conviction.  *See Caldwell v. Dretke*, 429 F.3d 521, 530 (5th Cir. 2005) (holding that orders of deferred adjudication for community supervision and probation begin to run from the date of the judgment's entry). Wilson's § 1983 claims accrued on that date as well.

Wilson's claims have expired absent a showing of equitable tolling. Equitable tolling does not apply here.  Whether applying Texas or federal law, courts allow tolling only under extraordinary situations where diligence is shown by the party asserting a claim for equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding habeas petitioner entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way"); *Vega v. Town of Flower Mound, Tex.*, 737 Fed. Appx. 683, 684–85 (5th Cir. 2018) ("Texas courts apply equitable tolling 'sparingly', doing so only when plaintiff diligently pursued his rights; a litigant may not use the doctrine to avoid the consequences of their own negligence." (internal citations and quotations omitted)).

Wilson cannot demonstrate such diligence, as she never exercised her available remedies under habeas. Wilson's claim is time-barred.

That this Court must "wrestle" with limitations to allow Wilson's claims to proceed demonstrates why the district court's judgment should be affirmed. *See Heck*, 512 U.S. at 489–90. *Heck*'s holding made "it unnecessary for [courts] to address the statute-of-limitations issue". *Id.* Wilson's arguments make necessary what *Heck* called "unnecessary". The Court should reject Wilson's arguments and affirm the judgment of the district court.

## CONCLUSION AND PRAYER

For the reasons stated, Appellee Albert Schorre, Jr. requests the Court to affirm the Final Judgment, award costs to Appellee, and grant Appellee such other and further relief, legal and equitable, including general relief, to which he may be entitled.

Respectfully submitted,

*/s/ Randall L. Rouse*
**LYNCH, CHAPPELL & ALSUP, P. C.**
300 N. Marienfeld, Suite 700
Midland, Texas 79701
Randall L. Rouse
Texas Bar No. 17324300
rrouse@lcalawfirm.com
Steven C. Kiser
Texas Bar No. 11538550
skiser@lcalawfirm.com

**ATTORNEYS FOR APPELLEE,
ALBERT SCHORRE, JR.**

## Certificate of Service

I certify that on April 15, 2024, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon all counsel of record who are registered CM/ECF users. Counsel also certifies that on April 15, 2024, the foregoing instrument was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System.

Counsel further certifies that 1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; 2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and 3) the document has been scanned and is free of viruses.

*/s/ Randall L. Rouse*
Randall L. Rouse, Lead Counsel

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because it contains 11,846 words. This Supplemental Brief complies Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font, using Microsoft Word 2016.

Dated April 15, 2024

*/s/ Randall L. Rouse*
Randall L. Rouse, Lead Counsel