CASE NO. 22-50998

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

ERMA WILSON

*Plaintiff-Appellant,*

v.

MIDLAND COUNTY, TEXAS; WELDON (RALPH) PETTY, JR., in his individual capacity; ALBERT SCHORRE, JR., in his individual capacity,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, 7:22-cv-85, Hon. David Counts, District Judge, presiding

APPELLEES MIDLAND COUNTY, TEXAS AND WELDON (RALPH) PETTY, JR.'S EN BANC BRIEF

Philip W. Savrin, Esq.
FREEMAN MATHIS & GARY
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948

Layne Rouse, Esq.
Miles Nelson, Esq.
SHAFER, DAVIS, O'LEARY &
STOKER
700 N. Grant, Suite 201
Odessa, Texas 79761

*Counsel of Record for Appellees*
*Midland County, Texas and Weldon (Ralph) Petty, Jr.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel for Appellee certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

| Appellant | Counsel for Appellant |
|---|---|
| Erma Wilson | Institute for Justice<br>Jaba Tsitsuashvili, Lead Counsel<br>Robert J. McNamara, Co- Counsel |

| Appellees | Counsel for Appellees |
|---|---|
| Midland County, Texas<br>Weldon (Ralph) Petty, Jr. | Freeman Mathis & Gary, LLP<br>Philip W. Savrin, Lead Counsel<br><br>Shafer, Davis, O'Leary & Stoker<br>Layne Rouse<br>Miles Nelson |
| Albert Schorre, Jr. | Lynch, Chappell & Alsup, P.C.<br>Randall L. Rouse<br>Steven C. Kiser<br>Lisa K. Hooper |

*s/Philip W. Savrin*
Philip W. Savrin
*Counsel for Appellees Midland County, Texas, and Weldon (Ralph) Petty, Jr.*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................................ .i

TABLE OF AUTHORITIES ........................................................... .iv

JURISDICTIONAL STATEMENT ................................................. .1

STATEMENT OF ISSUES PRESENTED ....................................... .1

STATEMENT OF THE CASE ........................................................ .1

    I.     Proceedings Below ........................................................... .1

    II.    Statement of Facts ............................................................ .2

           A. Wilson is Arrested for Cocaine Possession after Fleeing From Officers........................................................................ .3

           B. Wilson Is Convicted and Sentenced to 8 Years of Community Supervision ..................................................... .4

           C. On Direct Appeal the Court Finds Wilson's Objection to the Admission of the Cocaine Evidence Was Waived ...................... .4

           D. Wilson Does Not Seek Habeas Corpus Relief............................ .5

           E. Appellee Petty's Employment.................................................... .5

           F. Midland County Had Limited Knowledge of Petty's Work ....... .7

           G. District Attorney Addresses Petty's Dual Employment ............. .7

SUMMARY OF THE ARGUMENT ................................................. .9

ARGUMENT ................................................................................... .11

    I.     Under Supreme Court Precedent, A Section 1983 Claim Challenging the Validity of a Conviction or Sentence Does Not Accrue Until There Has Been a Favorable Termination of the Prosecution........................................................................ .11

           A. Circuit Court Cases Applying *Heck's* Favorable-Termination Holding........................................................................ .21

1. Fifth Circuit and Four Other Circuits Uphold *Heck's* Favorable Termination Requirement Instead of Relying on Dicta in Concurring and Dissenting Opinions Authored by Justices Who Are No Longer Members of the Supreme Court ..........22

2. Circuit Courts Relied Upon By Wilson Eliminate Heck's Favorable Termination Requirement, Contrary to Heck's Rationale and the Admonition That the Supreme Court Alone Has the Prerogative to Alter its Precedent........................27

II.  *Heck's* Holding Mandates Dismissal of Wilson's Complaint.........32

A. *Agostini* informs the application of Supreme Court precedent... .32

B. *Heck's* holding extends to non-custodial plaintiffs.....................34

C. Wilson's Attempts to Avoid *Heck* Are Meritless .......................39

1. The favorable-termination requirement is not limited to parties who remain in custody.....................................39

2. The favorable-termination requirement applies to any claims that impugn the validity of a criminal conviction or sentence.................................................................41

3. Section 1983 is not intended to provide a remedy for every conceivable constitutional injury....................................42

4. *Talevski* has no application to Wilson's claim....................44

5. *Heck* does not allow for equitable exceptions, nor would they apply...................................................................45

III. Alternative Grounds Require Dismissal of Wilson's Complaint ..... ..47

A. Wilson has not stated a plausible procedural due process claim. ..47

B. Petty Is Entitled To Immunity.......................................................48

C. Midland County cannot be liable for the actions of Petty, Schorre or Judge Hyde as State Officers ....................................49

CONCLUSION.................................................................................51

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*, 521 U.S. 203 (1997) ................................................. 22, 32, 33, 34

*Aguilar v. Felton*, 473 U.S. 402 (1985) ...................................................31

*Aucoin v. Cupil*, 958 F.3d 379 (5th Cir. 2020) .........................................19

*Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023) .............................36

*Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997) .......49

*Board of Education of Kiryas Joel Village School District v. Grumet*, 512 U.S. 687
 (1994) ......................................................................................32

*Brown v. Lyford*, 243 F.3d 185 (5th Cir. 2001) .........................................50

*Buckley v. Fitzsimmons*, 509 U.S 259 (1993) ...........................................48

*Buntion v. Lumpkin*, 31 F.4th 952 (5th Cir. 2022)....................................19

*Butler v. Georgia*, 2022 WL 17484910 (11th Cir. Dec. 7, 2022)............................21

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)..............................................49

*Clay v. Allen*, 242 F.3d 679 (5th Cir. 2001) ............................................19

*Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194 (5th Cir. 2021)............. 36, 38

*Cohen v. Longshore*, 621 F.3d 1311 (10th Cir. 2010)............................................30

*Daves v. Dallas County, Texas*, 22 F.4th 522 (5th Cir. 2022) .......................... 49, 50

*Edwards v. Balisok*, 520 U.S. 641 (1997) ................................................. 18, 19, 20

*Entzi v. Redmann*, 485 F.3d 998 (8th Cir. 2007) ....................................22

*Esteves v. Brock*, 106 F.3d 674 (5th Cir. 1997) .......................................................50

*Ex parte Benavides*, 2022 WL 4360857 (Tex. Crim. App. Sept. 21, 2022) .............8

*Ex parte Enriquez*, 227 S.W.3d 779 (Tex. App.—El Paso 2005) ...........................45

*Ex parte Holmes*, 2022 WL 17660556 (Tex. Crim. App. Dec. 14, 2022) ...............8

*Ex parte Marion*, 2022 WL 3640517 (Tex. Crim. App. Aug. 24, 2022) ..................8

*Ex parte Mitchell*, 2022 WL 1021058 (Tex. Crim. App.  April 26, 2022) ...............8

*Ex parte Palacios*, 2022 WL 946343 (Tex. Crim. App. Mar. 30, 2022)...................8

*Ex parte Parks*, 2022 WL 389427 (Tex. Crim. App. Feb. 9, 2022)..........................8

*Ex parte Perez*, 2022 WL 221463 (Tex. Crim. App. Jan. 26, 2022)........................8

*Ex parte Richardson*, 2022 WL 2345836 (Tex. Crim. App. June 29, 2022) ............8

*Ex parte Russie*, 2022 WL 389463 (Tex. Crim. App. Feb. 9, 2022)........................8

*Ex parte Vetter*, 2022 WL 610979 (Tex. Crim. App.  Mar. 2, 2022) ......................8

*Ex parte Wagner*, 2022 WL 610980 (Tex. Crim. App. Mar. 2, 2022) .....................8

*Ex parte Young*, 2021 WL 4302528 (Tex. Crim. App. Sept. 22, 2021) ........... 5, 7, 8

*Figueroa v. Rivera*, 147 F.3d 77 (1st Cir. 1998) ........................................ 21, 22, 46

*Galanti v. Nevada Dep't. of Corrections,* 65 F.4th 1152 (9th Cir. 2023)................21

*Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005).......................................... 22, 23

*Harden v. Pataki*, 320 F.3d 1289 (11th Cir. 2003) ...................................................21

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..............................................................43

*Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166
  (2023) ...........................................................................................................44

*Heck v. Humphrey*, 512 U.S. 477 (1994) ........................................... passim

*Huang v. Johnson*, 251 F.3d 65 (2d Cir. 2001) ............................... 27, 28

*Hudson v. Hughes*, 98 F.3d 868 (5th Cir. 1996) ....................................20

*Huey v. Stine*, 230 F.3d 226 (6th Cir. 2000) ................................... 29, 30

*Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936 (5th Cir. 1999) ...............19

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ...................................... 42, 48

*Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999) ...................................27

*Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999) ................................ 27, 28

*Lefebure v. D'Aquilla*, 15 F.4th 650 (5th Cir. 2021) .................................37

*McDonough v. Smith*, 139 S. Ct. 2149 (2019) ........................... 16, 17, 18

*Memphis Community School Dist. v. Stachura*, 477 U.S. 299 (1986) ....................11

*Mitchell v. McBryde*, 944 F.2d 229 (5th Cir. 1991) .................................48

*Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978) .. 43, 49

*Moreland v. Scott*, 175 F.3d 347 (5th Cir. 1999) ....................................47

*Muhammad v. Close*, 540 U.S. 749 (2004) ................................. 15, 16, 36

*Nonette v. Small*, 316 F.3d 872 (9th Cir. 2002) ....................................21

*Perez v. Stephens*, 745 F.3d 174 (5th Cir. 2014) ....................................37

*Pierson v. Ray*, 386 U.S. 547 (1967) ....................................................42

*Pizza Hut, LLC v. Pandya*, 79 F.4th 535 (5th Cir. 2023) ..........................................37

*Poole v. City of Shreveport*, 13 F.4th 420 (5th Cir. 2021)..........................................19

*Powers v. Hamilton County*, 501 F.3d 592 (6th Cir. 2007)............................... 28, 30

*Prieser v. Rodriguez*, 411 U.S. 475 (1973) ................................................................11

*Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000) ...................................... 2, 22, 37

*Riley v. Kurtz*, 1999 WL 801560 (6th Cir. Sep't. 28, 1999 .....................................29

*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) ...34

*Rutland v. Pepper*, 404 F.3d 921 (5th Cir. 2005) .....................................................48

*Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020)............................................. passim

*Shamaeizadeh v. Cunigan*, 182 F.3d 391 (6th Cir. 1999)............................... 28, 29

*Spencer v. Kemna*, 523 U.S. 1 (1998).............................................................. passim

*State Oil Co. v. Khan*, 522 U.S. 3 (1997)..................................................................34

*Stump v. Sparkman*, 435 U.S. 349 (1978) ................................................................48

*United States v. Bermea*, 30 F.3d 1539 (5th Cir. 1994) ...........................................47

*United States v. Coto-Mendoza*, 986 F.3d 583 (5th Cir. 2021) ...............................37

*United States v. Ebron*, 683 F.3d 105 (5th Cir. 2012) ..............................................47

*United States v. Simpson*, 645 F.3d 300 (5th Cir. 2011) ..........................................47

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) ....................................43

*Wilson v. Johnson*, 535 F.3d 262 (4th Cir. 2008) ............................................ 30, 31

*Wilson v. Midland County,* 89 F.4th 446 (5th Cir. 2023) ................................ 2, 6, 21

*Wilson v. Midland County*, 92 F.4th 1150 (5th Cir. 2024) ..........................................2

*Wilson v. State of Texas*, 2003 WL 1564237 (Tex. App.—El Paso Mar. 27, 2003)..3,

4, 6, 47

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ................................................20

*Zarnow v. City of Wichita Falls*, 614 F.3d 161 (5th Cir. 2010)..............................49

*Zobrest v. Catalina Foothills School District*, 509 U.S. 1 (1993)..........................33

**Statutes**

28 U.S.C. § 1291 ..................................................................1

28 U.S.C. § 1331 ..................................................................1

28 U.S.C. § 1343 ..................................................................1

28 U.S.C. § 2201 ..................................................................1

28 U.S.C. § 2202 ..................................................................1

28 U.S.C. § 2254 ...............................................................11, 12

42 U.S.C. § 1983 ..................................................................1

Tex. Code Crim. Proc. Ann. art. 11.072, § 2(b) .....................................46

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and 2202. (ROA 9–10.) This Court has jurisdiction under 28 U.S.C. § 1291. (ROA 374–382.)

## STATEMENT OF ISSUES PRESENTED

1. Whether the District Court properly dismissed Appellant's complaint because her claim under 42 U.S.C. § 1983 challenging the validity of her criminal conviction did not accrue in the absence of a favorable termination of her prosecution as required by *Heck v. Humphrey*, 512 U.S. 477 (1994)?

2. Alternatively, whether the District Court's dismissal of Appellant's complaint should be affirmed for failure to state a claim upon which relief can be granted, including applicable immunities from suit?

## STATEMENT OF THE CASE

### I.    Proceedings Below

Erma Wilson's lawsuit under 42 U.S.C. § 1983 arises from her criminal conviction in 2001. (ROA 8-39) Appellees moved to dismiss because the lawsuit called into question the validity of her conviction such that it was barred by the favorable-termination requirement of *Heck v. Humphrey*, 512 U.S. 477 (1994). (ROA 145-46, 163-65, 205-07, 236-39.) Appellees alternatively moved to dismiss for failure to state a claim as well as immunities and the expiration of the limitations

period. (ROA 147-151, 166-68, 207-210, 240-42.) The District Court agreed that the action was barred by *Heck* and dismissed on that basis. (ROA 374-379.)

Wilson appealed the dismissal to this Court which affirmed pursuant to *Heck*. *Wilson v. Midland County,* 89 F.4th 446 (5th Cir. 2023). The panel noted the circuits were split as to whether the *Heck* bar applies to non-custodial plaintiffs such as Wilson but was bound by *Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000) to affirm the dismissal. *Id.* at 457-58. This Court thereafter granted Wilson's petition for rehearing *en banc*. *Wilson v. Midland County*, 92 F.4th 1150 (5th Cir. 2024).

## II.    Statement of Facts

Wilson seeks damages under Section 1983 by challenging the validity of her 2001 conviction for possession of a controlled substance, asserting that her "constitutional right to due process was violated when a Midland County prosecutor, [Appellee] Petty, worked as a law clerk to Judge John G. Hyde on her criminal case." (ROA 8, 10, and 15.) She asserts Fourteenth Amendment violations under various theories against Midland County and Petty, respectively, in Counts I and II. (ROA 31-37.) Separately, in Count III, she asserts due process violations against the District Attorney at the time, Albert Schorre, Jr. (ROA 37-38.)

As stated by the panel, Petty was not a "frontline prosecutor" in Wilson's criminal case. *Wilson*, 89 F.4th at 448. Wilson acknowledges this by alleging instead that Petty "had either an actual or perceived interest in ensuring that disputes and

2

cases were resolved in the prosecution's favor." (ROA 32, ¶ 137.) In any event, the history reaches back over two decades to Wilson's arrest in 2000.

### A. Wilson is Arrested for Cocaine Possession after Fleeing From Officers

On August 14, 2000, two Midland police officers observed a group of people huddled around a car in a high crime area. *Wilson v. State of Texas*, 2003 WL 1564237, at *1 (Tex. App.—El Paso Mar. 27, 2003). One of the officers observed Wilson walking away at a fast pace, which in the officer's experience could be to dispose narcotics or drug paraphernalia or because she had an outstanding warrant. *Id.* The officer asked Wilson repeatedly to stop but she instead ran away, leading to a foot chase. *Id.*

Wilson stumbled at one point, allowing the officers to seize control of her arms and handcuff her. *Wilson*, 2003 WL 1564237, at *1. Once Wilson was secured in a patrol car, one of the officers observed a clear plastic bag with a rock-like substance where Wilson had been laying on the ground. *Id.* When the officer went to pick it up, Wilson yelled either "you can't put that on me … it's not mine" or "don't put that on me." *Id*. The substance turned out to be crack. *Id*. at *1-2.

### B. Wilson Is Convicted and Sentenced to 8 Years of Community Supervision

Wilson moved to suppress the cocaine based on the absence of "reasonable suspicion" to detain her in violation of the Fourth Amendment and the Texas Constitution. *Wilson*, 2003 WL 1564237, at *2. The trial court denied her motion

and a reconsideration request. *Id*.; <u>ROA 13</u>, ¶ 34; <u>ROA 13-14</u>, ¶¶ 35-36.) Although Wilson was granted a running objection to the cocaine seized in the case, her . *Id*., at *2; (<u>ROA 105</u>). During the trial, however, her counsel stipulated to the amount of cocaine that was seized. When the State then tendered the cocaine into evidence, Wilson's counsel stated, "No objection." *Id*. at *1, 3. Wilson was found guilty on July 17, 2001, and sentenced to 8 years of community supervision and a $1,000 fine. *Id*., at *1; (<u>ROA 104-111</u>). A motion for new trial was denied. (<u>ROA 14</u>, ¶ 39.)

### C. On Direct Appeal the Court Finds Wilson's Objection to the Admission of the Cocaine Evidence Was Waived

On direcdt appeal, the court declined to review the denial of the motion to suppress because defense counsel *affirmatively* stated during trial that there was no objection. *Wilson*, <u>2003 WL 1564237</u>, at *2-3 (citing cases). Because Wilson's counsel affirmatively stated "no objection" to the admission of the evidence at trial, Wilson had waived her right to challenge the admissibility of the cocaine on appeal. *Id*. at *3. The Court then held that the evidence introduced at trial was more than sufficient to support Wilson's conviction and affirmed her conviction on March 27, 2003. *Id*. at *3-5; (<u>ROA 14</u>, ¶ 41.)

### D. Wilson Does Not Seek Habeas Corpus Relief

Even though the appeal court specified her attorney's error as waiving the challenge to the admissibility of the cocaine, Wilson did not seek state habeas corpus relief pursuant to Texas Code of Criminal Procedure Article 11.072 for ineffective

assistance of counsel at trial.  (ROA 15, ¶ 42.) Nor did she seek habeas corpus from the federal courts.

### E.  Appellee Petty's Employment

Appellee Weldon "Ralph" Petty became a part-time law clerk for Midland County district judges in March 2000 (including Judge Hyde, who passed away in January 2012[1]). (ROA 17, ¶¶ 58-59.) A significant portion of Petty's law clerk duties consisted of advising, researching, and drafting rulings on state habeas petitions filed by individuals who had been convicted. (ROA 20, ¶ 78.) However, Petty also advised, performed legal research, and wrote orders and opinions for District Judges at all stages of the criminal process. (*Id*.)  He received over $250,000 as a law clerk from 2001 to 2014 and in 2017 to 2018 before retiring in 2019. (ROA 20, ¶¶ 80-83.)

In February 2001, Petty entered into a contract with the Midland County District Attorney's Office to work as a part-time independent contractor, which allowed him to continue to work on habeas corpus petitions. (ROA 42-45.) He then became a full-time prosecutor in 2002 – well after Wilson's trial in July 2001. *Young*, 2021 WL 4302528, at *2. As stated by the panel in this case, however, Petty was not a "frontline prosecutor" in her criminal case. *Wilson*, 89 F.4th at 448. Instead, Assistant District Attorney Elizabeth Beyer, not Petty, tried Wilson's criminal case

---

[1] *Ex parte Y*oung, 2021 WL 4302528, at *2 (Tex. Crim. App. Sept. 22, 2021).

before Judge Hyde. (ROA 104.) Nor did Petty represent the State on appeal. *Wilson*, 2003 WL 1564237, at *1.

Wilson alleges that Petty's invoices included work on Wilson's case (ROA 26, ¶ 110), supported by three orders that she contends Petty drafted. (ROA 104-11; ROA 26, ¶¶ 111-12.) Each order is a ministerial form completed with the appropriate information and to which Judge Hyde made handwritten corrections. (*Id*.) Wilson does not allege that Petty drafted the orders on her motion to suppress, her motion for reconsideration of that denial, or her motion for new trial. The absence of any such allegations counters the panel opinion's assertion that Petty "was "surreptitiously drafting important rulings adverse to Wilson." *Wilson*, 89 F.4th at 449. In fact, Wilson simply alleges "on information and belief" that Petty had *ex parte* communications with Judge Hyde regarding her case. (ROA 25-26, ¶¶ 114-15.)

### F. Midland County Had Limited Knowledge of Petty's Work

In 2002, District Judge John Hyde asked County Attorney Russell W. Malm to opine on Petty's ability to "receive additional pay in addition to his district attorney salary for doing work for the District Judges on habeas corpus cases." (ROA 18, ¶ 69; ROA 45.) Malm responded on August 14, 2002, that Petty could receive such pay based on his understanding that "[w]hen a post-conviction writ is assigned to Mr[.] Petty by a Judge, Mr[.] Petty reviews the file, performs any necessary

research and submits a recommendation and proposed order to the Judge," and that Mr. Petty performed this work "on his own time, and outside of county offices." (ROA 18, ¶ 70; ROA 45.)[2]   Moreover, Malm understood that Petty's duties as a prosecutor did "not include work on post-conviction writs[.]" (*Id.*)  Malm's opinion was "only about payment, and not about whether the dual employment would create an ethical conflict of interest."  *Young*, 2021 WL 4302528, at *2.

### G.  District Attorney Addresses Petty's Dual Employment

In August 2019, Midland County District Attorney Laura Nodolf became informed of Petty's dual employment as a prosecutor and law clerk when reviewing accounting records that included Petty's invoices. (ROA 22, ¶¶ 89-90.)  Nodolf sent letters to each of the defendants as to whom Petty had billed the District Court judges for work on post-conviction writs—none of whom included Wilson. *Young*, 2021 WL 4302528, at *3; (ROA 23, ¶¶ 93-95; ROA 64.)

Although a number of defendants sought writs of habeas corpus, only one was granted for Clinton Lee Young. In Young's case, the Texas court determined that Petty had an active role in the prosecution that included drafting motions and appearing in court on multiple occasions to argue particular legal issues. As such,

---

[2]   In responding to written questions from the IRS in 2008, District Attorney Teresa Clingman, wrote that when "a writ of habeas corpus is filed post-conviction, [Petty] responds to it for the judges, at their discretion or assignment." (ROA 19, ¶¶ 73-74; ROA 57; Doc. 1-4, ECF p. 11.)

his employment as a law clerk for the judge (which included drafting an order denying state habeas relief) "tainted" the entire proceeding from the outset. *Young*, 2021 WL 4302528, at *3-5. Habeas corpus was denied for the remaining petitions based on the Texas Court of Criminal Appeals' independent conclusions that Petty either was not involved in a dual capacity in the case or his dual employment did not impact the proceedings.[3]

## SUMMARY OF THE ARGUMENT

In her *en banc* brief, Wilson asks the Court to disregard Supreme Court precedent based on a distorted reading of *Heck* as having two holdings:

> First, [*Heck*] held that a § 1983 plaintiff who is in state custody and whose claim impugns an extant state conviction or sentence is subject to a "favorable termination" "prerequisite" to avoid § 1983's collision with the federal habeas statute, § 2254 (the habeas-collision holding). Second, it held that a § 1983 claim that is analogous to malicious prosecution has a favorable-termination element, based on the statute's importation of some common-law tort elements (the elements-based holding).

---

[3] *See Ex parte Holmes*, 2022 WL 17660556 (Tex. Crim. App. Dec. 14, 2022); *Ex parte Benavides*, 2022 WL 4360857 (Tex. Crim. App. Sept. 21, 2022); *Ex parte Marion*, 2022 WL 3640517 (Tex. Crim. App. Aug. 24, 2022); *Ex parte Richardson*, 2022 WL 2345836 (Tex. Crim. App. June 29, 2022); *Ex parte Mitchell*, 2022 WL 1021058 (Tex. Crim. App.  April 26, 2022); *Ex parte Palacios*, 2022 WL 946343, at *1 (Tex. Crim. App. Mar. 30, 2022); *Ex parte Wagner*, 2022 WL 610980 (Tex. Crim. App. Mar. 2, 2022); *Ex parte Vetter*, 2022 WL 610979 (Tex. Crim. App.  Mar. 2, 2022); *Ex parte Russie*, 2022 WL 389463 (Tex. Crim. App. Feb. 9, 2022); *Ex parte Rodriguez*, 2022 WL 389403 (Tex. Crim. App. Feb. 9, 2022); *Ex parte Parks*, 2022 WL 389427 (Tex. Crim. App. Feb. 9, 2022); *Ex parte Perez*, 2022 WL 221463 (Tex. Crim. App. Jan. 26, 2022).

(Appellant's *En Banc Br*. at 7.)   Wilson's misconstruction of *Heck* as having two holdings is the premise for every argument she makes, thereby tainting her conclusion that her Section 1983 claim is barred by *Heck*.   In fact, *Heck* has but <u>one</u> holding that the Supreme Court could not have made any clearer:

> ***We hold*** that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, **a § 1983 plaintiff** must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, <u>28 U.S.C. § 2254</u>. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck*, <u>512 U.S. at 486-87</u> (footnotes omitted) (emphasis added).

Underscoring the reach of the holding, *Heck* added a footnote stating: "We think the principle barring collateral attacks—a longstanding and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Heck*, 512 at 490, n.10. This explicit holding directly repudiates Wilson's contention that *Heck* is limited to individuals who are in custody such that her claim accrued without the need for a favorable termination of her prosecution.

As explained below, the Court is bound to follow *Heck*'s holding, and its rationale, despite comments by some Justices that *Heck* should be limited to

custodial plaintiffs. Apart from the fact that those Justices are no longer members jof the Supreme Court, this Court is bound to apply Supreme Court precedent unless and until <u>that</u> Court alters its holdings. Primarily for this reason, the circuit courts that have not followed *Heck* where the federal habeas corpus is unavailable have not been loyal to the teachings of the Supreme Court and *stare decisis* principles.

In the end, two undeniable circumstances remain significant for the purposes of this appeal: (1) Wilson's complaint challenges the constitutionality of her conviction; and (2) Wilson's prosecution has not terminated favorably. Wilson, in fact, acknowledges that both of these circumstances exist. (Appellant's *En Banc* Br. at 16-17.) As it is thus irrefutable that *Heck* bars her claim, the district court's dismissal must be affirmed.[4]

## **ARGUMENT**

### **I.     Under Supreme Court Precedent, A Section 1983 Claim Challenging the Validity of a Conviction or Sentence Does Not Accrue Until There Has Been a Favorable Termination of the Prosecution**

Heck was still in custody when his Section 1983 action was filed but had not petitioned for a writ of habeas corpus under <u>28 U.S.C. § 2254</u>. This circumstance

---

[4] Wilson's *en banc* brief is limited to whether her complaint was properly dismissed under *Heck* and does not address the alternative grounds for affirming the dismissal that were addressed in Appellees' response brief presented to the panel for adjudication. If the Court finds that *Heck* does not apply to affirm the dismissal under the circumstances presented, Appellees incorporate their alternative arguments for dismissal as addressed herein.

presented a conflict because the Supreme Court had ruled previously that habeas corpus under that statute was the "exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481 (citing *Prieser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)). Unlike a habeas petition, however, a Section 1983 action is a claim for damages that is "a species of tort liability." *Id.* at 483 (quoting *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 305 (1986)). For guidance, the Supreme Court thus turned to the common law analogue of malicious prosecution, which requires "the termination of the prior criminal proceeding in favor of the accused." 512 U.S. at 484.

> This requirement avoids parallel litigation over the issues of probable cause and guilt and [] precludes the possibility of a claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.

*Id*. (cleaned up). The Supreme Court noted that it too had "long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack," and concluded that Section 1983 actions "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." *Id.* at 484-85.

11

Ultimately, as quoted above, the Supreme Court laid down the applicable law by holding that a Section 1983 claim seeking damages for any "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" must show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 at 486-87. Because Heck's prosecution had not been terminated in his favor under any of these alternative means, the dismissal of his Section 1983 claims was affirmed. *Id.* at 490.

Although Justice Souter concurred in the result, he wrote separately to opine that a Section 1983 claim impugning the validity of a conviction or sentence *would* accrue if the habeas corpus remedy were no longer available. *Heck*, 512 U.S. at 501-03. Joined by Justices Blackmun, Stevens, and O'Connor, he would have limited the holding to circumstances where a Section 1983 claim for damages overlapped with the injunctive remedy under the habeas corpus statute. As stated above, the majority opinion unequivocally rejected that limitation, however, writing that the bar "is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Id*. at 490, n.10. Thus, Justice Souter's concurring opinion was not part of the holding that a Section 1983 claim does not accrue unless the conviction has been terminated favorably in one of four ways: (1) reversed on direct appeal; (2)

expunged by executive order; (3) invalidated by a state tribunal; or (4) invalidated by a federal writ of habeas corpus. *Id*. at 486-87. Indeed, by expressing four <u>different</u> ways in which a Section 1983 claim can accrue, *Heck* made clear that its holding is not limited to a successful federal habeas corpus petition but can be achieved by other means as well. On its clear terms, therefore, *Heck* holds that a Section 1983 claim does not accrue unless and until there has been a favorable termination of the prosecution, whether by means of a federal habeas corpus petition or otherwise.

Justice Souter reiterated his view in a concurring opinion in *Spencer v. Kemna*, <u>523 U.S. 1</u> (1998). *Spencer* was not a Section 1983 action but instead a habeas corpus petition challenging a parole revocation that resulted in Spencer's return to prison. *Id.* at 3. Because Spencer had completed his sentence while the petition was pending, the district court dismissed the petition as moot. *Id.* at 6. The question presented to the Supreme Court was whether a case or controversy remained. *Id.* at 6-7.

In answering that question, the Supreme Court noted Spencer was incarcerated when the petition was filed, but once he was released "some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the [habeas] suit is to be maintained." *Spencer*, <u>523 U.S. at 7</u>. Although "most criminal convictions do in fact entail adverse collateral consequences…[t]he same cannot be said of parole revocation." *Id*. at 12. The Supreme Court found that Spencer had not shown the

13

requisite "collateral consequences" to maintain his challenge to the parole revocation. *Id.* at 12-16. The Supreme Court then turned to Spencer's other arguments, including that he needed to continue with his petition as a prerequisite to a Section 1983 claim for damages in light of *Heck.* In a single paragraph, the Supreme Court rejected the notion that "a §1983 action for damages must always and everywhere be available," and added that *Heck* would not apply to a Section 1983 claim challenging the procedures employed "if that procedural defect did not 'necessarily imply the invalidity' of' the revocation[.]" *Id.* at 17 (quoting *Heck*, 512 U.S. at 487).

Even though *Spencer* did not involve a Section 1983 action, Justice Souter— who again concurred with the outcome—wrote separately to again opine that the "better" view would be "that a former prisoner, no longer 'in custody,' may bring a §1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Spencer*, 523 U.S. at 21. Three justices (O'Connor, Ginsburg and Breyer) joined Justice Souter's concurring opinion. Justice Stevens dissented, expressing his belief that Spencer did show collateral consequences given the stigma from parole having been revoked based on a finding that he had committed the crime of forcible rape. *Id*. at 22-23. In a footnote, however, he joined Justice Souter's concurring opinion that the absence of a remedy

under the habeas statute meant that Spencer could bring a claim for damages under §1983. *Id.* at 24, n.8.

Justice Stevens' footnote was aligned with Justice Souter's concurring opinion in *Heck* in which he had also joined. Justice Blackmun, who had also joined that concurring opinion, had retired and was replaced by Justice Breyer who joined Justice Souter's concurring opinion in *Spencer*. As such, it was Justice Ginsburg's switch from the majority opinion in *Heck* to the concurring opinion in *Spencer* that resulted in the alignment of five justices in *Spencer*. Because *Spencer* was not a Section 1983 case, their opinion constituted *dicta* that did not alter *Heck*'s holding.

The same five justices remained members six years later when the Supreme Court, *per curiam*, issued *Muhammad v. Close,* 540 U.S. 749 (2004), which did involve a Section 1983 claim. Specifically, *Muhammad* resolved a circuit split as to *Heck*'s application to prison disciplinary proceedings that did not affect the fact or duration of the prisoner's conviction or sentence. Following a confrontation with a prison official, Muhammad was charged with "threatening behavior," which caused him to spend 6 days in detention before a hearing was conducted. *Id.* at 752. He was ultimately acquitted of the "threatening behavior" charge but found guilty of the lesser included infraction of "insolence" and sentenced to seven additional days in detention. *Id.* at 752-53. Muhammad admitted he was guilty of "insolence" but sought damages under Section 1983 for having to spend six days in detention before

the hearing due to the "threatening behavior" offense for which he was acquitted. *Id.* at 753. The Sixth Circuit affirmed the district court's dismissal, reasoning that Muhammad had sought to expunge the charge from his prison record. *Id.* at 753-54. Because Muhammad's challenge to the pre-hearing detention did not impact his criminal conviction or the length of his sentence, the Supreme Court unanimously agreed Muhammad did not raise grounds in conflict with a federal habeas corpus petition. *Id.* ad 754-55. As such, "*Heck*'s favorable termination requirement was inapplicable." *Id.* at 755.

In a footnote, the justices acknowledged that "[m]embers of the Court have expressed the view that unavailability of habeas for other reasons <u>may</u> also dispense with the *Heck* requirement," citing *Spencer*, but that the case at bar "is no occasion to settle the issue." *Muhammad*, <u>540 U.S. at 752</u>, n.2 (emphasis added). As with the *dicta* in *Spencer* on *Heck*'s reach, the footnote in *Muhammad* was *dicta* suggesting that in some future case, the Supreme Court might consider whether *Heck*'s holding requiring a Section 1983 plaintiff to show a favorable termination of the prosecution should be limited.

More recently, the Supreme Court issued *McDonough v. Smith*, <u>139 S. Ct. 2149</u> (2019), which resolved a circuit split on the accrual date for a Section 1983 claim where the criminal defendant was ultimately acquitted. McDonough, who was a member of the county board of elections, alleged that the prosecutor was a political

16

rival who fabricated evidence that McDonough had forged absentee ballots for an election in 2009. *Id.* at 2153. McDonough's first trial ended in a mistrial but a second trial ended in an acquittal in December 2012. *Id.* at 2154. He then sued under Section 1983 seeking damages for the fabrication of evidence. *Id.* Because the applicable limitations period was three years, his lawsuit was timely if the claim accrued upon his acquittal in 2012, but untimely if it accrued when evidence was fabricated and used against him. *Id.*

In finding McDonough's lawsuit was timely, the Supreme Court—comprised of members who closely resemble today's court—reiterated that *Heck*'s favorable termination requirement "is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough*, 139 S. Ct.139 S. Ct. at 2156-57. "These concerns track 'similar concerns for finality and consistency' that have motivated this Court to refrain from multiplying avenues for collateral attack on criminal judgments through civil tort vehicles such as § 1983." *Id.* at 2157 (quoting *Heck*, 512 U.S. at 485). In applying the fundamental principles underlying *Heck*, the Court held that "[o]nly once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, will the statute of limitations begin to run." *Id.* at 2158 (internal citation omitted). A contrary rule, that the claim accrues before there is a favorable

termination, would run afoul of *Heck* and its underlying concerns of avoiding parallel proceedings, conflicting outcomes, and friction between state and federal courts. *Id*. at 2156-57, 2161. *McDonough* thus reaffirmed *Heck's* holding that a Section 1983 claim challenging the lawfulness of a conviction or sentence does not *accrue* unless and until the prosecution has terminated favorably.

Before turning to the circuit split applying *Heck's* holding, it is important to note that whatever differences the Justices may have expressed in concurring or dissenting opinions, none have wavered from the belief that *Heck* applies <u>whenever</u> the validity of a conviction or sentence is challenged and is not limited to malicious prosecution claims, as Wilson contends. Perhaps the clearest example is *Edwards v. Balisok*, <u>520 U.S. 641</u> (1997), where Balisok was found guilty of four prison infractions and whose sentence included the deprivation of 30 days of good-time credits. He sued under Section 1983, seeking restoration of his good-time credits based on an allegation that the procedures employed in finding him to be guilty violated his due process rights. *Id.* at 643. The Supreme Court granted certiorari to review the Ninth Circuit's holding that "a claim challenging only the procedures employed in a disciplinary hearing is always cognizable under § 1983." *Id.* at 644. Even though Balisok's claim did not resemble a malicious prosecution claim, the Supreme Court reversed because the relief sought would "necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646.  Applying *Heck*,

the Supreme Court concluded that Balisok's claim "based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Id.* at 648.

Similarly, Wilson alleges the proceedings against her (the criminal trial and conviction) were constitutionally invalid under the Due Process Clause. *Edwards* thereby eviscerates one of Wilson's foundational arguments that *Heck* is limited to malicious prosecution claims. *Edwards* reinforces the key to *Heck*'s applicability that *this* Court has repeatedly recognized—"*Heck* bars section 1983 actions when 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction.'" *Poole v. City of Shreveport*, 13 F.4th 420, 426 (5th Cir. 2021) (quoting *Heck*, 512 U.S. at 487); *see also Buntion v. Lumpkin*, 31 F.4th 952, 966 (5th Cir. 2022) ("In short, if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, the claim is not cognizable under § 1983.") (quoting *Heck*, 512 U.S. at 487); *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir. 2020) ("*Heck* prohibits suit under § 1983 if success on the claim would necessarily imply that a prior conviction or sentence is invalid.") (citing *Heck*, 512 U.S. at 486–87); *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001) ("A threshold question for a *Heck*-type analysis is whether a successful § 1983 suit would necessarily imply the invalidity of a criminal conviction."); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945–46 (5th Cir. 1999) ("*Heck* itself provides for preclusion of only those

claims that, if proven, would necessarily imply the invalidity of a conviction or sentence."); *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996) ("Hudson's section 1983 action may be entertained, therefore, only if the court determines that holding in Hudson's favor will not necessarily call into question the validity of his convictions.").

Notably, Justice Ginsburg, joined by Justices Souter and Breyer, concurred that *Heck* foreclosed Balisok's claim that implied "the invalidity of the punishment imposed." *Edwards*, 520 U.S. at 649. Justice Ginsburg wrote separately solely to emphasize that a claim would be "immediately cognizable under § 1983" if, for example, it challenged the constitutionality of prison discipline based on the failure to provide "a written statement of reasons and evidence relied on," as such a claim does not "necessarily imply the deprivation of his good-time credits." *Id*. at 649-50 (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974)). Thus, three of the justices who had advocated in favor of limiting *Heck* to custodial plaintiffs agreed nevertheless that *Heck* is not limited to a malicious prosecution claim, and that it instead extends to any legal assertion that impugns the validity of a conviction or sentence, and by any means.

## A. Circuit Court Cases Applying *Heck*'s Favorable-Termination Holding

Although *Heck*'s favorable termination rule remains the law, several circuit courts have seized on comments in *Spencer* and *Muhammad* to weaken its

application where federal habeas corpus relief is not available. Presently, five circuits find *Heck* requires the prosecution to have been terminated favorably for a Section 1983 claims to accrue, and four are aligned with Justice Souter's opinions.[5]

**1. Fifth Circuit and Four Other Circuits Uphold *Heck*'s Favorable Termination Requirement Instead of Relying on Dicta in Concurring and Dissenting Opinions Authored by Justices Who Are No Longer Members of the Supreme Court.**

The circuits that find a Section 1983 claim does not accrue even if federal habeas corpus relief is not available reason that "*Heck*'s 'core holding' [is] that annulment of the underlying conviction is an element of a section 1983 'unconstitutional conviction' claim." *Figueroa v. Rivera*, 147 F.3d 77, 81 (1st Cir. 1998). Although "dicta from concurring and dissenting opinions in a recently decided case [*Spencer*] may cast doubt upon the universality of *Heck*'s 'favorable termination' requirement," the Supreme Court "has admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears

---

[5] The panel's opinion in the case at bar identified a circuit split of 6 to 5 with the Ninth and Eleventh Circuits being within the six circuits aligned with Justice Souter's opinion. 89 F.4th at 457 (citing *Nonette v. Small,* 316 F.3d 872 (9th Cir. 2002) and *Harden v. Pataki,* 320 F.3d 1289 (11th Cir. 2003)). However, the Ninth Circuit has retreated from *Nonnete,* where the non-custodial plaintiff was not diligent in pursuing relief while in custody. *Galanti v. Nevada Dep't. of Corrections,* 65 F.4th 1152 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 527 (2023). For its part, the Eleventh Circuit has made plain that it has not decided this issue. *See Butler v. Georgia*, 2022 WL 17484910, *4 (11th Cir. Dec. 7, 2022) ("[T]his exception was set forth in a concurring opinion in *Spencer v. Kemna*, 523 U.S. 1, 21 (1998) (Souter, J., concurring), and neither the Supreme Court nor this Court has applied this exception in a published opinion.")

weakened by pronouncements in its subsequent decisions, and to leave to the [Supreme] Court 'the prerogative of overruling its own decisions.'" *Id.* (quoting *Agostini v. Felton*, 521 U.S. 203 (1997)).

The prisoner in *Figueroa* passed away while he was challenging his conviction through a federal habeas corpus petition thereby rendering it moot. Because he had not achieved a favorable termination of his prosecution, his representative's Section 1983 claim was thereafter dismissed under *Heck*. In affirming the dismissal, the First Circuit acknowledged that the claim "strikes a responsive chord" but concluded that "[c]reating an equitable exception … would fly in the teeth of *Heck*." *Id.* at 81. The First Circuit thereby upheld *Heck*'s holding requiring a favorable termination of the prosecution without regard to the availability of federal habeas corpus relief. *Id.*; *accord, Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007) ("Absent a decision of the [Supreme] Court that explicitly overrules what we understand to be the holding of *Heck*, however, we decline to depart from that rule.") *see also Randell*, 227 F.3d 300 (affirming the dismissal of a Section 1983 claim because plaintiff did not satisfy *Heck*'s favorable termination requirement even though he had been released from custody).

Similar reasoning was applied in *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005), where the Third Circuit reviewed the dismissal of a Section 1983 claim by Timothy Petit whose charges had been expunged after he completed a rehabilitation program.

By entering the program, Petit had waived the right under Pennsylvania law to prove his innocence such that he had not shown a favorable termination of his prosecution. The Third Circuit acknowledged that "concurring and dissenting opinions in [*Spencer*] question the applicability of *Heck* to an individual, such as Petit, who has no recourse under the habeas statute." *Id.* at 209-10. *Heck*'s purpose, however, was to "avoid parallel litigation of probable cause and guilt" by preventing the plaintiff "from succeeding in a tort action after having been convicted in the underlying criminal prosecution, which would run counter to the judicial policy against creating two conflicting resolutions arising from the same transaction." *Id.* at 209. The Third Circuit expressed "doubt that *Heck* has been undermined" but agreed in any event with the First Circuit that the Supreme Court must overrule its own decisions. *Id*. at 210 (citing *Figueroa, supra; Agostini, supra*).

More recently, the Seventh Circuit dove deepest into this issue in the *en banc* decision of *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) (*en banc*). Savory had been convicted of first-degree murder and sentenced to serve a term of 40 to 80 years based on evidence that he claimed had been fabricated. He was not successful, however, despite pursuing direct appeals and post-conviction remedies in both state and federal courts. After spending 30 years in prison, he was released on parole but kept fighting to prove his innocence. In 2011 the Illinois governor commuted his sentence but left his conviction intact. Four years later, in 2015, he was pardoned by

the governor who declared Savory to be acquitted with full restoration of his citizenship rights.

Savory commenced a Section 1983 action in 2017 seeking damages for his allegedly wrongful conviction. Because the limitations period was two years, the question presented was whether his damages claim accrued in 2011 when his sentence was commuted or in 2015 when he was pardoned. The defendant contended the action accrued in 2011 because he could no longer pursue a claim for federal habeas corpus relief. Savory, on the other hand, asserted his action did not accrue until 2015 when the governor's pardon and accordant acquittal terminated the prosecution in his favor.

The Seventh Circuit found that "*Heck* controlled the outcome: [Savory] had no complete cause of action until he received a favorable termination of his conviction, which occurred when the governor issued a pardon for the subject conviction." *Savory*, 947 F.3d at 418. A contrary ruling, the court reasoned, would run afoul of not only *Heck* but also the Congressional mandate that federal courts give state court judgments "the same full faith and credit … as they have by law or usage in the courts of such State." *Id*. (quoting 28 U.S.C. § 1738). Consistent with that statute, "[t]he *Heck* bar accounts for the preclusive effect of state court criminal judgments on civil litigation by lifting the bar only when the plaintiff has achieved a favorable termination of the criminal proceeding." *Id.* at 419. A straightforward

application of *Heck*, therefore, required Savory to await a favorable termination of his prosecution before he could sue for damages under Section 1983.

The defendant nevertheless argued that Savory's claim accrued in 2011 when federal habeas corpus relief became unavailable upon his release from custody, as Justice Souter had reasoned in his concurring opinions. The Seventh Circuit noted that the contention was based on the belief that "dicta in concurring and dissenting opinions, cobbled together, now formed a new majority, essentially overruling footnote 10 in *Heck*." *Savory*, 947 F.3d at 421. Citing *Agostini*, however, the court found "it is axiomatic that dicta from a collection of concurrences and dissents may not overrule majority opinions." *Id.* Moreover, the court explained,

> *Heck* was concerned with more than the exclusivity of the habeas corpus remedy for persons in custody, or the intersection between habeas corpus and section 1983. The favorable termination rule in *Heck* also rested on concerns arising generally from collateral attacks on extant criminal convictions through civil law suits. Specifically, requiring a section 1983 plaintiff to prove favorable termination of the criminal conviction avoids parallel litigation over the issues of probable cause and guilt, and precludes the possibility that a plaintiff might succeed in a civil tort action after having been convicted in the underlying criminal prosecution, allowing the creation of conflicting judgments arising out of the same transaction.
>
> ***
>
> Although footnote 10 of *Heck* addressed a factual scenario that was not before the Court, to dismiss all of footnote 10 as dicta is to divorce a significant part of the Court's rationale from its holding. The Court was simply making clear how broadly it intended its holding to apply.

*Id*. at 421-22. So viewed, *Heck*'s holding (as fortified by footnote 10) avoided an anomalous result:

> Under the defendant's rule, a section 1983 claim would accrue on release from custody even though the conviction remained intact, and even though preclusion rules would effectively prevent the plaintiff from bringing any claim inconsistent with the original criminal conviction. Claimants like Savory, who obtained a pardon several years after release from custody and who may have the most meritorious claims, would be too late. Nothing in *Heck* requires such a result.

*Id*. at 419. At the same time, the Seventh Circuit acknowledged that "*Heck* sets a high standard" and that "some valid claims will never make it past the courthouse door." *Id*. at 428. As the Court summarized,

> *Heck* explains, though, why a high bar must be cleared before seeking damages in a civil action on claims that imply the invalidity of a criminal conviction. The Court sought to avoid parallel litigation on the issue of guilt, preclude the possibility of conflicting resolutions arising out of the same transaction, prevent collateral attacks on criminal convictions through the vehicle of civil suits, and respect concerns for comity, finality and consistency. … We are not in a position to alter the *Heck* standard or set aside these concerns.

*Id.* at 428.

### 2. Circuit Courts Relied Upon By Wilson Eliminate *Heck*'s Favorable Termination Requirement, Contrary to *Heck*'s Rationale and the Admonition That the Supreme Court Alone Has the Prerogative to Alter its Precedent

The circuits that have eliminated the favorable termination requirement have relied on the reasoning first expressed in Justice Souter's concurring opinion to limit *Heck* to plaintiffs who meet the custodial requirement to pursue federal habeas corpus relief. The first appeals court to do so, at least in a published opinion, was

26

*Huang v. Johnson*, 251 F.3d 65 (2d Cir. 2001), where the Section 1983 lawsuit was filed after the plaintiff had been released from custody. *Huang* determined that *Heck* did not apply, citing Justice Souter's concurring opinion as well its prior decisions in *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999) and *Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999). Neither *Jenkins* nor *Leather*, however, supported eliminating the favorable termination requirement for the plaintiff in *Huang*.

*Jenkins* involved a Section 1983 claim that challenged a prison disciplinary proceeding and not the validity of the conviction. As the decision pre-dated *Muhammad*'s resolution of that issue, the Second Circuit examined the law at the time to conclude that "nothing in Supreme Court precedent requires that the *Heck* rule be applied to a challenge by a prisoner to a term of disciplinary segregation." *Jenkins*, 197 F.3d at 27. Unlike the plaintiff in *Huang*, however, the plaintiff in *Jenkins* was still in custody; as such, *Jenkins'* reasoning did not support eliminating the favorable termination requirement where the plaintiff is not in custody.

*Leather* comes closer as it involved a direct challenge to a conviction for driving while intoxicated for which he was assessed a fine but not taken into custody. Yet despite that key distinction from *Jenkins*, the Second Circuit relied on *Jenkins* to reverse the district court's dismissal based on *Heck*:

> Although Leather's action does not challenge conditions of confinement, *Jenkins* implies the inapplicability of *Heck* for Leather. Because Leather is not and never was in the custody of the State, he, like *Jenkins,* has no remedy in habeas corpus. Having escaped the jaws

27

> of *Heck,* Leather should therefore be permitted to pursue his § 1983 claim in the district court ….

180 F.3d at 424. *Leather*'s reliance on *Jenkins* for "implying" that *Heck* is limited to custodial plaintiffs is misplaced as nothing in *Jenkins* was based on the availability of federal habeas corpus relief. Nonetheless, the Second Circuit concluded:

> In light of our holding in *Leather,* and in light of both the *Spencer* majority's dictum and the fact that the *Spencer* concurrences and dissent "revealed that five justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be," *Jenkins,* 179 F.3d at 26, we conclude that Huang's Section 1983 claim must be allowed to proceed.

*Huang*, 251 F.3d at 75. Notably absent is any mention of the Supreme Court's 1997 decision in *Agostini* that admonished the lower courts not to overrule Supreme Court precedent on their own.

The Sixth Circuit took even greater liberties with the law in *Powers v. Hamilton County*, 501 F.3d 592 (6th Cir. 2007), where the plaintiff was in custody for only a day before he was released for failing to pay a fine. He then filed a Section 1983 action based on the failure to have a hearing on his ability to pay the fine. In allowing his claim to proceed, *Powers* stated that "[i]n *Shamaeizadeh v. Cunigan*, we stated that *Spencer* 'clearly excludes from *Heck*'s favorable termination requirement former prisoners no longer in custody.'" *Id.* at 601-02 (quoting *Shamaeizadeh*, 182 F.3d 391, 396, n. 3 (6th Cir. 1999)). This statement omits that *Shamaeizadeh* in fact said that "the majority of the Court in *Spencer*" had so stated,

182 F.3d at 396, n.3, which then allowed it to relieve Powers of the favorable termination requirement as Supreme Court precedent.

*Powers*' liberty with applying precedent did not end there, as the Sixth Circuit explicitly found to the contrary in *Huey v. Stine*, 230 F.3d 226 (6th Cir. 2000), a decision that was decided after *Shamaeizadeh* but before *Powers* was decided. *Huey* involved a Section 1983 claim by a prisoner who had challenged a disciplinary proceeding that resulted in a sentence for assault and battery. Because the case was decided before *Muhammad*, the Sixth Circuit considered whether *Heck* required a favorable termination before the damages claim could be brought. Even though federal habeas corpus was not available for Huey to contest the disciplinary proceeding, the Sixth Circuit found that *Heck* precluded his damages claim. Citing the unpublished opinion of *Riley v. Kurtz*, 1999 WL 801560 (6th Cir. Sep't. 28, 1999), the *Huey* court wrote:

> Today we reaffirm the holding of *Riley* as the law of this Circuit. In order to grant the plaintiff in this case the relief that he seeks, we would have to unwind the judgment of the state agency. "This is precisely the result that we have repeatedly held to be impermissible based on our interpretation of *Edwards.*" *Id.* at *6. Although *Spencer* may cast doubt upon the universality of the "favorable termination" requirement, we will continue to follow the Supreme Court's directly applicable precedent and "leave to the Court 'the prerogative of overruling its own decisions.'" *Figueroa,* 147 F.3d at 81 n. 3 (quoting *Agostini v. Felton,* 521 U.S. 203, 237, 117 S. Ct. 1997, 138 L.Ed.2d 391 (1997)). Accordingly, we hold that *Heck* is not made inapplicable to Huey's claim by the unavailability of habeas relief.

230 F.3d at 230. Curiously, *Powers* mentioned *Huey* in passing only, as having "acknowledged the uncertainty generated by *Spencer*," 501 F.3d at 602, and not as reaffirming "the law of this Circuit" as *Huey* actually indicated. 230 F.3d at 230.

Other circuits have eliminated *Heck*'s application to non-custodial plaintiffs on equitable grounds. The clearest example is *Wilson v. Johnson*, 535 F.3d 262 (4th Cir. 2008), which involved a Section 1983 challenging a change in the release date after the plaintiff had been released from custody. Without citing any legal authority, the Fourth Circuit determined that "[a]bsent a statutory edict to the contrary or a restriction within the common law, the reach of § 1983 should not be compromised." *Id*. at 266. After then summarizing the various opinions in *Spencer*, the court wrote: "We believe that the reasoning employed by the plurality in *Spencer* must prevail in a case like Wilson's, where an individual would be left without any access to federal court if his § 1983 claim was barred." *Id*. at 267-68. Similarly, the Tenth Circuit quoted directly from Justice Souter's concurring opinion in *Spencer*—a habeas corpus case—to conclude that "[i]f a petitioner is unable to obtain habeas relief—at least where this inability is not due to the prisoner's lack of diligence—it would be unjust to place his claim for relief beyond the scope of § 1983 where 'exactly the same claim could be redressed if brought by a former prisoner who had succeeded in cutting his custody short through habeas.'" *Cohen v. Longshore*, 621 F.3d 1311, 1316-17 (10th Cir. 2010) (quoting *Spencer*, 523 U.S. at 21 (Souter, J., concurring)).

In characterizing the concurring and dissenting opinions as a "plurality," *Wilson* ignored that *Spencer* was a habeas corpus case for which any statements about *Heck*'s application to Section 1983 claims would be *dicta* <u>within</u> *dicta*. And notably absent was any mention of *Agostini*, which was met with a sharp dissent: "That Justice Ginsburg changed her mind between *Heck* and *Spencer* does not change the fact that we, as an inferior court, must continue to follow the holdings of the Supreme Court, not the views as espoused by the varying justices on issues not before the Court." *Wilson*, <u>535 F.3d at 270</u> (Hansen, J., dissenting).

## II.     *Heck*'s Holding Mandates Dismissal of Wilson's Complaint

The circuits that have circumvented *Heck*'s favorable termination requirement have run afoul of Supreme Court precedent in two respects. First, by unmooring *Heck*'s holding from its rationale; and second, by ignoring that the Supreme Court has instructed the lower courts that it has the *sole* prerogative to overrule its own decisions.

### A. *Agostini* informs the application of Supreme Court precedent

The issue in *Agostini* was whether *Aguilar v. Felton*, <u>473 U.S. 402</u> (1985) had been overruled by intervening decisions. In *Aguilar*, the Supreme Court had determined that the Establishment Clause prohibited public school teachers from being assigned to provide remedial services to disadvantaged students within the

confines of religious schools. As reasoned in *Aguilar*, the arrangement impermissibly entangled "church and state," resulting in a permanent injunction.

Over a decade later, the plaintiffs in *Agostini* challenged *Aguilar*'s continued vitality, claiming it had been undermined by intervening Establishment Clause decisions. The Supreme Court ultimately overruled *Aguilar* based on intervening Supreme Court decisions, but in so doing provided explicit directions for the role of lower courts in applying Supreme Court precedent.

One of the intervening decisions addressed in *Agostini* was *Board of Education of Kiryas Joel Village School District v. Grumet*, 512 U.S. 687 (1994), in which five justices had joined concurring or dissenting opinions calling for *Aguilar* to be revisited and/or explicitly overruled. *Id.* at 717-18 (O'Connor, J., concurring); *id.* at 731 (Kennedy, J., concurring); *id.* at 750 (Scalia, J., dissenting joined by Rehnquist, C.J. and Thomas, J.) Even though a majority of the members of the Supreme Court had criticized *Aguilar*, the Supreme Court made clear that lower courts remained bound by the decision. "The views of five Justices that the case should be reconsidered or overruled cannot be said to have effected a change in Establishment Clause law." *Agostini*, 521 U.S. at 217. By eerie coincidence, the views of five former Justices that *Heck* should be limited to custodial plaintiffs is likewise of no moment for the case at bar.

Another intervening Establishment Clause decision addressed by *Agostini* was *Zobrest v. Catalina Foothills School District*, 509 U.S. 1 (1993), which had upheld the use of public funds to provide deaf students with a sign language interpreter within the confines of a religious institution. Justice Souter disagreed, stating in a dissenting opinion in *Agostini* that *Zobrest* was limited to its particular facts involving a sign language interpreter. The majority refuted this notion, stating instead that *Zobrest*'s "underlying rationale" governed its application:

> [T]here is no genuine basis upon which to confine *Zobrest* 's underlying rationale—that public employees will not be presumed to inculcate religion—to sign-language interpreters. … Our refusal to limit *Zobrest* to its facts despite its rationale does not, in our view, amount to a "misreading" of precedent.

*Agostini*, 521 U.S. at 225. Thus, until the Supreme Court overrules its own precedent, lower courts are bound thereby:

> We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Adherence to this teaching by the District Court and Court of Appeals in this litigation does not insulate a legal principle on which they relied from our review to determine its continued vitality. The trial court acted within its discretion in entertaining the motion with supporting allegations, but it was also correct to recognize that the motion had to be denied unless and until this Court reinterpreted the binding precedent.

*Id.* at 237–38 (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)); *accord State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) (finding that the Court of Appeals correctly applied directly applicable precedent despite doubts as to its continuing vitality, "for it is this Court's prerogative alone to overrule one of its precedents.")

### B. *Heck*'s holding extends to non-custodial plaintiffs

Heck himself was in custody when he filed his Section 1983 petition, thereby setting up a conflict with the federal habeas corpus procedure which requires exhaustion of state law remedies. Although that conflict formed the springboard for the analysis, the decision itself went far beyond avoiding a conflict between the two remedies. After reviewing fundamental concerns for federalism and finality, the Supreme Court identified four different means by which a prosecution would be terminated favorably, only <u>one</u> of which was through a successful petition for a writ of habeas corpus by a federal court. *Heck,* 512 U.S. at 485-87. The explicit mention of other means by which a prosecution could likewise be terminated favorably made clear that the holding was intended to apply beyond the limited facts presented in the case. As indicated above, the Supreme Court dispelled all doubt as to the intended breadth of the holding by clarifying that the holding "is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Id*. at 490, n.10.

The rationale underlying *Heck*, therefore, is <u>not</u> limited to avoiding a conflict with the federal habeas corpus remedy, but instead to meeting the concerns of federalism and avoiding parallel litigation with conflicting outcomes. And as *Agostini* instructs, the legal standard to be applied is derived from the *rationale* of *Heck* and not limited strictly to the application to its facts.

In the case at bar, there is no dispute that Wilson's prosecution did not terminate in her favor. Both the text setting forth the holding in *Heck* and the explicit elaboration thereof in footnote 10 make clear that <u>any</u> Section 1983 claim for damages that impugns the validity of her conviction has not accrued. As such, the Court does not need to reach to discern *Heck*'s rationale to find that Wilson's Section 1983 claim was properly dismissed by the district court.

Nor can this Court legitimately rely on the concurring and dissenting opinions in *Spencer* to limit *Heck*'s holding to custodial plaintiffs for whom federal habeas corpus relief is not available. It is axiomatic that concurring opinions—let alone dissenting ones—cannot form the legal holding of the case to be applied. Instead, such opinions express a recommended divergence from the majority opinion, and all the more so when the separate opinion seeks to augment the holding of the case directly. This is particularly true given that *Spencer* was a habeas corpus decision such that any comments on *Heck*'s application to a Section 1983 action was not only *dicta* but commentary on a hypothetical rule that might apply in a different setting.

To rely on the concurring and dissenting opinions in *Spencer*, therefore, would be to usurp the Supreme Court's prerogative to alter its own precedent in a dramatic overstep of this Court's role in applying that precedent. Likewise, in the footnote in *Muhammad*, the Supreme Court referenced *Spencer* as reflecting various opinions as to whether *Heck*'s holding "may" apply to noncustodial plaintiffs, but that the case did not present an "occasion to settle the issue." *Muhammad*, 540 U.S. at 752, n.2. Viewed through the proper lens articulated clearly in *Agostini*, this statement does not give license for the lower courts to revisit *Heck*'s holding. Instead, the footnote merely made clear that the *Supreme Court* had not done so. If nothing else, *Agostini* teaches that the lower federal courts must continue to apply *Heck*'s holding unless and until the Supreme Court changes the legal standard.

The Fifth Circuit has faithfully adhered to this teaching by declining invitations to disregard Supreme Court precedent as having been overruled by subsequent cases. *See*, *e.g.*, *Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194, 206 n.11 (5th Cir. 2021) (*en banc*), *aff'd*, *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023) ("As between the directly on-point decision (*Free Enterprise Fund*) and some other decision (*Elgin*), we must follow the former—even if we think it is inconsistent with the latter. … , Indeed, even if the tension between the two cases was so stark that we could confidently predict *Free Enterprise Fund*'s impending demise, we would still have to follow it"); *Pizza Hut, LLC v. Pandya*, 79

F.4th 535, 542 (5th Cir. 2023) ("[T]he Supreme Court has been careful to instruct lower courts not to read new pronouncements as overruling any related precedent"); *Lefebure v. D'Aquilla*, 15 F.4th 650, 660-61 (5th Cir. 2021) ("Amici also float the notion that *Linda R.S.* 'seems unlikely to have survived' various Supreme Court rulings issued over the 'nearly fifty years' since that decision. But once again, amici ignore decades of Supreme Court teachings. As the Court has repeatedly reminded us, the only court that can overturn a Supreme Court precedent is the Supreme Court itself."), *cert. denied*, 142 S. Ct. 2732 (2022); *United States v. Coto-Mendoza*, 986 F.3d 583, 586 (5th Cir. 2021) ("We note that the Supreme Court has cautioned against overruling its earlier precedents by implication."), *cert. denied*, 142 S. Ct. 207 (2021); *Nat'l Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 549-50 (5th Cir. 2020) ("Here, as in *State Oil Co.*, the factual underpinning of the controlling Supreme Court decision has changed, but that does not grant a court of appeals license to disregard or overrule that precedent."), *cert. denied*, 141 S. Ct. 1815 (2021); *Perez v. Stephens*, 745 F.3d 174, 180 (5th Cir. 2014) ("[W]e do not 'read tea leaves'; we follow the law as it is, respecting the Supreme Court's singular role in deciding the continuing viability of its own precedents"); *Randell*, 27 F.3d at 301 ("[W]e decline to announce for the Supreme Court that it has overruled one of its decisions").

37

Yet Wilson (and her *amici*) invite this Court to do precisely the <u>opposite</u>, by finding that the Supreme Court, via *dicta* in the concurring and dissenting opinions in *Spencer* and a footnote in *Muhammad,* implicitly overruled *Heck* as to its application to non-custodial plaintiffs. As set forth above, this Court must decline Wilson's invitation to overrule *Heck* in this manner and instead must leave it to the Supreme Court to revisit *Heck* if it so chooses. Indeed, this Court, sitting *en banc*, declined a similar invitation just over two years ago, and the Supreme Court affirmed this Court's ruling. *Cochran*, <u>20 F.4th 194</u>.

### C. Wilson's Attempts to Avoid Heck Are Meritless

Wilson makes several arguments in a futile effort to avoid the clear application of *Heck*'s favorable-termination requirement. None have merit. [6]

### 1. The favorable-termination requirement is not limited to parties who remain in custody

In a valiant attempt to avoid *Heck*'s clear application, Wilson seeks to limit its holding to the facts of the case, suggesting that the favorable termination rule is limited to "a § 1983 plaintiff who is in state custody," and "tied up with the plaintiff's custody status." (Appellant's *En Banc* Br. at pp. 7-9.) She is mistaken most directly because *Heck* itself made clear that its holding is not limited in that fashion. By

---

[6] In addition to the arguments addressed below, Wilson relies on circuit decisions that have eliminated the favorable termination requirement. The faulty reasonings of those circuits is addressed *supra*.

providing four separate means by which a prosecution can be terminated favorably, *Heck* necessarily applies beyond the facts in that case alone. Moreover, limiting *Heck*'s reach to the facts of the case would run directly against its rationale, which is not limited to custodial plaintiffs. As instructed in *Agostini*, legal standards developed by the Supreme Court are not confined by the facts of the case but instead should be applied consistent with their rationale.

To follow Justice Souter's reasoning in his concurring opinions would be to vault *dicta* over holding. By definition, a concurring opinion cannot be followed particularly where, as here, it varies from the holding of the case. Following Justice Souter's reasoning is even more problematic given that the majority explicitly rebuffed the legal standard he proffered as an alternative to the holding of the case.

Nor can Wilson's argument withstand scrutiny that concurring and dissenting opinions post-*Heck* altered the holding. *Agostini* addressed a strikingly similar scenario in explaining why its decision in *Kiryas Joel* did not alter the precedent set forth in *Aguilar*. As in the post-*Heck* cases, five justices joined concurring and dissenting opinion in *Kiryas Joel* that called for *Aguilar* to be overruled or reconsidered. Just as those concurring and dissenting opinions did not change the Establishment Clause precedent established in *Aguilar*, so too the concurring and dissenting opinions in the wake of *Heck* did not change the favorable termination requirement for all Section 1983 plaintiffs, including non-custodial plaintiffs,

established in *Heck*.. Commentary by various Justices about how they might change the standards in future cases does not change the fact that the Supreme Court alone has the prerogative to alter its precedent. Were the rule otherwise, circuit courts would be empowered to decide cases based on a prediction of how members of the Supreme Court might change the existing standards. Such discretion would become rapidly unmanageable and wreak havoc with the fundamentals underlying *stare decisis*. Predicting outcomes would be particularly problematic where, as here, *none* of the Justices who had joined Justice Souter's reasoning are currently members of the Supreme Court, including Justice Souter himself.

## 2. The favorable-termination requirement applies to any claims that impugn the validity of a criminal conviction or sentence

Undeterred, Wilson suggests that if *Heck* is not limited to custodial plaintiffs, then it is at least limited to the elements of a malicious prosecution. (Appellant's *En Banc* Br. at 22-26.) She then asserts that *Heck* does not apply because she is challenging the *procedure* by which she was convicted as distinct from a malicious prosecution claim. (Appellant's *En Banc* Br. at 18) ("*Heck's* habeas-collision holding is unimplicated here because Wilson's procedural due process claim never could and never can collide with or be supplanted by § 2254—given the defendants' concealment of the violation until long after Wilson's term of custody.") In so arguing, Wilson ignores that *Heck* turned to the common law claim for guidance only, and did not merely convert the elements of a common law malicious

prosecution claim into a Section 1983 claim. The key to the analysis was that the Section 1983 claim was a collateral attack on Heck's conviction by proving that it was unconstitutional. *Heck*, 512 U.S. at 486 ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.").

*Heck's* emphasis on favorable termination being a prerequisite *to the accrual* of a § 1983 claim reinforces its application beyond claims analogous to malicious prosecution. *See Heck*, 512 U.S. at 483 ("The issue with respect to monetary damages challenging conviction is not, it seems to us, exhaustion; but rather, the same as the issue was with respect to injunctive relief challenging conviction in *Preiser:* whether the claim is cognizable under § 1983 at all."); *id.* at 489 ("We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action."); *id.* ("Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen.")

The undeniable fact remains that Wilson's claim impugns the validity of her conviction, by whatever means she might categorize it. As *Edwards* made crystal—including the concurring justices—a Section 1983 procedural due process claim that

41

"would necessarily imply the invalidity" of a criminal conviction is subject to *Heck*'s favorable-termination requirement before the claim can accrue. Wilson's effort to distinguish her claim as merely procedural thus fails out of the starting gate.

### 3. Section 1983 is not intended to provide a remedy for every conceivable constitutional injury

A central theme of Wilson's *en banc* brief (and that of her *amici*) is that Section 1983 should be broadly construed to provide a remedy for <u>any</u> constitutional wrong for which the federal habeas statute does not provide a remedy. However, *Heck* itself rejected this argument. Rejecting Justice Souter's assertion that the favorable-termination requirement should not apply to non-custodial plaintiffs, the *Heck* majority explained as follows:

> [I]f, as Justice SOUTER appears to suggest, the goal of our interpretative enterprise under § 1983 were to provide a remedy for all conceivable invasions of federal rights … the entire landscape of our § 1983 jurisprudence would look very different. We would not, for example, have adopted the rule that judicial officers have absolute immunity from liability for damages under § 1983[.]

*Heck*, <u>512 U.S. at 490</u>, n.10 (citing *Pierson v. Ray*, <u>386 U.S. 547</u> (1967)).

Of course, judicial immunity is just one of many ways in which the Supreme Court has eliminated or substantially limited the availability of Section 1983 to remedy the violation of constitutional rights. Prosecutors also are entitled to absolute immunity from § 1983 claims arising out of their prosecutorial functions. *See*, *e.g.*, *Imbler v. Pachtman*, <u>424 U.S. 409, 427-31</u> (1976). States and their

departments and agencies (as well as officers in their official capacities) cannot be sued for money damages under Section 1983 because they are not "persons" and are entitled to Eleventh Amendment immunity. *See*, *e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-71 (1989). Municipalities, counties and other local governments are not subject to *respondeat superior* liability under Section 1983, but rather may only be held liable if a municipal policy or custom was the driving force behind the constitutional violation. *See*, *e.g.*, *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). Moreover, government officials performing discretionary functions are entitled to qualified immunity with respect to Section 1983 claims asserted against them in their individual capacities for unconstitutional actions that did not violate clearly established law. *See*, *e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).

Based on doctrines that have been a central feature of Supreme Court jurisprudence for decades, Wilson's contention that Section 1983 provides a remedy for every conceivable constitutional violation that is not encompassed by the federal habeas statute is meritless. That Section 1983 might not provide a remedy to Wilson under the unique circumstances of this case is hardly monumental in light of the compelling interests in finality, consistency and federalism articulated in *Heck*.[7]

---

[7] Moreover, as set forth below, Wilson has a state habeas remedy available to her, which, if successful, would allow a Section 1983 claim to accrue. Thus far at least, she has opted not to pursue that avenue.

### 4. *Talevski* has no application to Wilson's claim

Wilson relies on the Supreme Court's opinion in *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166 (2023) for the proposition that Section 1983 claims are available generally to redress wrongs. (Appellant's *En Banc* Br. at 18-19.) *Talevski* is neither a Section 1983 action nor does it involve a claim that impugns the validity of a conviction or sentence. Instead, its focus is whether a federal statute concerning nursing homes created a private right of action. It has no application to the case at bar. Moreover, the general proposition regarding the availability of a remedy for constitutional wrongs flies in the face of *Spencer*'s rejection of the notion that "a §1983 action for damages must always and everywhere be available." 523 U.S. at 17.

### 5. *Heck* does not allow for equitable exceptions, nor would they apply

Wilson's final effort to avoid *Heck*'s holding is to appeal to equitable arguments including that federal habeas corpus is "undisputably off the table" once she was released from custody and that the ground (*i.e.*, Petty's dual employment) was not disclosed to her at the time. (Appellant's *En Banc* Br. at 19.) Even at this late date, Wilson has not alleged that Petty had any role in her prosecution other than filling out form orders for the judge. But even if he theoretically had been involved, the crux of Wilson's claim is that her motion to suppress the evidence of cocaine should have been granted. On direct appeal, the court informed her that her counsel

had waived that objection by affirmatively approving its admission at trial. She could (and perhaps should) have pursued a collateral attack at that point based on ineffective assistance of counsel. Had she done so, her conviction might have been overturned 20 or more years ago, after which a Section 1983 claim might have then accrued. But she did not do so.

Nor has Wilson pursued a habeas corpus petition in Texas state court *which does not have the custodial restriction of the federal counterpart*. Wilson was sentenced to eight years of community supervision, for which state habeas corpus is governed by the following statute:

> At the time the application is filed, the applicant must be, **or have been**, on community service supervision, and the application must challenge the legal validity of:
>
> (1) The conviction for which community supervision was imposed; or
>
> (2) The conditions of community supervision.

Tex. Code Crim. Proc. Ann. art. 11.072, § 2(b) (West 2021) (emphasis added); *see also Ex parte Enriquez*, 227 S.W.3d 779, 783 (Tex. App.—El Paso 2005), ("we hold that Article 11.072 § 2(b) includes, not excludes, individuals who have completed their term of community supervision as among those individuals who may bring a writ of habeas corpus pursuant to" Art. 11.072). Wilson acknowledges that this remedy was available. (Appellant's *En Banc* Br. 20-21.) Contrary to her argument, requiring her to pursue an available remedy does not engraft an exhaustion

requirement onto Section 1983 (in contravention of *Heck*) but instead provides a procedure by which, if granted, a Section 1983 claim could then accrue (in compliance with *Heck*). Equally, Wilson could seek relief from the Governor which, if granted, could cause a Section 1983 claim to accrue. *See, e.g.*, *Savory, supra*. The fact that a federal venue might not be available to collaterally attack her conviction does not somehow trigger the accrual of a Section 1983 claim under any of the scenarios identified in *Heck*.

The accrual of a Section 1983 claim would be problematic for a separate reason, as the interest in finality is a crucial part of the favorable termination requirement. So viewed, if the claim did not accrue upon a favorable termination of Wilson's prosecution, then how exactly is the accrual date to be determined? Although an equitable argument might be fashioned for unique circumstances, "[c]reating an equitable exception … would fly in the teeth of *Heck*" as the First Circuit has stated. *Figueroa*, 147 F.3d at 81. Equally, allowing equitable exceptions to the favorable termination requirement, while enticing, would be a slippery slope to undermine the core principles underlying *Heck*'s accrual rules in the first place. This Court should not embark on that journey.

## III.    Alternative Grounds Require Dismissal of Wilson's Complaint

Even if Wilson's Section 1983 claim is not barred by *Heck*, the district court's dismissal should be affirmed on other grounds.

**A. Wilson has not stated a plausible procedural due process claim**

A claim for the denial of a right to a fair trial due to judicial or prosecutorial misconduct, even on procedural grounds, requires a showing of harm. *United States v. Ebron*, 683 F.3d 105, 140 (5th Cir. 2012); *United States v. Bermea*, 30 F.3d 1539, 1569 (5th Cir. 1994). Here, Wilson has not plausibly shown she was harmed by judicial or prosecutorial misconduct because she was convicted based on evidence of cocaine possession that was admitted into evidence without objection. *Wilson*, 2003 WL 1564237, at *1-5.  Indeed, the "harm" Wilson alleges is that Petty filled out form orders in her case and that he generally advised other prosecutors handling her case. (ROA 27, ¶¶ 119-20.) She does not allege that Petty had any role in the substantive aspect of her trial.

Furthermore, when addressing procedural due process claims arising out of "dual employment" scenarios, the plaintiff must show how an actual conflict of interest prejudiced her.  *United States v. Simpson*, 645 F.3d 300, 310 (5th Cir. 2011); *Moreland v. Scott*, 175 F.3d 347, 348-49 (5th Cir. 1999). For the same reasons stated above, Wilson has not plausibly pled any actual conflict of interest that caused her actual harm. The district court's dismissal should be affirmed on this ground.

**B. Petty Is Entitled To Immunity**

Judges and prosecutors enjoy absolute immunity from claims under Section 1983 arising from acts performed in the exercise of their judicial or prosecutorial

functions. *Stump v. Sparkman*, 435 U.S. 349, 359 (1978) (judges); *Imbler*, 424 U.S. at 427-31 (prosecutors). Judicial immunity extends as well to law clerks "when assisting the judge in carrying out the former's judicial functions." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991).

Here, Wilson alleges that Petty drafted ministerial forms, post-conviction orders, advised Judge Hyde regarding her criminal case, had *ex parte* communications with Judge Hyde regarding her case, and worked as a law clerk for Judge Hyde on her case. (ROA 26-27, 110-15). These alleged actions fall within the scope of judicial immunity, and his alleged acts as a prosecutor "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protection of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S 259, 273 (1993). Thus, Petty has absolute immunity for his conduct as a prosecutor or as a law clerk.

Alternatively, Petty would have qualified immunity, which "shields government officials from civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which as reasonable person would have known." *Rutland v. Pepper*, 404 F.3d 921, 923 (5th Cir. 2005) (punctuation omitted). As stated above, Wilson has not pled a plausible procedural due process claim against Petty in the absence of an actual conflict of interest. Nor

was the law clearly established that an assistant district attorney's decision to work

as a part-time law clerk violated a criminal defendant's right to a fair trial.

## C. Midland County cannot be liable for the actions of Petty, Schorre or Judge Hyde as State Officers

A county cannot be held liable under Section 1983 on a theory of respondeant

superior, but rather only if a *county* policy or custom was the moving force behind

the violation of a constitutional right.  *Monell,* 436 U.S. at 691, 694.  "Municipal

liability requires deliberate action attributable to the municipality that is the direct

cause of the alleged constitutional violation." *Zarnow v. City of Wichita Falls*, 614

F.3d 161, 167 (5th Cir. 2010) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378,

391-92 (1989)).  "That is, a plaintiff must show that the municipal action was taken

with the requisite degree of culpability and must demonstrate a direct casual link

between the municipal action and the deprivation of federal rights." *Bd. of Cnty.*

*Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Here, Midland County cannot be held liable for the alleged actions of Judge

Hyde because he was not acting as a County officer, but rather as a state officer as

an officer of the state judicial system.  *See Daves v. Dallas County, Texas*, 22 F.4th

522, 540-41 (5th Cir. 2022).  Likewise, Judge Hyde was acting as a State officer

when he issued orders denying motions filed by Wilson in her criminal case. *Id*. at

538-41.  As a law clerk for Judge Hyde, Petty was also a State, and not a County,

officer. *Id*. That Midland County paid a portion of Judge Hyde's salary and paid Petty does not transform them into County actors. *Id*. at 533-34.

Similarly, District Attorney Schorre was a state, and not a county officer, for acts in his prosecutorial capacity because he was enforcing state rather than county law. *See Brown v. Lyford*, 243 F.3d 185, 192 (5th Cir. 2001); *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997). As an assistant district attorney, Petty likewise was a State officer, not a County officer, for his alleged involvement in Wilson's criminal case. Wilson attempted to escape this result by arguing that Judge Hyde, as well as Schorre and Petty, were County officers when offering and accepting employment as a prosecutor and as a law clerk. (Dckt. 71, pp. 24-25). However, Wilson's claim is not that Petty's dual employment in itself deprived her of due process rights, but that Petty performed prosecutorial and judicial functions during her criminal case, and that Judge Hyde ruled against her, all of which are State functions.

Wilson also argued that the County adopted a two-decade "policy" of allowing Petty's dual employment as a prosecutor and law clerk, as purportedly reflected by County Attorney Malm's letter to Judge Hyde attached to the complaint. (ROA 45-46.) This contention is belied by the letter itself, wherein Malm merely opined that paying Petty additional money to assist the judges with state habeas petitions would not violate the state constitution's prohibition against paying extra compensation to a public employee after services have been rendered. (*Id*.) His letter does not even

remotely support that the County had a policy of allowing one to work as both a prosecutor and law clerk on the same criminal case.

## CONCLUSION

Adherence to Supreme Court precedent allows no exception to the favorable termination requirement for a Section 1983 claim that impugns the validity of a conviction to accrue. Because the invalidity of Wilson's conviction is at the center of her claim, and her prosecution did not end favorably, the district court's dismissal must be affirmed on that basis as well as on the additional grounds addressed herein.

*/s/Philip W. Savrin*
Philip W. Savrin
**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
Tel: (770) 818-0000
Fax: (833) 330-3669
Email: psavrin@fmglaw.com

R. Layne Rouse
Miles Nelson
**SHAFER, DAVIS, O'LEARY & STOKER, PC**
700 North Grant Street
201 Bank of America Building
Odessa, Texas 79760-1552
Tel: (432) 332-0893
Fax: (432) 333-5002
Email: lrouse@shaferfirm.com
Email: mnelson@shaferfirm.com

*Attorney for Appellees Midland County, Texas and Weldon (Ralph) Petty, Jr.*

51

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of April, 2024, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service on all counsel of record will be accomplished by the appellate CM/ECF system.

_s/Philip W. Savrin_
Philip W. Savrin

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of <u>FED. R. APP. P. 32(a)(7)(B)</u> because this brief contains 12,935 words, excluding the parts of the brief exempted by <u>FED. R. APP. P. 32(a)(7)(B)(iii)</u>.

This brief complies with the typeface requirements of <u>FED. R. APP. P. 32(a)(5)</u> and the type style requirements of <u>FED. R. APP. P. 32(a)(6)</u> because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 10 in Century font 14-point type face.

<u>*s/Philip W. Savrin*</u>
Philip W. Savrin