# In the United States Court of Appeals for the Fifth Circuit

ERMA WILSON,
PLAINTIFF-APPELLANT,

*v.*

MIDLAND COUNTY, TEXAS; WELDON (RALPH) PETTY, JR., *sued in his individual capacity*; ALBERT SCHORRE, JR., *sued in his individual capacity*,
DEFENDANTS-APPELLEES

On Appeal from the United States District Court
for the Western District of Texas, No. 7:22-cv-85

## *AMICUS CURIAE* BRIEF OF SEPARATION OF POWERS CLINIC IN SUPPORT OF DEFENDANTS-APPELLEES

R. TRENT MCCOTTER*
    *Counsel of Record*
Separation of Powers Clinic
Gray Center for the Study of the
  Administrative State
Antonin Scalia Law School
George Mason University
3301 Fairfax Dr., Suite 430
Arlington, VA 22201
(202) 706-5488
rmccotte@gmu.edu
Counsel for *Amicus Curiae*

## SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

### No. 22-50998 *Wilson v. Midland County*

Pursuant to Fifth Circuit Rule 29.2, undersigned counsel of record provides the following supplemental list of persons and entities that have an interest in the outcome of this case.

R. Trent McCotter

Separation of Powers Clinic, Antonin Scalia Law School

<u>/s/ R. Trent McCotter</u>

R. Trent McCotter

# TABLE OF CONTENTS

SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS ....... C-1

TABLE OF AUTHORITIES .......................................................................ii

INTEREST AND IDENTITY OF THE *AMICUS CURIAE* ...................... 1

SUMMARY OF THE ARGUMENT ............................................................ 1

ARGUMENT ............................................................................................ 3

I.   The Supreme Court Has Made Clear That Favorable Termination Is Required "Whenever" a Section 1983 Suit Calls Into Question an Underlying Conviction .................................................................. 3

    A.   *Heck*'s Rule Did Not Turn on Custodial Status .......................... 3

    B.   *Heck*'s Favorable-Termination Requirement Is Not Limited to Claims That Track Malicious Prosecution ............................... 8

II.  Federalism Animates the Favorable-Termination Rule ............... 12

III. Non-Custodial Plaintiffs Can Still Obtain Favorable Termination ................................................................................... 14

    A.   Numerous Mechanisms Exist in This Circuit for Noncustodial Plaintiffs to Obtain Favorable Termination ........................... 15

    B.   Plaintiff's "Exhaustion" Argument Is Squarely Foreclosed ... 18

CONCLUSION ....................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ex parte Dennis*,
665 S.W.3d 569 (Tex. Ct. Crim App. 2022)........................................... 15

*District Attorney's Office for Third Jud. Dist. v. Osborne*,
557 U.S. 52 (2009) ...................................................................... 13

*Heck v. Humphrey*,
512 U.S. 477 (1994) .............................2, 4–12, 14, 15, 17, 18

*McDonough v. Smith*,
139 S. Ct. 2149 (2019) .........................................1, 2, 7, 8, 12

*Preiser v. Rodriguez*,
411 U.S. 475 (1973) ...................................................................... 3

*Savory v. Cannon*,
947 F.3d 409 (7th Cir. 2020)...................................................... 14

*Shinn v. Ramirez*,
596 U.S. 366 (2022) ...................................................................... 13

*Skinner v. Switzer*,
562 U.S. 521 (2011) ...................................................................... 13

*United States v. Morgan*,
346 U.S. 502 (1954) ...................................................................... 15

*Vega v. Tekoh*,
597 U.S. 134 (2022) ...................................................................... 12

**Statutes and State Constitutions**

42 U.S.C. § 1983....................................1, 3–12, 14, 16, 18, 19

La. Const. art. IV, § 5 ................................................................ 17

Miss. Const. art. 5, § 124 ......................................................... 18

Miss. Code Ann. § 99-19-71 ................................................................ 17

Miss. Code Ann. § 99-39-5 .................................................................. 17

Tex. Const. art. IV, § 11 .................................................................. 17

Tex. Code Crim. Proc. art. 11.07 ...................................................... 15

**INTEREST AND IDENTITY OF THE *AMICUS CURIAE*[1]**

The Separation of Powers Clinic at the Gray Center for the Study of the Administrative State, located within the Antonin Scalia Law School at George Mason University, was established for the purpose of studying, researching, and raising awareness of the proper application of the U.S. Constitution's separation of powers constraints on the exercise of federal government power, including via federalism principles. The Clinic provides students an opportunity to discuss, research, and write about separation of powers issues in ongoing litigation.

## SUMMARY OF THE ARGUMENT

Plaintiff admits that her Section 1983 claim necessarily implies her underlying state-court conviction is invalid. The Supreme Court held in 2019 that "*whenever* 'a judgment in favor of the plaintiff would necessarily imply' that his prior conviction or sentence was invalid," he *must* demonstrate favorable termination of that conviction. *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (emphasis added). That holding is

---

[1] No counsel for any party has authored this brief in whole or in part, and no entity or person, aside from *amicus curiae* and its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

sufficient to resolve this case: Plaintiff must demonstrate favorable termination. Besides being inconsistent with *McDonough*, Plaintiff's attempts to evade the favorable-termination requirement also run headlong into the logic and text of *Heck* itself. For example, she unintentionally torpedoes her own case by insisting she is *not* bringing the only type of civil claim that *Heck* said can be used to attack a still-standing conviction, which is otherwise prohibited. *See* Part I, *infra*.

Further, the favorable-termination requirement reflects important federalism concerns with federal courts allowing civil claims to interfere with still-standing state convictions. And that concern exists regardless of whether the plaintiff is still in custody, or whether her claim mirrors one for malicious prosecution. *See* Part II, *infra*.

Finally, each State in this Circuit provides mechanisms for noncustodial plaintiffs to obtain favorable relief. Texas, in particular, has a broad habeas statute allowing non-custodial individuals to challenge their long-extant state convictions. *See* Part III, *infra*.

Because favorable termination is required, and because Plaintiff concedes she cannot demonstrate it, this Court should affirm.

**ARGUMENT**

**I.    The Supreme Court Has Made Clear That Favorable Termination Is Required "Whenever" a Section 1983 Suit Calls Into Question an Underlying Conviction.**

Plaintiff's *en banc* brief argues that *Heck*'s favorable-termination requirement applies to only two sets of cases: (1) where the plaintiff is in custody, and (2) where the claim sounds in malicious prosecution. Plaintiff claims her challenge does not fall within either category, and therefore she need not demonstrate favorable termination.

On both points, Plaintiff is incorrect. The Supreme Court has held that the favorable-termination requirement applies *whenever* a Section 1983 suit calls into question the underlying conviction, regardless of custodial status or the precise common-law tort most analogous to the plaintiff's challenge. And by insisting she is not bringing the type of claim that requires showing favorable termination, Plaintiff unintentionally argues herself right out of court, as such a claim is the only mechanism available for using Section 1983 to challenge a state-court conviction.

**A.    *Heck*'s Rule Did Not Turn on Custodial Status.**

The Supreme Court held in *Preiser v. Rodriguez*, 411 U.S. 475 (1973), that a Section 1983 claim is not cognizable where the plaintiff

uses it to "seek[] immediate or speedier release" from custody. *Heck v. Humphrey*, <u>512 U.S. 477, 481</u> (1994). But the plaintiff in *Heck* did not seek such relief—he sought only damages—and thus there was no concern that his claim would directly conflict with the federal habeas statutes. *See id.* The plaintiff in *Heck* was in custody, but no part of his claim actually turned on that fact. Accordingly, *Heck* addressed a broader question: "whether money damages premised on an unlawful conviction could be pursued under Section 1983." *Id.* at 480 n.2. Note the absence of any language about custodial status.

When the Court did reference custodial status, it did so in a way that demonstrated its analysis was *not* limited to plaintiffs in custody. For example, the Court held that it needed to determine whether a Section 1983 claim is "cognizable … at all" when it "call[s] into question the lawfulness of conviction or confinement." *Id.* at 483. The Court repeatedly used that disjunctive—conviction *or* confinement—confirming it was addressing claims brought both by those in "confinement" (who could seek federal habeas relief) and also by those who are *not* confined (and thus could not seek federal habeas relief)—like the Plaintiff here. *Id.* at 483, 486 (several times); *see also id.* at 490 n.10.

The Court's holding likewise made no distinction based on custodial status. The Court concluded that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," and thus "§ 1983 damages actions … necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486. That "unlawfulness" requirement meant the plaintiff must demonstrate "favorable termination" of his underlying conviction or confinement. Again, note the absence of any language requiring the plaintiff to be in custody.

To avoid all doubt, the Court even labeled that conclusion as a holding: "We hold that, in order to recover damages for allegedly unconstitutional *conviction or imprisonment*, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, *a § 1983 plaintiff must prove* that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87 (emphases added). The same test applied regardless of whether the plaintiff was in custody.

That conclusion is strongly buttressed by the Court's acknowledgement of numerous mechanisms *beyond* federal habeas relief by which a plaintiff could satisfy this favorable-termination requirement, such as executive clemency, which does not require the recipient to be in custody. *Id.*; *see* Part III, *infra* (providing summaries of such mechanisms for each State in this Circuit).

The text and logic of *Heck* thus establish that custodial status is irrelevant to the favorable-termination requirement. What matters is whether the plaintiff seeks "a judgment" that "would necessarily imply the invalidity of [her] conviction or sentence." *Id.* at 487.[2] Plaintiff candidly acknowledges that her claim does "impl[y] the unconstitutionality of her conviction and sentence." Plaintiff.EB.Br.16.[3] Under *Heck*, she therefore must show favorable termination.

---

[2] The panel opinion here suggested that whether favorable termination is required for non-custodial plaintiffs turns on whether *Heck*'s "footnote 10" was dicta. Slip.Op.9. But as demonstrated above, even if footnote 10 didn't exist, the rest of the opinion in *Heck* is nonetheless incompatible with the view that certain Section 1983 suits implying the invalidity of a conviction can nonetheless avoid showing favorable termination.

[3] "Plaintiff.EB.Br." refers to Plaintiff's *en banc* brief filed March 15, 2024.

Plaintiff argues that subsequent Supreme Court caselaw suggested in passing that this issue was not settled in *Heck*. But even if that were true, the Supreme Court put to rest any such doubts in 2019 when a clear majority of Justices joined an opinion holding that the "favorable-termination requirement, the Court explained [in *Heck*], applies *whenever* 'a judgment in favor of the plaintiff would necessarily imply' that his prior conviction or sentence was invalid." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (emphasis added) (quoting *Heck*, 512 U.S. at 487). A clearer statement of the requirement is hard to imagine—and again, there is no limitation based on custodial status. Just the opposite, in fact: the Court said this rule applied "whenever" a plaintiff used Section 1983 to bring a claim necessarily implying her conviction is invalid.[4]

Plaintiff is free to ask the Supreme Court to change its mind, but unless and until it does, favorable termination is required "whenever" someone brings the type of claim that Plaintiff admits she brings here. *Id.*

---

[4] The panel opinion in this case did not cite *McDonough*.

**B.** *Heck*'s **Favorable-Termination Requirement Is Not Limited to Claims That Track Malicious Prosecution.**

Perhaps recognizing the favorable-termination inquiry cannot rise or fall solely on custodial status, Plaintiff next argues that *Heck* also requires favorable termination for claims that sound in malicious prosecution, which she says her claim does not.

That claim fails at the outset because of the Supreme Court's 2019 holding in *McDonough*, discussed above. Plaintiff argues that *McDonough*'s holding applies only to malicious-prosecution claims, *see* Plaintiff.EB.Br.27 n.8, but *McDonough* made no such distinction, and in fact Plaintiff's view would require this Court to ignore the Supreme Court's use of "whenever" when describing what cases must demonstrate favorable termination. *McDonough*, 139 S. Ct. at 2157.

Plaintiff's argument is also incompatible with *Heck* itself. To be sure, *Heck* looked to the elements of malicious prosecution, but its holding extended beyond just those Section 1983 claims that sound in malicious prosecution. Rather, as explained above, the favorable-termination requirement is triggered in any case where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," regardless of how plaintiff describes the alleged

underlying constitutional violation. *Heck*, <u>512 U.S. at 487</u>. And on that point, the Court was clear that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," and thus "§ 1983 damages actions … necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486. *Heck* didn't say "malicious prosecution actions" must prove favorable termination. Rather, it said "damages actions." Plaintiff undoubtedly brings a damages action here.

Plaintiff also runs aground when arguing that she need not demonstrate favorable termination because her claim is for a "procedural due process tort" that was not recognized at common law. Plaintiff.EB.Br.23. *First*, that sounds like the common-law claim of "abuse of process," which *Heck* expressly addressed, holding that "one could no more seek compensatory damages for an outstanding criminal conviction in an action for abuse of process than in one for malicious prosecution." *Heck*, <u>512 U.S. at 486</u> n.5. In other words, at best, the favorable-termination requirement applies just as much to Section 1983 claims that sound in abuse of process as in malicious prosecution.

*Second*, even worse for Plaintiff, if there really is no common-law analogue to her claim, that means she automatically loses. *Heck* held that analogizing to a common-law tort with favorable termination is the *only* way a plaintiff can bring a Section 1983 claim impugning her underlying conviction, because such a claim would otherwise be barred.

Justice Souter's separate opinion argued that the majority's reference to malicious prosecution was off base because, under the common law, a malicious prosecution claim was unavailable if the person had ultimately been convicted. 512 U.S. at 496 (Souter, J., concurring in judgment). In response, the *Heck* majority held that this "would simply demonstrate that *no* common-law action, *not even* malicious prosecution, would permit a criminal proceeding to be impugned in a tort action, *even after* the conviction had been reversed. That would, if anything, strengthen our belief that § 1983, which borrowed general tort principles, was not meant to permit such collateral attack." *Id.* at 484 n.4 (emphases in original).

This means the default rule is that a "criminal proceeding" cannot "be impugned in a tort action." *Id.* The only way to avoid that is to bring a claim tracking a common-law analogue that allowed an attack on a

prior conviction—but the only ones the Court recognized are malicious prosecution and abuse of process, both of which require favorable termination.

Viewed correctly, then, the availability of a malicious prosecution analogue is actually a significant *benefit* for plaintiffs challenging their convictions. Without it, they could not bring their tort claims at all.

Thus, by insisting she isn't bringing a claim analogous to any common-law variant, Plaintiff unintentionally argues herself right out of court by closing the door on the only means by which "a criminal proceeding [can] be impugned in a tort action." *Id.* That confirms her claim cannot succeed.

* * *

*Heck* and subsequent Supreme Court caselaw make clear that favorable termination is required for *any* Section 1983 suit that would imply the invalidity of a conviction or sentence, regardless of the plaintiff's custodial status and regardless of whether her claim sounds in malicious prosecution. Because Plaintiff admits her claim would imply the invalidity of her conviction, she must show favorable termination. She has not done so, and accordingly this Court should affirm.

## II. Federalism Animates the Favorable-Termination Rule.

In addition to its common-law roots, the favorable-termination requirement reflects federal courts' concern about interfering with a still-standing state-court conviction—and that concern exists regardless of whether the plaintiff is in custody and regardless of whether she frames her claim as one for malicious prosecution. This confirms that favorable termination is required in any Section 1983 case where the plaintiff challenges the validity of her underlying conviction.

Section 1983 claims are limited to actions taken by state and local officials, *see* 42 U.S.C. § 1983, and thus any Section 1983 claim implying the invalidity of a conviction will necessarily implicate state interests in "finality and consistency" in their own convictions, *Heck*, 512 U.S. at 485. Without the favorable-termination requirement, there would be "'unnecessary friction' between the federal and state court systems by requiring the federal court entertaining the Section 1983 claim to pass judgment on legal and factual issues already settled in state court." *Vega v. Tekoh*, 597 U.S. 134, 151–52 (2022); *see McDonough*, 139 S. Ct. at 2158 (noting the importance of the "core principles of federalism, comity, consistency, and judicial economy" in the context of Section 1983 claims).

"[F]ederal intervention imposes significant costs on state criminal justice systems" by "'disturb[ing] the State's significant interest in repose for concluded litigation,' and undermin[ing] the States' investment in their criminal trials." *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022). The "'trial of a criminal case in state court [is] a decisive and portentous event.'" *Id.* Accordingly, "[a]n attack in federal court on any 'state judicial action' concerning a state conviction must proceed with 'proper respect for state functions,' because the federal courts are being asked to 'try the regularity of proceedings had in courts of coordinate jurisdiction.'" *Skinner v. Switzer*, 562 U.S. 521, 541 (2011) (Thomas, J., dissenting) (alteration omitted); *see District Attorney's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 75 (2009) (Alito, J., concurring) ("We have long recognized the principles of federalism and comity at stake when state prisoners attempt to use the federal courts to attack their final convictions.").

The favorable-termination requirement ensures that federal courts tread carefully in this area, allowing federal civil claims to proceed only when the conviction has already been undermined by a subsequent favorable termination made either under the restrictive federal habeas

regime or by the state itself pursuant to its own laws. *See* Part III, *infra*. And that concern exists regardless of whether the plaintiff is in custody, and regardless of whether her claim is framed as one for malicious prosecution.[5]

## III. Non-Custodial Plaintiffs Can Still Obtain Favorable Termination.

The panel opinion in this case said that Section 1983 "remains out of reach" for non-custodial plaintiffs, who are unable to seek federal habeas relief to obtain favorable termination. Slip Op. 7 n.8; *id.* at 4. But *Heck* itself recognized that federal habeas relief is *only one* of the ways by which a plaintiff may obtain favorable termination.

For example, *Heck* held that a conviction could be "expunged by executive order"—e.g., a pardon. *Heck*, 512 U.S. at 486–87. The conviction also could be "declared invalid by a state tribunal authorized

---

[5] Adopting Plaintiff's view would also have serious unintended pragmatic consequences. For example, if favorable termination is not an element, then the claim arises earlier in time—presumably when the trial ends (at the latest). That would result in statutes of limitation barring claims even when challengers later obtain favorable termination. That unpalatable result caused the *en banc* Seventh Circuit to reverse its own precedent and hold that favorable termination is indeed required even for non-custodial plaintiffs. *See Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) (*en banc*).

to make such determination," *id.*, a power that many state courts possess through statutory grants of authority or pursuant to their inherent authority, such as granting a writ of coram nobis, which does not require the petitioner to be in custody.[6]

### A. Numerous Mechanisms Exist in This Circuit for Noncustodial Plaintiffs to Obtain Favorable Termination.

Each State in this Circuit has mechanisms available for non-custodial plaintiffs to obtain the requisite favorable termination.

*Texas*

Texas's statutory habeas provision is broad. As Plaintiff admits, it "extends to noncustodial individuals," Plaintiff.EB.Br.20, so long as the applicant suffers from "any collateral consequences" because of the conviction, Tex. Code Crim. Proc. art. 11.07(3)(c). That includes "adverse consequences to the applicant's present and future employment opportunities." *Ex parte Dennis*, 665 S.W.3d 569, 573 (Tex. Ct. Crim App. 2022). Plaintiff brought this case because she allegedly cannot pursue a

---

[6] *See United States v. Morgan*, 346 U.S. 502, 507 (1954) ("The writ of coram nobis was available at common law to correct errors of fact. It was allowed without limitation of time for facts that affect the 'validity and regularity' of the judgment …. Coram nobis has had a continuous although limited use also in our states.").

career in nursing because of her felony conviction, and thus she is eligible to pursue relief under Texas's statutory habeas provision, yet she apparently has chosen not to pursue this avenue.

That failure is especially confounding given her recognition that the Texas Court of Criminal Appeals has vacated a death-row inmate's conviction because of the very same underlying prosecutor/law-clerk arrangement she challenges in this case. Plaintiff.Opening.Br.15 (citing *Ex parte Young*, 2021 WL 4302528 (Tex. Crim. App. Sept. 22, 2021)). Given such on-point precedent from Texas's highest court for criminal matters, it is unclear why Plaintiff hasn't sought the same relief from a Texas state trial court. If she obtained it, she would satisfy the favorable-termination requirement.[7]

The Texas Governor, acting on a recommendation from the Board of Pardons and Paroles, also has the power to pardon offenses, *see* Tex.

---

[7] Plaintiff is correct that "the fact that Texas happens to extend state habeas to noncustodial individuals … cannot dictate whether those individuals can invoke § 1983." Plaintiff.EB.Br.21. But she draws the wrong conclusion. Favorable termination is an element and thus is *always* required for her type of claim, meaning it does not vary from state to state. To be sure, her *practical ability* to satisfy that element may change based on the options available under state law, but the elements themselves do not change.

Const. art. IV, § 11, which could potentially provide Plaintiff with "expunge[ment] by executive order," *Heck*, 512 U.S. at 487.

### *Louisiana*

Louisiana similarly allows its Governor, acting with a recommendation from the Board of Pardons, to "pardon those convicted of offenses against the state." La. Const. art. IV, § 5(E)(1). The State Constitution even *automatically* pardons, upon completion of the sentence, *all* "first offender[s] convicted of a non-violent crime, or [any one of a list of specified violent crimes]" who were "never previously convicted of a felony." *Id.*

### *Mississippi*

Mississippi's statutory habeas provision allows "[a]ny person sentenced by a court of record of the State of Mississippi" to "file a motion to vacate, set aside or correct the judgment or sentence" for a lengthy list of reasons, including a claim that the "conviction or the sentence was imposed in violation of the Constitution of the United States." Miss. Code Ann. § 99-39-5(1). Mississippi also allows for expungement of certain first-time felonies. Miss. Code Ann. § 99-19-71(2). And the Mississippi

Governor has the power "to grant reprieves and pardons." Miss. Const. art. 5, § 124.

## B. Plaintiff's "Exhaustion" Argument Is Squarely Foreclosed.

Plaintiff argues that requiring her to obtain favorable termination through any of these various state-law mechanisms is tantamount to imposing an "exhaustion requirement" before she can bring her Section 1983 suit. Plaintiff.EB.Br.20. That argument is foreclosed by *Heck*, which held that the favorable-termination requirement "do[es] not engraft an exhaustion requirement upon Section 1983, but rather den[ies] the existence of a cause of action" in the first place. *Heck*, 512 U.S. at 489.

As *Heck* explained, Plaintiff's argument also just misunderstands what exhaustion means. Even after pursuing every possible means of favorable termination (i.e., after exhausting those avenues), a plaintiff *still* "has no cause of action under Section 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.*

In other words, the point is not that a plaintiff must *try* to obtain favorable termination, but rather that she must *actually obtain* it.

## CONCLUSION

Plaintiff concedes that her claim implies the invalidity of her conviction. She therefore must demonstrate favorable termination. Because she has not done so, her Section 1983 claim necessarily fails. The Court should affirm.

April 19, 2024

Respectfully submitted,

/s/ R. Trent McCotter
R. TRENT MCCOTTER*
   *Counsel of Record
Separation of Powers Clinic
Gray Center for the Study of
   the Administrative State
Antonin Scalia Law School
George Mason University
3301 Fairfax Dr.
Arlington, VA 22201
(202) 706-5488
rmccotte@gmu.edu
Counsel for *Amicus Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/EFC filing system and that service will be accomplished using the appellate CM/ECF system.

/s/ R. Trent McCotter

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this brief was prepared in 14-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word. Fed. R. App. P. 29(a), 32(g)(1). This brief complies with the type-volume limitation of Rule 29 because it contains 3518 words, excluding the parts exempted under Rule 32(f).

/s/ R. Trent McCotter