# In the United States Court of Appeals for the Fifth Circuit

ERMA WILSON,
*Plaintiff-Appellant*,

*v.*

MIDLAND COUNTY, TEXAS; WELDON (RALPH) PETTY, JR., SUED IN HIS INDIVIDUAL CAPACITY; ALBERT SCHORRE, JR., SUED IN HIS INDIVIDUAL CAPACITY,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Texas, Midland Division

## BRIEF FOR THE STATE OF TEXAS AS AMICUS CURIAE IN SUPPORT OF DEFENDANT-APPELLEE MIDLAND COUNTY

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

AARON L. NIELSON
Solicitor General

LANORA C. PETTIT
Principal Deputy Solicitor General

JOSHUA C. FIVESON
Assistant Solicitor General
Joshua.Fiveson@oag.texas.gov

Counsel for the State of Texas

# Certificate of Interested Persons

No. 22-50998

Erma Wilson,

*Plaintiff-Appellant,*

*v.*

Midland County, Texas; Weldon (Ralph) Petty, Jr., sued in his individual capacity; Albert Schorre, Jr., sued in his individual capacity,

*Defendants-Appellees.*

Texas, as a governmental amicus curiae, need not furnish a certificate of interested persons under Fifth Circuit Rule 28.2.1.

/s/ Joshua C. Fiveson

Joshua C. Fiveson

*Counsel of Record for*
*the State of Texas*

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................... ii

Table of Authorities .................................................................................. iv

Introduction and Interests of Amicus Curiae ........................................... 1

Summary of the Argument .......................................................................... 2

Argument ..................................................................................................... 4

    I.   This Court Should Affirm the District Court's Decision. ......................... 4

        A.  Supreme Court precedent requires affirmance. .................................. 4

        B.  History confirms that precedent has charted the correct course. .......... 7

        C.  Applying precedent would not deprive Wilson of a remedy ............... 11

        D.  Adopting Wilson's rule would invite gamesmanship. ........................ 12

    II.  Wilson's Counterarguments Are Mistaken. ............................................ 13

        A.  Wilson misunderstands *Heck* ........................................................... 13

        B.  Wilson misunderstands exhaustion. .................................................. 17

        C.  Wilson overstates irrelevant, out-of-circuit precedent. ...................... 18

        D.  Wilson is not entitled to ignore the implications of her position. ....... 21

Conclusion ................................................................................................. 22

Certificate of Service ................................................................................. 23

Certificate of Compliance ......................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Agostini v. Felton*,
521 U.S. 203 (1997) ....................................................... 5

*Alfaro v. Comm'r of Internal Revenue*,
349 F.3d 225 (5th Cir. 2003) ....................................... 21

*Allen v. McCurry*,
449 U.S. 90 (1980) ............................................... 11, 18

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ..................................................... 19

*Basébé v. Matthews*,
(1867) 16 L. T. Rep. 417, 2 L. Rep. C.P. 684 .................... 9

*Bryner v. Utah*,
429 F.App'x 739 (10th Cir. 2011) ................................. 20

*Butler v. Georgia*,
No. 22-10291, 2022 WL 17484910 (11th Cir. Dec. 7, 2022) (per curiam) ........ 19

*Carey v. Piphus*,
435 U.S. 247 (1978) ................................................ 7, 15

*Cochran v. SEC*,
20 F.4th 194 (5th Cir. 2021) (en banc) ............................ 19

*Collins v. Dall. Leadership Found.*,
77 F.4th 327 (5th Cir. 2023) ......................................... 20

*Davis v. Brady*,
218 Ky. 384 (1927) ........................................................ 9

*Deemer v. Beard*,
557 F.App'x 162 (3d Cir. 2014) ................................... 20

*DeVillier v. Texas*,
144 S.Ct. 938 (2024) ........................................... 3, 11, 18

*Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*,
557 U.S. 52 (2009) ..................................................... 13

*Edwards v. Balisok*,
520 U.S. 641 (1997) ............................................. 5-6, 15

*Elcock v. Whitecotton*,
434 F.App'x 541 (7th Cir. 2011) ................................... 21

*Ex parte Booth*,
No. CR42435-B (385th Dist. Ct., Midland Cnty. Mar. 11, 2024) ...................... 12

*Ex parte Lewis*,
  No. CR-30,418-A (238th Dist. Ct., Midland Cnty. Dec. 4, 2022) .................... 12

*Figueroa v. Rivera*,
  147 F.3d 77 (1st Cir. 1998) ........................................................ 20

*Garrett v. Lumpkin*,
  96 F.4th 896 (5th Cir. 2024) ........................................................ 5

*Gartrell v. Gaylor*,
  981 F.2d 254 (5th Cir. 1993) (per curiam) ...................................... 16

*Gilles v. Davis*,
  427 F.3d 197 (3d Cir. 2005) ........................................................ 20

*Glidewell v. Murray-Lacy & Co.*,
  124 Va. 563 (1919) .................................................................... 10

*Grainger v. Hill*,
  (1838) 132 Eng. Rep. 769, 4 Bing. (N.C.) 212 ................................ 10

*Gregoire v. Biddle*,
  177 F.2d 579 (2d Cir. 1949) ........................................................ 9

*Guerrero v. Gates*,
  442 F.3d 697 (9th Cir. 2006) ...................................................... 19

*Harden v. Pataki*,
  320 F.3d 1289 (11th Cir. 2003) .................................................. 19

*Ex parte Harrington*,
  310 S.W.3d 452 (Tex. Crim. App. 2010) ...................................... 11

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
  599 U.S. 166 (2023) .................................................................. 17

*Hebrard v. Nofziger*,
  90 F.4th 1000 (9th Cir. 2024) .................................................... 20

*Heck v. Humphrey*,
  512 U.S. 477 (1994) ............................................................*passim*

*Holland v. County of Macomb*,
  No. 16-2103, 2017 WL 3391653 (6th Cir. Mar. 17, 2017) ................ 21

*Huang v. Johnson*,
  251 F.3d 65 (2d Cir. 2001) ........................................................ 19

*Hudson v. Hughes*,
  98 F.3d 868 (5th Cir. 1996) ...................................................... 17

*Jones v. Gwynn*,
  (1713) 88 Eng. Rep. 699, 10 Mod. 214 ........................................ 8

*King v. Skinner*,
  (1772) 98 Eng. Rep. 529, Loff. 54 .............................................. 8

*King-White v. Humble Indep. Sch. Dist.*,
   636 F.App'x 622 (5th Cir. 2016) (per curiam)..................................16

*Lambert v. United States*,
   44 F.3d 296 (5th Cir. 1995) .......................................................17

*Laskar v. Hurd*,
   972 F.3d 1278 (11th Cir. 2020) ..................................................10

*McDonough v. Smith*,
   588 U.S. 109 (2019) ................................................6-7, 13, 21

*McGann v. Allen*,
   105 Conn. 177 (1926) ..............................................................10

*McNeal v. LeBlanc*,
   93 F.4th 840 (5th Cir. 2024) ...............................................12, 22

*McShane v. Moldovan*,
   172 F.2d 1016 (6th Cir. 1949) ..................................................18

*Mellor v. Baddeley*,
   (1834) 149 Eng. Rep. 932, 2 Cr. & M. 675 ..................................9

*Mondragon v. Thompson*,
   519 F.3d 1078 (10th Cir. 2008) ................................................21

*Muhammad v. Close*,
   540 U.S. 749 (2004).................................................................5

*Nance v. Ward*,
   597 U.S. 159 (2022)............................................................14-15

*Newmy v. Johnson*,
   758 F.3d 1008 (8th Cir. 2014) ..................................................20

*Nissho-Iwai Co., Ltd v. Occidental Crude Sales, Inc.*,
   729 F.2d 1530 (5th Cir. 1984) ..................................................16

*Nonnette v. Small*,
   316 F.3d 872 (9th Cir. 2002) ....................................................19

*Owens v. Baltimore City State's Att'ys Off.*,
   767 F.3d 379 (4th Cir. 2014) ....................................................21

*Owens v. Okure*,
   488 U.S. 235 (1989) ...........................................................18, 22

*Page v. Cushing*,
   38 Me. 523 (1854) ..................................................................10

*Portley-El v. Brill*,
   288 F.3d 1063 (8th Cir. 2002) ..................................................21

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
   501 F.3d 592 (6th Cir. 2007) ....................................................19

*Preiser v. Rodriguez,*
    411 U.S. 475 (1973) .................................................................. 13-15
*Randell v. Johnson,*
    227 F.3d 300 (5th Cir. 2000) (per curiam) ................................. 1, 3, 22
*Savile v. Roberts,*
    (1698) 91 Eng. Rep. 1147, 1 Ld. Raym. 376 .............................. 8
*Savory v. Cannon,*
    947 F.3d 409 (7th Cir. 2020) (en banc) ................................... 4-5, 20
*Schreane v. Marr,*
    722 F.App'x 160 (3d Cir. 2018) (per curiam) ........................... 21
*Smith v. Parman,*
    101 Kan. 115 (1917) ................................................................. 9
*Spencer v. Kemna,*
    523 U.S. 1 (1998) ..................................................................... 17
*Thompson v. Clark,*
    596 U.S. 36 (2022) ................................................................... 10
*Ex parte Villanueva,*
    252 S.W.3d 391 (Tex. Crim. App. 2008) ................................. 2, 11
*Wages & White Lion Invs., L.L.C. v. FDA,*
    90 F.4th 357 (5th Cir. 2024) (en banc) .................................... 18
*Wallace v. Kato,*
    549 U.S. 384 (2007) ................................................................. 22
*Watts v. Gerking,*
    111 Or. 641 (1924) ................................................................... 9
*Wilkinson v. Dotson,*
    544 U.S. 74 (2005) ................................................................... 14-15
*Wyatt v. Cole,*
    504 U.S. 158 (1992) ................................................................. 8

**Statutes:**

28 U.S.C.:
    §2244 ....................................................................................... 12
    §2254 ....................................................................................... 16, 21
42 U.S.C. §1983 ............................................................................ *passim*
Tex. Code Crim. Proc.:
    art. 11.07 ................................................................................. 11
    art. 11.072 ............................................................................... 11-12

**Other Authorities:**

Esther M. Schonfeld, *Malicious Prosecution as a Constitutional Tort: Continued Confusion and Uncertainty*, 15 Touro L. Rev. 1681 (1999) ..................8

Francis R. Y. Radcliffe & J. C. Miles, *Cases Illustrating the Principles of the Law of Torts* (1904) ....................................................................9

James Wallace Bryan, *The Development of the English Law of Conspiracy* (1909) ...........................................................................................8

Joel Prentiss Bishop, *Commentaries on the Non-Contract Law* (1889)......................10

Martin L. Newell, *Treatise on the Law of Malicious Prosecution, False Imprisonment, and the Abuse of Legal Process* (1892) ..................................10

Note, *Groundless Litigation and the Malicious Prosecution Debate: A Historical Analysis*, 88 Yale L.J. 1218 (1979) ........................................8

Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv. L. Rev. 441 (1963)...............................................18

William L. Prosser, *Handbook on the Law of Torts* (1941) ........................................8

# Introduction and Interests of Amicus Curiae

Texas has a fundamental interest in the finality of criminal judgments. For three decades, *Heck v. Humphrey*, 512 U.S. 477 (1994), has protected that fundamental interest by recognizing that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486. Under *Heck*, if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," there is no cause of action under §1983. *Id.* at 487. *Heck* thus imposes a "favorable-termination requirement." *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) (per curiam). In other words, until a §1983 plaintiff shows that criminal proceedings terminated in his favor, that plaintiff must pursue relief (if at all) in state court or through a federal habeas petition. *Heck*, 512 U.S. at 489.

Texas wholeheartedly agrees that Ralph Petty should not have served as both prosecutor and court employee in the same criminal cases. Such egregious misconduct has rightly led to Petty surrendering his law license, ROA.66, and the Texas Court of Criminal Appeals has correctly concluded that affected defendants are entitled to relief from their convictions because of Petty's misconduct, ROA.100. But this does not entitle Wilson to skip state-law procedures to determine *whether* her conviction was affected by Petty's behavior. And it certainly does not entitle her to recast Supreme Court precedent to suit her procedural preferences.

Precedent, history, and practical considerations all counsel against adopting Wilson's position. The Court should reaffirm that *Heck* means what it says and does not allow Wilson to attack a final (and thus presumptively valid) state judgment of conviction through a federal civil-rights lawsuit.

## Summary of the Argument

Texas law allows individuals who claim they were wrongly convicted to challenge their convictions either while in custody or afterwards. Instead, Wilson sued under §1983. The Supreme Court has not allowed her to circumvent state procedures in this manner, and this Court should not do so for many reasons.

**I.** Under *Heck*, Wilson has no §1983 claim until the criminal judgment that she openly seeks to impugn has been favorably terminated. She nonetheless urges this Court to set aside the *Heck* framework because (i) her sentence of community supervision has ended, and (ii) she filed a due-process claim under §1983 rather than a claim sounding in malicious prosecution. But from *Heck* to present, the Supreme Court has never endorsed either distinction. To the contrary, it has already expressly rejected both, and its analysis illustrates why such distinctions are not tenable.

History, too, demonstrates that the favorable-termination requirement applies in situations like Wilson's. The law's broad prohibition on collaterally attacking criminal judgments has deep roots in English and American common law, and for hundreds of years malicious prosecution has served as the sole vehicle by which a litigant can receive damages because of a substantively flawed process. Section 1983 should be read in harmony with that historical backdrop. If Congress wishes to depart from the historical rule, it is free to do so. This Court is not.

Furthermore, Wilson's lawsuit ignores that Texas already provides a path for her to challenge her criminal conviction. Texas habeas law allows courts to vacate judgments even after an individual's community supervision has ended. *See, e.g.*, *Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008); ROA.102 (Wilson

sentenced only to community supervision). Because that path has no time limit, Wilson is free to pursue such relief even today. As the Supreme Court has recently and unanimously reiterated, plaintiffs should rely on existing state-law paths to relief rather than asking federal courts to break new ground with respect to federal law. *See DeVillier v. Texas*, 144 S.Ct. 938, 944 (2024).

To say otherwise would invite gamesmanship. After all, if plaintiffs prefer state or federal habeas procedures, they would seek relief during the custodial period; if they prefer ordinary federal civil litigation procedures, they would wait until the custodial period ends and file suit under §1983. Nothing in the text, structure, history, or purpose of §1983 supports such manipulation.

**II.** Despite the foregoing and Wilson's admission that her claim necessarily challenges the validity of her criminal conviction, she argues the Court should overrule *Randell* and allow her §1983 claim to proceed. None of her arguments for disregarding *Heck* is persuasive. Her attempt to frame *Heck* as an effort to reconcile §1983 with federal habeas fails under both the facts and analysis in *Heck* itself. Wilson also wrongly invokes exhaustion principles even though *Heck* recognizes a limitation on the very existence of a §1983 claim—not a prudential box for Wilson to check before she can proceed. Apart from being irrelevant, her selective reliance on out-of-circuit law greatly overstates any noteworthy split: Wilson has backed off (at 7, 10) the custodial-noncustodial distinction that was the basis for her request for en banc review, and to the best of the State's knowledge, none of this Court's sister circuits have adopted her current view that *Heck* is inapplicable to claims sounding in the Due

3

Process Clause. And Wilson's transparent efforts to avoid the implications of her theory only underscore why the Court should not open the door to her novel claim.

ARGUMENT

## I. This Court Should Affirm the District Court's Decision.

### A. Supreme Court precedent requires affirmance.

In *Heck*, the Supreme Court broadly held that §1983 plaintiffs cannot "call into question the lawfulness of [their] conviction or confinement." [512 U.S. at 483](). The Court explained that "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been" favorably terminated—*i.e.*, "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. Otherwise, there can be "no cause of action under §1983." *Id.* at 489.

Nothing in *Heck* supports a distinction between §1983 plaintiffs who are in custody and those who are not. To the contrary, the Supreme Court's opinion addresses this very issue: "We think the principle barring collateral attacks—a longstanding and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Id.* at 490 n.10. The Supreme Court's articulation of the principle was "a significant part of the Court's rationale," *not* "dicta." *Savory v. Cannon*, [947 F.3d 409, 421-22]() (7th Cir. 2020) (en banc) (explaining why courts cannot ignore footnote

4

10). Indeed, the Court's "statement … constitute[d] an explication of the governing rules of law," meaning "it is not dictum." *Garrett v. Lumpkin*, 96 F.4th 896, 902 (5th Cir. 2024) (quotations and citation omitted). But even if it were, the Supreme Court's pronouncement would remain binding on this Court because it "is crystal clear and supported by ample authority and explanation." *Id.* at 902 n.4.[1] Justice Scalia—*Heck*'s author—understood the "principle" from the Court's detailed analysis as necessarily supporting footnote 10's conclusion that custodial status is irrelevant.

Nor does anything in *Heck* support a distinction between §1983 plaintiffs who raise due-process arguments as opposed to claims formally branded as "malicious prosecution." Consider *Edwards v. Balisok*, 520 U.S. 641 (1997), also written by Justice Scalia, where the plaintiff sought to narrow *Heck* by arguing that "the malicious prosecution analogy … is inapplicable in a §1983 challenge to procedural due process only." Respondent's Br. at 8, 28-29, 520 U.S. 641 (1997) (No. 95-1352), 1996 WL 492348. The Supreme Court unanimously disagreed, holding that the plaintiff's §1983 claim was "not cognizable" because "allegations of deceit and bias on the part of the decisionmaker … necessarily impl[ied] the invalidity of the punishment

---

[1] In *Muhammad v. Close*, 540 U.S. 749 (2004), a per curiam opinion, the Supreme Court observed in a footnote that not every Justice agreed with *Heck* on this point. *See id.* at 752 n.2. Yet "footnote 2 of *Muhammad* merely acknowledged the possibility that the Court may someday revisit footnote 10 of *Heck*," *Savory*, 947 F.3d at 425— not that *Heck*'s footnote 10 was not binding on lower courts. Suffice it to say, "the Court of Appeals should follow the case which directly controls, leaving to th[e Supreme] Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

imposed." 520 U.S. at 648; *see also id.* at 649-50 (Ginsburg, J., joined by Souter and Breyer, JJ., concurring).

Similarly, in *McDonough v. Smith*, 588 U.S. 109 (2019), the Supreme Court applied *Heck* to a non-custodial plaintiff's due-process claim for fabricated evidence— even though that claim has different elements than malicious prosecution. *Id.* at 116-18. Citing *Heck* in explaining why the plaintiff's claim did not accrue until his acquittal, the Court made clear that "comparing constitutional and common-law torts is not a one-to-one matching exercise," and "two constitutional claims may differ yet still both resemble malicious prosecution more than any other common-law tort." *Id.* at 117 n.5. The relevant point, the Court stressed, was that "both claims challenge[d] the integrity of criminal prosecutions undertaken 'pursuant to legal process.'" *Id.* at 117 (quoting *Heck*, 512 U.S. at 484). This left no question that the plaintiff "could not bring his fabricated-evidence claim under §1983 prior to favorable termination of his prosecution." *Id.* Not only does *McDonough* again confirm that *Heck* applies to *any* §1983 claim under *any* theory that would call into question the validity of a plaintiff's criminal process, but—consistent with *Heck*'s footnote 10— nothing in the Supreme Court's analysis suggests that the unavailability of habeas renders *Heck* inapplicable.

Far from disputing these principles, Wilson apparently concedes (at 7, 10) that *Heck*'s favorable-termination requirement *always* applies to claims that are analogous to malicious prosecution, whether the §1983 plaintiff is still in custody or not. That concession is fatal. Not only did *Edwards* unanimously reject the due-process distinction Wilson now urges—after all, Wilson's claim is also one "of deceit *and bias*

on the part of the decisionmaker," 520 U.S. at 648 (emphasis added)—but *McDonough* also analogized a non-custodial due-process claim to malicious prosecution because both seek a common end: invalidation of prior criminal process, 588 U.S. at 117 & n.5. Not even the plaintiff in *Heck* alleged malicious prosecution under §1983; he claimed that officials conducted an unlawful investigation, destroyed evidence, and wrongfully relied on voice identification at trial. 512 U.S. at 479. Nonetheless, the Supreme Court concluded that malicious prosecution was the appropriate common-law analogy because Heck sought to impugn his conviction. *Id.* at 484. Wilson's §1983 claim is thus like those in *Heck*, *Edwards*, and *McDonough*—meaning the favorable-termination requirement applies even under Wilson's own "due process" theory. Wilson thus gives away the farm by admitting (at 16) that "there is no dispute" her allegations impugn the underlying conviction and sentence.

### B. History confirms that precedent has charted the correct course.

History also belies Wilson's efforts to avoid *Heck* by pleading her claim under the Due Process Clause. In determining whether a case is cognizable under §1983, courts focus on "the common law of torts." *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978). For centuries, malicious prosecution has stood alone among torts in allowing damages from a *defective* criminal process. This historical fact explains why the Supreme Court consistently invokes malicious prosecution not as *an* analog, but rather *the* analog, in §1983 cases that would impugn prior criminal processes. *See, e.g.*, *McDonough*, 588 U.S. at 116; *Heck*, 512 U.S. at 484; *see also, e.g.*, *Edwards*, 520 U.S. at 648. And it confirms that malicious prosecution is the correct analogy for Wilson's claim, which seeks damages caused by an alleged constitutional defect in her process.

Malicious prosecution arose against a backdrop where criminal defendants had virtually no collateral recourse. "[N]either party, witness, counsel, jury, or [j]udge [could] be put to answer, civilly or criminally, for words spoken in office," *King v. Skinner*, (1772) 98 Eng. Rep. 529, 530, Loff. 54, 56, and the writ of conspiracy—a parliamentary creation that allowed injured litigants to seek redress for falsely orchestrated prosecutions—had provided a "defect[ive]" tool available only to acquitted defendants, James Wallace Bryan, *The Development of the English Law of Conspiracy* 25-27 (1909). Because the writ of conspiracy was inadequate to safeguard a fair process, English courts "complete[ly] displace[d]" it with a new, exclusive path: the tort of malicious prosecution. Bryan, *supra*, at 27-28.

The tort of malicious prosecution recognized "[t]he damage a person may sustain by an indictment may relate either to his person, his reputation, or his property." *Jones v. Gwynn*, (1713) 88 Eng. Rep. 699, 700, 10 Mod. 214, 217; *see also*, Note, *Groundless Litigation and the Malicious Prosecution Debate: A Historical Analysis*, 88 Yale L.J. 1218, 1228 (1979) (describing how the modern law of malicious prosecution grew out of cases like *Savile v. Roberts*, (1698) 91 Eng. Rep. 1147, 1149-50, 1 Ld. Raym. 376, 379). It thus allowed an injured person to sue "private defendants for unjustified harm arising out of the misuse of government processes." Esther M. Schonfeld, *Malicious Prosecution as a Constitutional Tort: Continued Confusion and Uncertainty*, 15 Touro L. Rev. 1681, 1702 (1999) (quoting *Wyatt v. Cole*, 504 U.S. 158, 164 (1992)).

The tort, however, did not throw open the gates. Like a writ of conspiracy, malicious prosecution could not be used as a "collateral attack upon [an earlier] criminal judgment." William L. Prosser, *Handbook on the Law of Torts* 867 (1941). Anything

short of favorable termination—even in compelling circumstances—meant the path to relief was closed. *See, e.g.*, *Basébé v. Matthews*, (1867) 16 L. T. Rep. 417, 418, 2 L. Rep. C.P. 684, 687 (precluding relief even where "the party convicted ha[d] no power of appealing"), *reprinted in* Francis R. Y. Radcliffe & J. C. Miles, *Cases Illustrating the Principles of the Law of Torts* 50 (1904); *Mellor v. Baddeley*, (1834) 149 Eng. Rep. 932, 932-33, 2 Cr. & M. 675, 676-79 (precluding relief even where the party could not afford an appeal).

Early American practice was similar. American common law recognized the tort of malicious prosecution as the *sole* vehicle by which unlawful process might give rise to civil damages, but it was "disfavor[ed]." *Davis v. Brady*, 218 Ky. 384, 412-13 (1927) (quoting 18 Ruling Case Law 11 (McKinney & Rich ed., 1917)); *accord, e.g.*, *Watts v. Gerking*, 111 Or. 641, 656 (1924) (collecting authorities for the proposition that "[t]he presumption of law is … that every prosecution for a crime is founded on probable cause and is instituted only for purposes of justice"). Mindful that prosecutors would remain accountable through other means—including ouster or impeachment—courts were reluctant to allow such claims. *See, e.g.*, *Smith v. Parman*, 101 Kan. 115, 115 (1917) ("There is no great danger that abuse of power will be fostered by this exemption from civil liability, for the prosecutor is at all times" at "risk of being called to account criminally for official misconduct"). True, such remedy sometimes may result in under-deterrence, but "[a]s is so often the case, the answer must be found in a balance between the evils inevitable in either alternative." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (Hand, J.).

Thus, courts required proof that "[t]he proceeding in which [an] abuse occurred must have terminated[] ... in favor of the party complaining." Joel Prentiss Bishop, *Commentaries on the Non-Contract Law* 90 (1889); *see also, e.g.*, *Thompson v. Clark*, 596 U.S. 36, 45 (2022) (collecting cases); *Laskar v. Hurd*, 972 F.3d 1278, 1286 (11th Cir. 2020) (same). Simply put, "malicious prosecution action[s] … [would not] be permitted to make a collateral attack upon [a] criminal judgment, which would be 'blowed off by a side-wind.'" Prosser, *supra*, at 867 (citation omitted).

Although both the English and American common-law systems recognized another tort for abuse of process, *Page v. Cushing*, 38 Me. 523, 527 (1854); *Grainger v. Hill*, (1838) 132 Eng. Rep. 769, 773, 4 Bing. (N.C.) 212, 221, that tort afforded relief only for *lawful* process used for *unlawful* ends, *Glidewell v. Murray-Lacy & Co.*, 124 Va. 563, 569 (1919) (collecting cases). This distinction carried two consequences: *First*, "[d]amage[s] for abuse of process … [were narrowly] confined to the damage flowing from such abuse." *McGann v. Allen*, 105 Conn. 177, 191 (1926). *Second*, the tort did not carry a favorable-termination requirement. Martin L. Newell, *Treatise on the Law of Malicious Prosecution, False Imprisonment, and the Abuse of Legal Process* 7, 359 (1892); *see also, e.g.*, *Grainger*, 132 Eng. Rep. at 772, 4 Bing. (N.C.) at 217-18 (observing that "the abuse of process being established, it is immaterial whether the suit … is terminated or not").

This history confirms that, even apart from precedential authority, *Heck* and its progeny have correctly recognized that malicious prosecution was the only common-law tort by which someone might seek damages for defective process. Tellingly, Wilson cannot point to another, *more*-analogous tort.

## C. Applying precedent would not deprive Wilson of a remedy.

There is no reason to allow Wilson to evade *Heck* (or the historical principles underlying its rule) because Texas provides Wilson with a path to challenge her conviction. Under Texas habeas law, the fact that Wilson was previously "on community supervision" means she can challenge her conviction—and thereby satisfy *Heck*'s favorable-termination requirement—through a state habeas petition, even though her community supervision is complete. *See* Tex. Code Crim. Proc. art. 11.072 §2(b); *see also, e.g.*, *Ex parte Villanueva*, 252 S.W.3d at 397. There is no time limit on Wilson's ability to seek such relief under Texas law. *See generally* Tex. Code Crim. Proc. art. 11.072.[2]

The availability of state-law remedies cannot be ignored or presumed inadequate. As the Supreme Court has explained, because States have "a coordinate responsibility to enforce the Constitution," federal courts "should not assume the States will refuse to honor" that commitment when state courts apply "their regular modes of procedure." *Devillier*, 144 S.Ct. at 944 (cleaned up) (unanimously concluding that plaintiffs alleging a federal takings claim should avail themselves of Texas' state-law cause of action); *cf. also, e.g.*, *Allen v. McCurry*, 449 U.S. 90, 104-05 (1980) (rejecting "a general distrust of the capacity of the state courts to render correct decisions" involving constitutional claims under §1983).

---

[2] Individuals who served time in prison can also seek habeas post-release if the conviction carries any collateral consequences. Tex. Code Crim. Proc. art. 11.07 §3(c); *see, e.g.*, *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010).

It would be particularly odd to deviate from that rule here. After all, Texas has conceded that habeas relief is proper where Petty was, in fact, inappropriately involved in criminal cases. *See, e.g.*, State's Amended Answer to Article 11.07 Application for Writ of Habeas Corpus at 10-11, *Ex parte Lewis*, No. CR-30,418-A (238th Dist. Ct., Midland Cnty. Dec. 4, 2022) (confessing error); *see also, e.g.*, State's Original Answer to Application for Writ of Habeas Corpus at 8, *Ex parte Booth*, No. CR42435-B (385th Dist. Ct., Midland Cnty. Mar. 11, 2024) (urging reconsideration of prior habeas hearing, which was otherwise procedurally barred). For reasons explained by Appellee, however, *whether* Petty was materially involved in Wilson's conviction is precisely the type of question that would benefit from an evidentiary hearing on habeas review under Texas law. *See generally* Tex. Code Crim. Proc. art. 11.072 §6. Texas state courts will faithfully consider Wilson's arguments if she makes them.

### D.  Adopting Wilson's rule would invite gamesmanship.

Moreover, the distinctions Wilson asks the Court to draw would invite gamesmanship. For example, Wilson says (at 14) *Heck*'s favorable-termination requirement only applies where there is a "conflict" between federal habeas and §1983. As Judge Oldham recently observed, however, if that were so, litigants hoping to raise over-detention claims under §1983 need only "sleep on [their] rights until [the] (ostensible) release date passes." *McNeal v. LeBlanc*, 93 F.4th 840, 844-45 (5th Cir. 2024) (Oldham, J., dissenting from denial of rehearing en banc). In fact, under Wilson's theory, even *custodial* litigants could escape the *Heck* framework (among other things) simply by waiting until 28 U.S.C. §2244(d)(1)'s one-year limitation period

expires—removing any putative "conflict" between habeas and §1983 by rendering habeas unavailable—and then filing suit under §1983.

Wilson's "elements-based" theory, too, invites litigants to circumvent *Heck* by branding a §1983 claim with the phrase "due process." Not only is this flatly inconsistent with *Heck*, *Edwards*, and *McDonough* alike, but this exercise encourages the "artful pleading" that the Supreme Court has explicitly warned against. *See, e.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973) ("It would wholly frustrate explicit congressional intent to hold that the respondents … could evade [the state-exhaustion] requirement by the simple expedient of putting a different label on their pleadings."); *see also, e.g.*, *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 77 (2009) (Alito, J., concurring) ("The rules set forth in our cases … would mean very little if state prisoners could simply evade them through artful pleading."). Nothing in the text, structure, history, or purpose of §1983 suggests that Congress intended to enable such gamesmanship.

## II. Wilson's Counterarguments Are Mistaken.

Despite the foregoing, Wilson asks the Court to allow her to pursue a §1983 claim she admits would necessarily challenge her conviction. Her theories, however, rest on a series of fundamental misunderstandings.

### A. Wilson misunderstands *Heck*.

Wilson offers a reading of *Heck* that *Heck* itself rejects—that the favorable-termination requirement ceases to apply after custody ends. And flatly contrary to *Edwards*, Wilson also argues the favorable-termination requirement does not apply to

due-process claims. As just discussed, both distinctions run headlong into precedent, are ahistorical, and would invite manipulation.

Wilson's theories, moreover, suffer from additional flaws: Wilson is incorrect (at 7-12, 18-20) that *Heck*'s favorable-termination requirement merely reflects an effort to reconcile §1983 with federal habeas law. Again, Wilson's argument overlooks *Heck* itself: The *Heck* majority went out of its way to stress that its analysis was about how best to understand §1983—not the interaction between §1983 and federal habeas, stating that the plaintiff claimed damages that "could not have [been] sought … through federal habeas corpus proceedings." 512 U.S. at 481 (cleaned up). That reality "clearly" distinguished cases like *Preiser*, in which §1983 and habeas facially provided *parallel* relief. 411 U.S. at 500. And *Heck*'s concurring Justices expressly *disagreed* with the *Heck* majority's "position that the statutes were never on a collision course in the first place" with respect to the favorable-termination requirement. 512 U.S. at 492 (Souter, J., concurring). Wilson's vision of *Heck* thus stands in sharp contrast with all nine Justices' understanding.

Even cases at the purported intersection of §1983 and federal habeas belie Wilson's cramped reading of *Heck*. To be sure, cases like *Preiser* and *Wilkinson v. Dotson*, 544 U.S. 74 (2005), demonstrate that §1983 "contains an 'implicit exception' for actions that lie 'within the core of habeas corpus.'" *Nance v. Ward*, 597 U.S. 159, 167 (2022) (quoting *Wilkinson*, 544 U.S. at 79). But that exception is *distinct* from *Heck*'s favorable-termination requirement. *Id.* Whereas *Heck* requires favorable termination in "§1983 suits for money damages when prevailing would imply a conviction was wrongful," *Preiser* bars §1983 suits where "an inmate, alleging a flaw in his

conviction or sentence, seeks 'immediate or speedier release' from prison." *Id.* at 167-68 (quoting *Heck*, 512 U.S. at 481); *see also Wilkinson*, 544 U.S. at 79 (reiterating that *Preiser* governs claims seeking release from prison). As *Heck* explains, §1983's favorable-termination requirement "is clearly not covered by the holding of *Preiser*." 512 U.S. at 481.

Neither was *Heck*'s favorable-termination requirement a product of elemental overlap between causes of action. Wilson contends otherwise (at 10, 22-26) to distinguish her due-process claim from malicious prosecution. Again, this position—which eerily tracks the *losing* brief in *Edwards*,[3] all the way down to its misplaced reliance on *Carey* and allegation of "bias," 520 U.S. at 648—is foreclosed by precedent.

What Wilson misunderstands is that the analogy in *Heck* focused on common ends, not elements. *Heck* stressed that like malicious prosecution, the tort at issue contemplated "impugning" a criminal judgment. 512 U.S. at 484-87 & nn.5-6. This

---

[3] *Compare* Supp.Br. at 23–24 ("The common law, of course, did not recognize something called a procedural due process tort, but, as *Carey* makes clear, §1983 does. And Wilson's claim, which alleges that the defendants deprived her of liberty using a constitutionally deficient procedure, is much more like the procedural due process claim recognized in *Carey* than it is a malicious prosecution tort."), *and id.* at 24 (arguing that "a procedural due process claim … is 'absolute'" and at least entitles a plaintiff to "nominal damages"), *with* Respondent's Br. at 8, *Edwards*, 1996 WL 492348 ("The common law of torts and specifically the malicious prosecution analogy cited in *Heck* is inapplicable in a §1983 challenge to procedural due process only. The §1983 [c]omplaint filed by Mr. Balisok is solely about violations of due process procedure. The proper analogous case is *Carey* …."), *and id.* at 29 ("[T]he right to procedural due process is absolute and a violation of this right always supports an award of damages, even if nominal.").

stood in contrast with torts such as "abuse of process," however, the "gravamen" of which "is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process." *Id.* at 486 n.5. Underscoring the point, *Heck* emphasizes that without malicious prosecution, there was "*no* common-law action[] … [that] permit[ted] a criminal proceeding to be impugned in a tort action." *Id.* This would stand only to "strengthen [the Court's] belief that §1983, which borrowed general tort principles, was not meant to permit such collateral attack." *Id.* at 484 n.4.

Even if the Court were to accept Wilson's theory, her claim would still fail. By disclaiming the *Heck* framework, Wilson loses the benefit of deferred accrual—making it necessary "to address the statute-of-limitations issue." *Heck*, 512 U.S. at 489. In the place of deferred accrual, she claims (at 19, 34) her suit accrued only when "§2254 was … off the table." The Supreme Court has never adopted such a rule. And even if that were the law, Wilson's suit would still be untimely. She was released from community supervision in 2009, meaning her two-year limitations period expired more than a decade ago. *Compare* ROA.102, *with Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993) (per curiam) (applying Texas' two-year limitations period to §1983 claim). Nor can she now invoke equitable tolling without having timely briefed the issue. *See, e.g.*, *King-White v. Humble Indep. Sch. Dist.*, 636 F.App'x 622, 623 n.1 (5th Cir. 2016) (per curiam) (following *Nissho-Iwai Co., Ltd v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1539 n.14 (5th Cir. 1984)). And even beyond waiver, "equitable principles preclude a court from invoking equitable tolling … when the party seeking relief has an adequate legal or statutory remedy to avoid the

consequences of the statute of limitations." *Lambert v. United States*, [44 F.3d 296, 299](#) (5th Cir. 1995). As a result, the availability of state habeas relief that would allow Wilson to remove the *Heck* bar (assuming her conviction is, in fact, invalid) also dooms any claim of equitable tolling.

### B.  Wilson misunderstands exhaustion.

Precisely because *Heck* discusses a limitation on the §1983 cause of action itself, Wilson is wrong to assert (at 20-21) that requiring her to seek favorable termination on the path afforded her by Texas law would improperly impose an "exhaustion requirement." There is a fundamental difference between deferred accrual, before which no cause of action exists, and an exhaustion requirement, which mandates delayed treatment of an actionable claim. *Heck*, [512 U.S. at 489](#); *see also, e.g.*, *Hudson v. Hughes*, [98 F.3d 868, 873](#) (5th Cir. 1996). As the Supreme Court has explained, there simply is "no cause of action under §1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned." *Heck*, [512 U.S. at 489](#). It is true that if Wilson cannot *succeed* on her state habeas claim, then she will not be able to obtain relief under §1983—as would be true for a common-law claim of malicious prosecution. *Supra* Part I.A-B.

Wilson's theory that she has a right to sue under §1983 despite having the ability to first "reverse[], expunge[], invalidate[], or impugn" her conviction, *Heck*, [512 U.S. at 489](#), "is a great non sequitur, unless one believes (as we do not) that a §1983 action for damages must always and everywhere be available," *Spencer v. Kemna*, [523 U.S. 1, 17](#) (1998). After all, §1983 is "'supplementary to any remedy any State might have.'" *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, [599 U.S. 166, 177](#) (2023)

(quoting *Owens v. Okure*, [488 U.S. 235, 248](#) (1989)). More importantly for present purposes, "until 1867 … there was no federal habeas jurisdiction to inquire into detentions pursuant to state law," and for some time thereafter "the Supreme Court could make no pronouncements in cases of state detention because the Court's appellate jurisdiction under the act of 1867 was removed in 1868 and not reestablished until 1885." Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv. L. Rev. 441, 465 (1963). And even after Congress authorized such jurisdiction, its original reach was highly constrained. *See, e.g.*, *id.* at 474-77. Thus, when §1983 was enacted in 1871, state courts provided essentially the only means of satisfying the favorable-termination requirement for malicious prosecution claims, and they remain a primary means of doing so. *See, e.g.*, *McShane v. Moldovan*, [172 F.2d 1016, 1022](#) (6th Cir. 1949) (highlighting successful state appeal and thereafter reversing dismissal of §1983 malicious prosecution claim).

This reveals Wilson's exhaustion theory for what it is: "[A] general distrust of the capacity of the state courts to render correct decisions," which contradicts the "[Supreme] Court's ... expression of confidence in their ability to do so." *Allen*, [449 U.S. at 104-05](#). Indeed, just this month, the Supreme Court reaffirmed that federal courts should presume state courts will resolve federal issues in "good faith." *Devillier*, [144 S.Ct. at 944](#).

### C.  Wilson overstates irrelevant, out-of-circuit precedent.

To avoid the consequence of reading *Heck* on its own terms, Wilson leans heavily on out-of-circuit precedent. "But law is not a nose-counting exercise," *Wages & White Lion Invs., L.L.C. v. FDA*, [90 F.4th 357, 386](#) (5th Cir. 2024) (en banc)

(disagreeing with five other circuits), and Wilson overstates the amount of conflict. *See also, e.g.*, *Cochran v. SEC*, 20 F.4th 194, 203-04 (5th Cir. 2021) (en banc) (observing that one party's "tallying of the circuits does not change [the correct] conclusion," particularly when "the other circuits are not as unanimous as they appear"), *aff'd and remanded sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).

Three of these six jurisdictions she invokes (the Second, Sixth, and Eleventh Circuits) held that the §1983 claims did not, in fact, impugn any extant criminal judgment—placing each case beyond *Heck*. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 605 (6th Cir. 2007); *Harden v. Pataki*, 320 F.3d 1289, 1297-98 (11th Cir. 2003); *Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001). Indeed, the Eleventh Circuit has said that none of its "published opinion[s]" adopts her theory. *Butler v. Georgia*, No. 22-10291, 2022 WL 17484910, at *4 (11th Cir. Dec. 7, 2022) (per curiam). And while *Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002), is capable of many readings, not even the Ninth Circuit suggests that it relaxed *Heck* for non-custodial plaintiffs—clarifying instead that (1) "[t]he fact that [a plaintiff] is no longer in custody and thus cannot overturn his prior convictions by means of habeas corpus does not lift *Heck*'s bar," and (2) "*Nonnette* was founded on the unfairness of barring a plaintiff's potentially legitimate constitutional claims." *Guerrero v. Gates*, 442 F.3d 697, 704-05 (9th Cir. 2006) (applying *Heck* to non-custodial litigant, even though "habeas relief … may be 'impossible as a matter of law'" (citation omitted)).

At least five courts—including this one—have correctly observed "*Heck*'s core holding: that annulment of the underlying conviction is [a prerequisite to] a section

1983 'unconstitutional conviction' claim." *Figueroa v. Rivera*, 147 F.3d 77, 81 (1st Cir. 1998); *accord Collins v. Dall. Leadership Found.*, 77 F.4th 327, 331 (5th Cir. 2023) ("The purpose of the rule laid out in *Heck* was to stop civil tort actions for damages where the plaintiff would be required 'to prove the unlawfulness of his ... confinement.'" (quoting *Heck*, 512 U.S. at 486)); *Savory*, 947 F.3d at 431 ("Concerns about comity, finality, conflicting judgments, and 'the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments' all underpin *Heck*'s favorable termination rule."); *Deemer v. Beard*, 557 F.App'x 162, 167 (3d Cir. 2014) ("[U]nder *Heck*, any claimant, even if the door to federal habeas is shut and regardless of the reason why, must establish favorable termination of his underlying criminal proceeding before he can challenge his conviction or sentence in a § 1983 action." (citing *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005))); *Newmy v. Johnson*, 758 F.3d 1008, 1012 (8th Cir. 2014) ("[T]his rule could preclude a damages remedy for an inmate who is detained for only a short time with limited access to legal resources, but that is a consequence of the principle barring collateral attacks that was applied in *Heck*.").

Furthermore, as far as Texas is aware, no appellate court since *Edwards* has *ever* held that *Heck*'s favorable-termination requirement does not apply to due-process claims.[4] As this Court has explained, "[t]he *Heck* rule bars both" due-process and other claims. *Collins*, 77 F.4th at 330. Sister circuits agree. *See, e.g.*, *Hebrard v.*

---

[4] Attempts more broadly to cabin *Heck* as a "malicious prosecution case" have also proven unsuccessful. *See, e.g.*, *Bryner v. Utah*, 429 F.App'x 739, 743 (10th Cir. 2011) ("*Heck* does not apply only to malicious prosecution claims.").

*Nofziger*, 90 F.4th 1000, 1008 (9th Cir. 2024) ("[A]fter *Edwards*, *Heck* applies to a prisoner's due process challenge ...."); *Schreane v. Marr*, 722 F.App'x 160, 166 (3d Cir. 2018) (per curiam) ("*Heck* and *Balisok* preclude consideration of ... procedural due process claims."); *Holland v. County of Macomb*, No. 16-2103, 2017 WL 3391653, at *2 (6th Cir. Mar. 17, 2017) (*Heck* barred "due-process, conspiracy, and malicious-prosecution claims"); *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 390 (4th Cir. 2014) ("malicious prosecution provides the closest analogy to [the plaintiff's] §1983 claims," which alleged a "due process" violation); *Elcock v. Whitecotton*, 434 F.App'x 541, 543 (7th Cir. 2011) ("*Heck* and *Edwards* bar any claim that the disciplinary proceeding or prosecution violated ... due process."); *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) ("[A] claim under the procedural component of the Fourteenth Amendment's Due Process Clause [is] analogous to a tort claim for malicious prosecution."); *Portley-El v. Brill*, 288 F.3d 1063, 1067 (8th Cir. 2002) (applying *Heck* to a due-process claim). This Court—"always chary to create a circuit split," *Alfaro v. Comm'r of Internal Revenue*, 349 F.3d 225, 229 (5th Cir. 2003)—should not be the first to hold that due-process claims fall outside of *Heck*, *Edwards*, and *McDonough*.

## D. Wilson is not entitled to ignore the implications of her position.

Finally, in what should be a giant red flag for a Court being asked to create law for over thirty-eight million people, Wilson spends the last five pages of her brief urging the Court to ignore the logical consequences of her theory.

For example, Wilson insists (at 31) all that matters is whether "§2254 relief is available at the time a §1983 claim is filed." But her only response to Judge Oldham's

concern with gamesmanship, *McNeal*, [93 F.4th at 844-45](#) (Oldham, J., dissenting from denial of rehearing en banc), is to point (at 31) to a "diligence requirement" putatively imposed by other circuits. But that requirement is entirely unmoored from the text of either §1983 or the federal-habeas statute and requires judges to impose their own values on questions to which Congress has already spoken.

At the same time, Wilson's theories would undermine state interests in "timely notice of alleged misconduct," *Wallace v. Kato*, [549 U.S. 384, 396-97](#) (2007), and would eviscerate bright-line rules that advance "uniformity, certainty, and the minimization of unnecessary litigation," *Owens*, [488 U.S. at 239-40](#)—all to avoid Texas habeas procedures, which are presumed adequate to adjudicate literal life-or-death questions. Rather than creating a whole new body of law, the Court should reaffirm *Randell*, which has served the Court well for decades.

## Conclusion

The Court should affirm the judgment below.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General

Lanora C. Pettit
Principal Deputy Solicitor General

/s/ Joshua C. Fiveson
Joshua C. Fiveson
Assistant Solicitor General
Joshua.Fiveson@oag.texas.gov

Counsel for the State of Texas

22

## CERTIFICATE OF SERVICE

On April 29, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Joshua C. Fiveson
JOSHUA C. FIVESON

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,111 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Joshua C. Fiveson
JOSHUA C. FIVESON